LANDAU GOTTFRIED & BERGER LLP
JON L.R. DALBERG (State Bar No. 128259)
RODGER M. LANDAU (State Bar No. 151456)
1801 Century Park East, Suite 1460
Los Angeles, California 90067
Telephone: (310) 557-0050
Facsimile: (310) 557-0056
jdalberg@lgbfirm.com
rlandau@lgbfirm.com

Counsel for FirstFed Financial Corp.

UNITED STATES BANKRUPTCY COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>FIRSTFED FINANCIAL CORP,<br><br>    Debtor and<br>    Debtor-in-Possession. | Case No.: 2:10-bk-12927-ER<br><br>Chapter 11<br><br>**NOTICE OF MOTION AND MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE EXTENDING THE PERIODS IN WHICH THE DEBTOR EXCLUSIVELY MAY FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THERETO; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JON L.R. DALBERG IN SUPPORT THEREOF.**<br><br>[No hearing required pursuant to L.B.R. 9013-1(o)] |

LANDAU
GOTTFRIED &
BERGER LLP

1  **TO THE HONORABLE ERNEST M. ROBLES, UNITED STATES BANKRUPTCY JUDGE**

2  **AND ALL INTERESTED PARTIES:**

3      **PLEASE TAKE NOTICE THAT** debtor and debtor-in-possession, FirstFed Financial Corp (the "Debtor"), has filed a motion (the "Motion") in the above-captioned chapter 11 case ("Bankruptcy Case") pursuant to Section 1121(d) of Title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "Bankruptcy Code") and Rule 9013-1(o) of the Local Bankruptcy Rules of this Court ("Local Rules") requesting entry of an order pursuant to Section 1121(d) of the Bankruptcy Code extending, by ninety (90) days, to August 4, 2010 and October 4, 2010, respectively, the periods ("Exclusivity Periods") in which the Debtor exclusively may file a chapter 11 plan and solicit acceptances thereto, and granting such other and further relief as is just and proper under the circumstances.

    **PLEASE TAKE FURTHER NOTICE** that as described below, extending the Exclusivity Periods by ninety (90) days is necessary and appropriate under the circumstances, in that (i) it will allow the general and governmental bar dates set in the Bankruptcy Case to pass and allow the Debtor to establish the universe of claims in the case with certainty, (ii) it will afford the Debtor additional time to investigate its principal non-cash asset, its claim for a substantial federal tax refund estimated to be approximately $90 million in order to maximize the benefit of this asset to the estate, and (iii) it will allow the Debtor time to negotiate a consensual plan of liquidation with its principal unsecured creditor, the Wilmington Trust Company, as indenture trustee for the vast majority of the Debtor's unsecured indebtedness.

    **PLEASE TAKE FURTHER NOTICE THAT** the Motion is based on the attached Memorandum of Points and Authorities and Declaration of Jon L.R. Dalberg in support thereof, the arguments of counsel, and any other admissible evidence properly brought before the Court. In addition, the Debtor requests that the Court take judicial notice of all documents filed with the Court in the above-captioned Bankruptcy Case.

    **PLEASE TAKE FURTHER NOTICE** that Local Rule 9013-1(o)(1) requires that any response to the Motion and request for hearing shall be filed with the Bankruptcy Court and served

upon counsel for the Debtor at the address appearing on the upper-left hand corner of the caption page to this Motion within fifteen (15) days of the date of service of the Motion. Pursuant to Local Rule 9013-1(h), the failure to timely file and serve written opposition may be deemed by the Court to be consent to the granting of the relief requested in the Motion.

Dated: April 30, 2010                    LANDAU GOTTFRIED & BERGER LLP

By: /s/ Jon L.R. Dalberg
Jon L.R. Dalberg
Counsel for FirstFed Financial Corp.

## MEMORANDUM OF POINTS AND AUTHORITIES

Debtor and debtor-in-possession, FirstFed Financial Corp ("FirstFed" or the "Debtor"), by this *Motion for Entry of an Order Pursuant to Section 1121(d) of the Bankruptcy Code Extending the Periods in which the Debtor Exclusively May File a Chapter 11 Plan and Solicit Acceptances Thereto* (the "Motion"), which is supported by the *Declaration of Jon L.R. Dalberg* (the "Dalberg Declaration"), hereby moves this Court for entry of an order, pursuant to Section 1121(d) of the Bankruptcy Code and Rule 9013-1(o) of the Local Rules requesting entry of an order pursuant to Section 1121(d) of the Bankruptcy Code extending, by ninety (90) days, the periods ("Exclusivity Periods") in which the Debtor exclusively may file a chapter 11 plan and solicit acceptances thereto, and granting such other and further relief as is just and proper under the circumstances, based upon the following:

### I.

### BACKGROUND

The Debtor is a bank holding company incorporated in Delaware. Its principal business has been to serve as the holding company for its wholly-owned subsidiary, First Federal Bank of California (the "Bank"). On December 18, 2009, The Debtor's primary federal banking regulator, the Office of Thrift Supervision ("OTS"), closed the Bank and appointed the Federal Deposit Insurance Company ("FDIC") as receiver for the Bank. Concurrently, the FDIC, in its capacity as receiver for the Bank, entered into a purchase and assumption agreement with OneWest Bank, FSB ("OneWest") to assume all of the Bank's deposits and certain other of its assets and liabilities. As a result of the loss of its primary financial asset, the Debtor commenced this case under Chapter 11 of the Bankruptcy Code by filing its voluntary petition for relief on January 6, 2010 (the "Petition Date"). Pursuant to §§ 1107 and 1108 of the Bankruptcy Code, the Debtor, as debtor-in-possession, continues to operate its business and manage its affairs. No trustee or examiner has been appointed in the Bankruptcy Case, and nor has the United States Trustee appointed any Official Committee of Unsecured Creditors in the Bankruptcy Case.

The Debtor, with the aid of a skeletal group of officers and employees with extensive banking and regulatory experience, intends to file a liquidating plan ("Plan"), the focus of which, in

addition to winding down the Debtor and liquidating any assets, is, first, to investigate whether any causes of action exist against various entities and/or individuals and to prosecute any such actions that may lead to potentially increased recoveries for Debtor's creditors (collectively, the "Debtor Claims") and, second, to investigate and pursue potentially substantial claims that the Debtor may have for refunds aggregating an estimated $90 million of taxes paid in prior tax years (the "Tax Refund"). The knowledge and background of the officers and employees that will continue working for the Debtor will not only make the wind-down and liquidation more efficient, but will also enhance the Debtor's ability to investigate, pursue and/or prosecute the Debtor's Tax Refund claims as well as any potential Debtor Claims that the estate may have. It is the Debtor's intent to emerge from the Chapter 11 case as soon as reasonably practicable and structure its Plan such that a post-confirmation liquidating agent will prosecute any and all actions and that will potentially maximize recoveries for the Debtor's creditors and other interested parties.

The Debtor has commenced its investigation of the Debtor Claims and the Tax Refund, but needs further time to evaluate such claims and how best they may be treated in the context of a Plan. With respect to the Tax Refund in particular, the FDIC has, through its counsel in this case, taken the position that the Debtor is not entitled to the Tax Refund, and that the Debtor may not file a return for its 2009 taxes or claim the Tax Refund without first obtaining further information from the FDIC relating to its takeover of the Bank, a position which the Debtor disputes. Nonetheless, in light of its disputes with the FDIC, the Debtor has filed for, and obtained, an extension of the time in which it may file its 2009 tax returns, to allow it time to further investigate the Tax Refund and other issues relating to the returns. The Debtor is working with its principal creditor, Wilmington Trust Company ("Wilmington Trust"), as Indenture Trustee for approximately $150,000,000.00 in senior, unsecured, indebtedness of the Debtor, to determine the most effective way of dealing with the Tax Refund claim, so as to maximize its benefit to the estate.

In addition, on February 22, 2010, the Debtor filed its *Notice of Motion and Motion for Entry of an Order (I) establishing Bar Dates for Filing Proofs of Claim or Interest; and (II) Approving the Form and Manner of Notice Thereof* [Docket No. 28] ("Bar Date Motion"). On April 15, 2010, the Court entered its *Order (I) Establishing Bar Dates for Filing Proofs of Claim or Interest; and (II)*

*Approving the Form and Manner of Notice Thereof* [Docket No. 34] ("Bar Date Order") which set May 20, 2010 as the bar date for filing general claims in the case, and July 5, 2010 as the bar date by which governmental entities may file proofs of claim. Both dates occur after May 6, 2010, the date on which plan exclusivity would expire, absent the extension sought by this Motion. Passage of the bar dates set in the Bar Date Order would allow the Debtor to identify the universe of claims in the case, as well as afford the Debtor the benefit of being able to evaluate any claim filed by the FDIC, both of which are essential to the Debtor in formulating a plan.

Accordingly, an extension of the Exclusive Periods by ninety (90) days (to August 4, 2010 and October 4, 2010, respectively), as sought herein, is necessary to allow the Debtor time in which to establish the universe of claims in the case, continue its investigation of the Debtor Claims and the Tax Refund with a view to determining how best each may be included in a plan and to continue its negotiations with creditors, including Wilmington Trust, regarding the terms of a consensual Plan.

## II.

## ARGUMENT

Section 1121(d) of the Bankruptcy Code provides the Court with authority to extend the exclusive periods in which a debtor may file a Chapter 11 plan and solicit acceptances for that plan for "cause." 11 U.S.C § 1121(d). The Bankruptcy Code does not define "cause." However, in determining whether "cause" exists in a given case, the Court should adopt a flexible approach to serve the end of giving the Debtor a reasonable and exclusive opportunity to negotiate a plan that is acceptable to creditors and to prepare adequate information relating to the ramifications of any plan to be disclosed to creditors. *See, e.g., In re McLean Indus., Inc.*, 87 B.R. 830, 833-35 (Bankr S.D.N.Y. 1987), *citing* H.R.Rep. No. 95-595, at 231, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6191; *In re Pub. Serv. Co. of New Hampshire*, 88 B.R. 521, 534 (Bankr. D.N.H. 1988) ("[T]he legislative intent . . . [is] to promote maximum flexibility") (internal citations omitted).

The decision to extend a debtor's exclusivity periods lies within the sound discretion of the bankruptcy court, based on the particular facts and circumstances of each case. *See, e.g., In re Cushman & Dredging Corp.*, 101 B.R. 405, 409 (E.D.N.Y. 1989) ("The 'cause' standard . . . has been referred to as a general standard that allows the Bankruptcy Court 'maximum flexibility to suit

various types of reorganization proceedings.'") (internal citations omitted); *First American Bank v. Southwest Gloves & Safety Equip., Inc.,* 64 B.R. 963, 965 (D. Del. 1986) ("Section 1121(d) provides the Bankruptcy Court with flexibility to either reduce or increase that period of exclusivity in its discretion").

The key question in determining whether or not cause exists to extend the exclusivity periods is whether an extension will serve to "facilitate movement towards a fair and equitable resolution of the case, taking into account all the divergent interests involved." *Official Committee of Unsecured Creditors v. Henry Mayo Newhall Mem. Hosp. (In re Henry Mayo Newhall Mem. Hosp.),* 282 B.R. 444, 453 (B.A.P. 9th Cir. 2002).

As the court noted in *Henry Mayo,* courts have generally considered a number of factors in determining whether to grant an extension of exclusivity. *See Henry Mayo,* 282 B.R. at 452. In *In re Dow Corning Corp.,* 208 B.R. 664 (Bankr. E.D. Mich. 1997), referenced in the *Henry Mayo* opinion, these factors were summarized as follows:

1. The size and complexity of the case;
2. The necessity of sufficient time to permit the debtor to negotiate a plan of reorganization;
3. The existence of good faith progress toward reorganization;
4. The fact that the debtor is paying its bills as they come due;
5. Whether the debtor has demonstrated reasonable prospects for filing a viable plan;
6. Whether the debtor has made progress in negotiations with creditors;
7. The amount of time that has elapsed in the case;
8. Whether the debtor is seeking an extension of exclusivity to pressure creditors to submit to the debtor's reorganization demands;
9. Whether an unresolved contingency exists.

*Dow Corning,* 208 B.R. at 664-65.

As is apparent, many of these factors overlap to a greater or lesser extent. For example, factors 2 and 7 are closely related and both deal with the lapse of time; similarly, factors 6 and 8 are related, in that both deal with the debtor's negotiations with creditors concerning a plan.

1  Nonetheless, application of these factors to this case demonstrably supports the extension of
2  exclusivity sought.

### A. The Size and Complexity of the Debtor's Case Warrants an Extension of Exclusivity.

Courts have generally recognized that where a debtor is unusually large, an extension of exclusivity may be warranted. *See, e.g. In re Texaco Inc.,* 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987). This is consistent with the legislative history. *See* H.R. Rep. 95-595, at 232 (1977) *reprinted in* 1978 U.S.C.C.A.N. 5963, 6191 ("if an unusually large company were to seek reorganization under Chapter 11, the court would probably need to extend the time in order to allow the debtor to seek agreement"); *see also, In re Express One International Inc.,* 194 B.R. 98, 101 (Bankr. E.D. Tex. 1996) (multiple extensions aggregating almost a year).

Courts also have recognized that an extension of exclusivity can be warranted even in smaller cases, where complex issues are present. *See, e.g., Bunch v. Hoffinger Industries (In re Hoffinger Industries),* 292 B.R. 639, 644 (B.A.P. 8th Cir. 2003), the Eighth Circuit Bankruptcy Appellate Panel affirmed an extension of the exclusive periods to approximately 595 days after the commencement of the case, despite the fact that the debtor was relatively small, with only $36 million in gross sales where the case was complex and the debtor was actively attempting to resolve the issues. So, too, in *Gaines v. Perkins (In re Perkins),* 71 B.R. 294 (D. Tenn. 1987), except that in that case the extension was for more than two and a half years, in a case with an estate of $13 million and approximately 100 creditors.

The Debtor's case has been pending less than four months. It is the Debtor's intent to propose and confirm a consensual plan in this case, and the Debtor has already established an open line of communication with its principal creditor, Wilmington Trust, that to end. However, there are numerous complex issues that the Debtor needs to address that will impact any plan that may be proposed in this case. Most significantly, it is the Debtor's understanding that the FDIC intends to assert a claim to the Debtor's Tax Refund, the most valuable asset of the Debtor's estate. Indeed, the FDIC has already, through its counsel, indicated that intention and requested that the Debtor extend the time in which it may file it tax returns for tax year 2009, on the ground that the returns will not

be complete without information, that is presently being prepared by the FDIC and lies within the FDIC's control as Receiver for the Bank, being included in those returns. Although the Debtor disputes that such additional information is needed, it nonetheless obtained the extension, and is presently seeking, in consultation with Wilmington Trust, to retain tax consultants and/or accountants with specific experience related to the numerous complex issues arising in connection with the Tax Refund as a result of the FDIC's takeover of the Bank, and the claims it asserts with respect to the Tax Refund.

The Tax Refund is the most valuable asset of the Debtor's estate. Thus, how these issues relating to the Tax Refund are to be addressed and resolved clearly has a significant impact on any plan that the Debtor may propose in the case. For this reason, it is more than appropriate that an extension of the exclusivity periods be granted, to allow the Debtor the time necessary to investigate and address these issues, so that it has a meaningful opportunity to negotiate and propose a consensual plan in its case.

### B. The Debtor's Case Has Been Pending Less Than Four Months and Additional Time is Needed to Formulate and Negotiate a Plan.

This is the Debtor's first request for an extension of exclusivity. The Debtor's case has been pending for less than four months, and additional time is necessary for the Debtor (1) to address the issues relating to the Tax Refund and the Debtor Claims, and (2) to allow the claims bar dates in the case to pass, so that the Debtor can define the universe of claims in its case. Both of these are essential to the Debtor's ability to negotiate and propose a plan. The Debtor's principal creditor, Wilmington Trust, supports this Motion and the requested extension of the exclusivity dates.

The Debtor, in consultation with Wilmington Trust, has interviewed a number of tax professionals with specific experience and expertise in the issues that have arisen in connection with the Tax Refund, and has selected, and will shortly file its application to retain, Crowe Horwath, LLP ("Crowe Horwath") as its tax advisers and accountants. The Debtor and Wilmington Trust each believe that the Debtor needs additional time to consult with Crowe Horwath in order to develop a strategy to maximize the potential value of this asset to the estate, as well as to better understand how the disputed claims of the FDIC may be treated in a plan.

**C. The Debtor Has Made Progress in Negotiating With its Creditors Towards a Consensual Plan.**

As noted above, the Debtor has worked co-operatively with Wilmington Trust, which represents the Debtor's unsecured bondholders and holds by far the largest claim in the Debtor's case. The Debtor and Wilmington Trust have discussed, in general terms, proposing a Chapter 11 plan in the Debtor's case. However, the case has not been pending for long, and the Debtor and Wilmington Trust agree that further analysis of the Tax Refund issues and the passage of the claims bar dates are required before a meaningful plan can be proposed. The Debtor, in consultation with Wilmington Trust, has worked diligently to identify tax professionals who have the specific experience to advise the Debtor on these and related issues. However, this is a somewhat specialized area of expertise, and many of the relatively small pool of suitable candidates were conflicted. Accordingly, the search has taken longer than might ordinarily have been expected. Nonetheless, as noted, the Debtor has selected, and will shortly file its application to employ, Crowe Horwath as its tax professionals to assist it in addressing these issues and advancing the process of formulating a consensual plan.

**D. The Debtor is Meeting its Post-Petition Obligations.**

The Debtor is current on all of its post-petition obligations and is in compliance with all of the requirements of the United States Trustee ("UST"). The Debtor presently has on hand approximately $ 4.4 million in cash and the extension of time sought will not in any way adversely affect the Debtor's ability to continue meet its administrative obligations.

**E. The Debtor Has Good Prospects for Filing a Plan Once it Has Had an Opportunity to Define the Universe of Claims in the Case and to Address and Resolve the Issues Relating to the Tax Refund and the Debtor Claims.**

The issues of how to maximize the value of the Tax Refund and how best to treat it and the contested claims of the FDIC in a plan are unresolved at this time. However, the Debtor has made substantial progress in addressing them and has retained, after a diligent search, advisors that the Debtor believes have the expertise needed to assist in resolving these questions. Similarly, the Debtor has taken the initial steps necessary to evaluate the Debtor Claims.

Ultimately, the Debtor and its principal creditor, Wilmington Trust, are in agreement that the Debtor will propose a liquidating Chapter 11 plan that will provide for an orderly liquidation of its assets via a liquidating agent or trustee established under the plan. The Debtor is confident that such a plan will be possible of confirmation. However, in order to discharge its obligations to its creditors, it is first necessary for the Debtor to adequately investigate its assets, and to define the universe of claims in the case. In order to allow the Debtor to do so, and to preserve for the Debtor the opportunity to negotiate and propose its own plan in this case, the ninety (90) day extension of the exclusive periods under 11 U.S.C. § 1121(d) sought by this Motion is both necessary and appropriate.

## III.

## CONCLUSION

Accordingly, for the reasons set forth above, the Debtor requests that the Court enter its Order granting this Motion, extending the exclusive periods under 11 U.S.C. § 1121 in which the Debtor alone may propose, and obtain solicitation of acceptances for, a Chapter 11 plan, by ninety (90) days, to August 4, 2010 and October 4, 2010, respectively, and for such other relief as the Court may deem appropriate under the circumstances.

Respectfully submitted,

Dated: April 30, 2010

LANDAU GOTTFRIED & BERGER LLP

By: _____
Jon L.R. Dalberg
Counsel for FirstFed Financial Corp

LANDAU
GOTTFRIED &
BERGER LLP

11

## DECLARATION OF JON L.R. DALBERG

I, Jon L.R. Dalberg, do hereby declare:

1.      I am a partner of Landau Gottfried & Berger LLP, bankruptcy counsel to FirstFed Financial Corp., debtor and debtor-in-possession ("FirstFed" or "Debtor") in FirstFed's Chapter 11 bankruptcy case, pending before this Court as Chapter 11 Case No. 2:10-bk-12927-ER ("Bankruptcy Case"), and the attorney principally responsible for representing the Debtor. I am admitted to practice in the State of California and before this Court.

2.      I make this declaration in support of the *Debtor's Motion for Entry of an Order Pursuant to Section 1121(d) of the Bankruptcy Code Extending the Periods in which the Debtor Exclusively May File a Chapter 11 Plan and Solicit Acceptances Thereto* (the "Motion"). I am familiar with the matters relating to the Motion and the relief sought therein and, if called upon, I could and would testify competently thereto.

3.      The Debtor is a bank holding company incorporated in Delaware. Its principal business has been to serve as the holding company for its wholly-owned subsidiary, First Federal Bank of California (the "Bank"). On December 18, 2009, The Debtor's primary federal banking regulator, the Office of Thrift Supervision ("OTS"), closed the Bank and appointed the Federal Deposit Insurance Company ("FDIC") as receiver for the Bank. Concurrently, the FDIC, in its capacity as receiver for the Bank, entered into a purchase and assumption agreement with OneWest Bank, FSB ("OneWest") to assume all of the Bank's deposits and certain other of its assets and liabilities. As a result of the loss of its primary financial asset, the Debtor commenced this case under Chapter 11 of the Bankruptcy Code by filing its voluntary petition for relief on January 6, 2010 (the "Petition Date"). Pursuant to §§ 1107 and 1108 of the Bankruptcy Code, the Debtor, as debtor-in-possession, continues to operate its business and manage its affairs. No trustee or examiner has been appointed in the Bankruptcy Case, and nor has the United States Trustee appointed any Official Committee of Unsecured Creditors in the Bankruptcy Case.

4.      The Debtor, with the aid of a skeletal group of officers and employees with extensive banking and regulatory experience, intends to file a liquidating plan ("Plan"), the focus of which, in addition to winding down the Debtor and liquidating any assets, is, first, to investigate whether any

causes of action exist against various entities and/or individuals and to prosecute any such actions that may lead to potentially increased recoveries for Debtor's creditors (collectively, the "Debtor Claims") and, second, to investigate and pursue potentially substantial claims that the Debtor may have for refunds aggregating an estimated $90 million of taxes paid in prior tax years (the "Tax Refund"). The Debtor believes that the knowledge and background of the officers and employees that will continue working for the Debtor will not only make the wind-down and liquidation more efficient, but will also enhance the Debtor's ability to investigate, pursue and/or prosecute the Debtor's Tax Refund claims as well as any potential Debtor Claims that the estate may have. It is the Debtor's intent to emerge from the Chapter 11 case as soon as reasonably practicable and structure its Plan such that a post-confirmation liquidating agent will prosecute any and all actions and that will potentially maximize recoveries for the Debtor's creditors and other interested parties.

5. The Debtor has commenced its investigation of the Debtor Claims and the Tax Refund, but needs further time to evaluate such claims and how best they may be treated in the context of a Plan. With respect to the Tax Refund in particular, the FDIC has, through its counsel in the Bankruptcy Case, taken the position that the Debtor is not entitled to the Tax Refund, and that the Debtor may not file a return for its 2009 taxes or claim the Tax Refund without first obtaining further information from the FDIC relating to its takeover of the Bank, a position which the Debtor disputes. Nonetheless, in light of its disputes with the FDIC, the Debtor has filed for, and obtained, an extension of the time in which it may file its 2009 tax returns, to allow it time to further investigate the Tax Refund and other issues relating to the returns. The Debtor is working with its principal creditor, Wilmington Trust Company ("Wilmington Trust"), as Indenture Trustee for approximately $150,000,000.00 in senior, unsecured, indebtedness of the Debtor, to determine the most effective way of dealing with the Tax Refund claim, so as to maximize its benefit to the estate.

6. In addition, on February 22, 2010, the Debtor filed its Notice of Motion and Motion for Entry of an Order (I) establishing Bar Dates for Filing Proofs of Claim or Interest; and (II) Approving the Form and Manner of Notice Thereof [Docket No. 28] ("Bar Date Motion"). On April 15, 2010, the Court entered its Order (I) Establishing Bar Dates for Filing Proofs of Claim or Interest; and (II) Approving the Form and Manner of Notice Thereof [Docket No. 34] ("Bar Date Order") which set

May 20, 2010 as the bar date for filing general claims in the case, and July 5, 2010 as the bar date by which governmental entities may file proofs of claim. Both dates occur after May 6, 2010, the date on which plan exclusivity would expire, absent the extension sought by this Motion. Passage of the bar dates set in the Bar Date Order would allow the Debtor to identify the universe of claims in the case, as well as afford the Debtor the benefit of being able to evaluate any claim filed by the FDIC, both of which are essential to the Debtor in formulating a plan.

7. The Tax Refund is the most valuable asset of the Debtor's estate. Thus, how these issues relating to the Tax Refund are to be addressed and resolved clearly has a significant impact on any plan that the Debtor may propose in the case.

8. Accordingly, the Debtor, in consultation with Wilmington Trust, has interviewed a number of tax professionals with specific experience and expertise in the issues that have arisen in connection with the Tax Refund, and has selected, and will shortly file its application to retain, Crowe Horwath, LLP ("Crowe Horwath") as its tax advisers and accountants. The Debtor and Wilmington Trust each believe that the Debtor needs additional time to consult with Crowe Horwath in order to develop a strategy to maximize the potential value of this asset to the estate, as well as to better understand how the disputed claims of the FDIC may be treated in a plan.

9. The Debtor is current on all of its post-petition obligations and is in compliance with all of the requirements of the United States Trustee ("UST"). The Debtor presently has on hand approximately $ 4.4 million in cash and the extension of time sought will not in any way adversely affect the Debtor's ability to continue meet its administrative obligations.

Executed this 30th day of April, 2010, in Los Angeles, California.

*[signature]*
Jon L.R. Dalberg

| In re: | | CHAPTER 11 |
|---|---|---|
| FirstFed Financial Corp. | Debtor(s). | CASE NUMBER 2:10-bk-12927-ER |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
Landau Gottfried & Berger LLP
1801 Century Park East, Suite 1460
Los Angeles, CA 90067

A true and correct copy of the foregoing document described
**NOTICE OF MOTION AND MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE EXTENDING THE PERIODS IN WHICH THE DEBTOR EXCLUSIVELY MAY FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THERETO; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JON L.R. DALBERG IN SUPPORT THEREOF.**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On April 30, 2010 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Louis J Cisz    lcisz@nixonpeabody.com
- John W Kim    jkim@nossaman.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL(indicate method for each person or entity served):**
On April 30, 2010 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 30, 2010 | Emily Borman | /s/ |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009
**9013-3.1**

F

| In re:<br>FirstFed Financial Corp.<br><br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER  2:10-bk-12927-ER |
|---|---|

## II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL

Honorable Ernest Robles
USBC - Central District of California
255 East Temple Street, Suite 1560
Los Angeles, CA  90012

**U.S. Trustee**
Office of the United States Trustee
ATTN: Gary Baddin/ Susan Trevino/ Dare Law
725 S. Figueroa St., Ste. 2600
Los Angeles, CA  90017

**Debtor**
FirstFed Financial Corp.
6320 Canoga Ave., Suite 1551
Woodland Hills, CA 91367

**Special Counsel for Debtor**
Ivan L. Kallick
MANATT, PHELPS & PHILLIPS, LLP
11355 West Olympic Boulevard
Los Angeles, California 90064

Ellen R. Marshall
MANATT, PHELPS & PHILLIPS, LLP
695 Town Center Drive, 14th Floor
Costa Mesa, California 92626

**Creditors with 20 Largest Claims**
Delaware Division of Corporations
ATTN Mazie Kramer
401 Federal Street, Ste. 4
Dover, DE   19901

FBR Capital Markets
1001 Nineteenth Street North
Arlington, VA 22209

First Federal Bank of California
12555 West Jefferson Blvd
Los Angeles, CA 90066

Securities and Exchange Commission
ATTN: S. Lavigna, Esq.
5670 Wilshire Boulevard, 11th Floor
Los Angeles, CA 90036

Grant Thornton LLP
1000 Wilshire Blvd Suite 300
Los Angeles, CA 90017

Grazia M Galuppo
27145 Manor Circle
Santa Clarita, CA 91354

Hexagon Securities LLC
555 Madison Ave 25th Floor
New York, NY 10022

HQ Global Workplaces
6320 Canoga Avenue Suite 1500
Woodland Hills, CA 91367

Manatt Phelps & Phillips LLP
695 Town Center Drive 14th Floor
Costa Mesa, CA 92626

Morrison and Foerster LLP
555 West Fifth Street Suite 3500
Los Angeles, CA 90013

Nixon Peabody LLP
Catherine Ng, Esq./ Frank Hamblett, Esq.
100 Summer Street
Boston, Massachusetts  02110

Registrar and Transfer Company
ATTN Dan Flynn
10 Commerce Drive
Cranford, NJ 07016

R R Donnelley
333 South Grand Ave
Los Angeles, CA 90071

Wilmington Trust Company
ATTN Patrick Healy
Rodney Square North
1100 North Market Street
Wilmington, DE 19890

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**9013-3.1**

F