LANDAU GOTTFRIED & BERGER, LLP
JON L.R. DALBERG (State Bar No. 128259)
RODGER M. LANDAU (State Bar No. 151456)
SHARON M. KOPMAN (State Bar No. 164449)
1801 Century Park East, Suite 1460
Los Angeles, California 90067
Telephone: (310) 557-0050
Facsimile: (310) 557-0056
jdalberg@lgbfirm.com
rlandau@lgbfirm.com
skopman@lgbfirm.com

Counsel for FirstFed Financial Corp.

UNITED STATES BANKRUPTCY COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

In re

FIRSTFED FINANCIAL CORP.,

    Debtor and
    Debtor in Possession.

Bk. No. 2:10-bk-12927-ER

Chapter 11

**APPLICATION OF FIRSTFED FINANCIAL CORP. FOR ORDER AUTHORIZING (1) EMPLOYMENT OF RUS, MILIBAND & SMITH AS DEBTOR'S SPECIAL LITIGATION COUNSEL AND (2) POST-PETITION RETAINER; DECLARATION OF RUS MILIBAND IN SUPPORT THEREOF**

[No hearing required unless required per L.B.R. 2014-1(b)(1)(C)]

41409044.1

DEBTOR'S APPLICATION TO EMPLOY RUS, MILIBAND & SMITH AS SPECIAL COUNSEL

**TO THE HONORABLE ERNEST ROBLES, UNITED STATES BANKRUPTCY JUDGE AND ALL INTERESTED PARTIES:**

FirstFed Financial Corp. (the "Debtor" or "Applicant"), hereby submits its application ("Application") (1) requesting approval to retain and employ the law firm of Rus, Miliband & Smith (the "Firm") as of July 2, 2010, to represent it as its special litigation counsel in this Chapter 11 case pursuant to the terms of the Engagement Agreement attached as Exhibit 1 to the Declaration of Ronald Rus ("Rus Declaration") attached hereto and (2) authorizing the Debtor to provide the Firm with a Fifty Thousand Dollar ($50,000) post-petition retainer ("Retainer").

This Application is brought pursuant to sections 327 and 330 of Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), Rules 2014 and 5002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2014-1 of the Local Bankruptcy Rules (the "Local Rules"), and the Guide to Applications for Employment of Professionals and Treatment of Retainers issued by the Office of the United States Trustee (the "OUST Guidelines"), and is based on the statements contained herein and on the supporting Rus Declaration. In support of the Application, the Debtor respectfully represents as follows:

## I. BACKGROUND

### A. Description Of The Debtor.

The Debtor is a bank holding company incorporated in Delaware. Its principal business has been to serve as the holding company for its wholly-owned subsidiary, First Federal Bank of California (the "Bank"). On December 18, 2009, the Debtor's primary federal banking regulator, the Office of Thrift Supervision, closed the Bank and appointed the Federal Deposit Insurance Company ("FDIC") as receiver for the Bank. Concurrently, the FDIC, in its capacity as receiver for the Bank, entered into a purchase and assumption agreement with OneWest Bank, FSB to assume all of the Bank's deposits and certain other of its assets and liabilities.

### B. The Chapter 11 Petition.

As a result of the loss of its primary financial asset, the Debtor commenced this case under Chapter 11 of the Bankruptcy Code by filing its voluntary petition for relief on January 6, 2010 (the "Petition Date"). The Debtor continues to operate its business and manage its affairs as a debtor in

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this Chapter 11 case.

## II.  SCOPE OF SERVICES TO BE PROVIDED AND QUALIFICATIONS OF FIRM

The Debtor seeks to employ the Firm to investigate and evaluate potential claims the Debtor may have against the Debtor's pre-petition accountant and auditor, Grant Thornton, LLP.[1] Upon completion of such evaluation, the Firm shall make recommendations to the Debtor regarding any claims, potential prosecution of the same, and related matters arising in connection with the foregoing. The Firm may be retained at a later date to prosecute claims, if any, potentially on a contingency fee basis.[2]

As reflected in the Rus Declaration, the Firm is a highly regarded California law firm with a reputation for aggressively protecting its clients' interests. The Firm has a history of trying difficult and complex cases, and has demonstrated a success rate and skill-set that is on a par with larger state-wide and national firms. The Firm represents a wide variety of clients, including Fortune 500 companies, institutional lenders, municipalities, court-appointed trustees and creditors' committees, as well as businesses and individuals of note in Southern California.

## III.  COMPENSATION OF FIRM

### A.  Post-Petition Retainer Should Be Authorized

Subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the OUST Guidelines, and this Court's rules and orders, the Debtor seeks to pay the Firm a Fifty Thousand ($50,000) Dollar post-petition retainer ("Retainer"). As set forth in the Engagement Agreement, the Retainer is the maximum amount that will be paid to the Firm for the services contemplated under the Engagement Agreement. If any portion of the Retainer remains after the Firm's work is completed, such unused portion shall be returned to the Debtor. As set forth in the Rus Declaration, the normal hourly billing rate for the Firm's professionals is as follows: $285.00 to $325.00 per hour for associates and $375.00 to $575.00 per hour for partners. Paralegal time is billed at $150.00 per hour. These rates may be adjusted annually from time to time, pursuant to subsequent notice.

---

[1] The Manatt, Phelps & Phillips, LLP firm, which has been retained by the Debtor as special corporate, banking and litigation counsel, will not be duplicating any efforts on this matter.

[2] If the Firm is retained at a later date, this Application will be amended to provide the terms of that new engagement agreement.

In determining whether a post-petition retainer is justified and reasonable in a chapter 11 case, courts consider various factors, including: (a) the retainer's economic impact on the debtor's ongoing business operation and the debtor's ability to reorganize; (b) the amount and reasonableness of the retainer; (c) the reputation of the professional; and (d) the ability of the professional to disgorge any unjustified portion of a retainer paid. *See In re Jefferson Bus. Ctr. Assocs.*, 135 B.R. 676, 680 (Bankr. D. Colo. 1992) ; *see also In re Truong*, 259 B.R. 264, 267 (Bankr. D.N.J. 2001) (citing factors in *In re Knudsen Corp.*, 84 B.R. 668 (B.A.P. 9th Cir. 1988). Here, the Firm is being asked to perform a discrete task that ultimately may substantially benefit the Debtor's estate if it is determined that potential claims exist against Grant Thornton. The Retainer was required by the Firm and the Debtor believes the Retainer to be reasonable and justified for the type of work the Firm is being engaged to perform and the skill required to perform such work. Moreover, since the Debtor is liquidating, the Retainer does not impact any reorganization effort. To the extent any fees or expenses paid to the Firm are disallowed by this Court, the Firm understands that such disallowed amounts may be ordered disgorged by the Firm and returned to the Applicant. Based on the foregoing, the post-petition Retainer should be authorized.

B. **Draw-Down on Retainer**

It is contemplated that the Debtor will file a motion for a *Knudsen* Order that would provide a mechanism for monthly payments of professionals as permitted by sections 330 and 331 of the Bankruptcy Code and Bankruptcy Rule 2016. The Firm understands that notwithstanding the entry of a *Knudsen* Order all fees and expenses are subject to Court approval. If the Court adopts a monthly fee procedure, the Firm will seek to draw-down on its Retainer pursuant to such procedure.

IV. **THE FIRM'S PROSPECTIVE EMPLOYMENT COMPLIES WITH THE BANKRUPTCY CODE, THE BANKRUPTCY RULES, THE LOCAL BANKRUPTCY RULES AND THE GUILDELINES OF THE OFFICE OF THE UNITED STATES TRUSTEE**

A. **The Firm is a "Disinterested Person".**

To the best of the Debtor's knowledge and based upon the Rus Declaration filed in support of this Application, the Debtor believes the Firm is a "disinterested person" as defined in Section 101(14) of the Bankruptcy Code and provides as follows:

1. **Absence of Adverse Interests.**

As reflected in the Rus Declaration, the Firm does not hold or represent any interest materially adverse to the interests of the Debtor's estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in the Debtor or an investment banker for any security of the Debtor, or for any other reason. As reflected in the Rus Declaration, the Firm has reviewed the Debtor's Schedules of Assets and Liabilities and its own current and former representations in connection with this disclosure.

2. **Absence of Interest in Debtor.**

As reflected in the Rus Declaration, the Firm (a) is not a creditor, equity security holder or insider of the Debtor as that term is defined in applicable provisions of the Bankruptcy Code; (b) is nor was an investment banker for any outstanding security of the Debtor and has not been within three (3) years before the Petition Date, an investment banker for a security of the Debtor or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the Debtor; and (c) is not a director, officer, or employee of the Debtor or of any investment banker for any security of the Debtor within two (2) years of the Petition Date.

B. **Absence of Conflict of Interest.**

To the best of the Debtor's knowledge, and based upon the attached Rus Declaration, the Firm does not have any connection with the Debtor, its significant creditors and other significant parties in interest, their attorneys, or to a judge of this Court or the Office of the United States Trustee for region 16. As reflected in the Engagement Agreement, the Firm has represented and will continue to represent different clients who may be in the same industries in which the Debtor conducts business or who may be interested parties. The Firm is continuing its conflicts check and, to the extent it discovers material facts or relationships that it deems require disclosure, it will provide the Court with supplemental disclosure.

Upon discovery of any fact that may create an actual or potential conflict or that bears upon the Firm's continued disinterestedness, the Firm will give notice to those parties that received the original notice to employ the Firm as counsel and parties requesting special notice. The notice will

outline the facts giving rise to the Firm's potential conflict of interest. At such time, parties in interest will be given 15 days to object to the Firm's continued representation of the Debtor.

    C.    **Disclosure of Employment Agreement.**

Other than the Engagement Agreement between Debtor and the Firm, no separate written agreement exists pertaining to the Firm's employment in connection with this case. The primary terms of the Engagement Agreement are highlighted in this Application. The Engagement Agreement is attached as Exhibit 1 to the Rus Declaration.

    D.    **No Sharing of Compensation.**

In accordance with section 504 of the Bankruptcy Code, the Firm has informed the Debtor that there is no agreement or understanding between the Firm and any other entity, other than an employee or consultant of the Firm, for the sharing of compensation received or to be received for services rendered in connection with this Bankruptcy Case.

    E.    **Awareness of and Compliance With Applicable Law**.

As reflected in the Rus Declaration, the Firm is familiar with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the OUST Guidelines and will comply with them.

    F.    **Effective Date of the Employment**.

The Applicant requests that the Firm's employment be approved as of the date of the Engagement Agreement, July 2, 2010.

DEBTOR'S APPLICATION TO EMPLOY RUS, MILIBAND & SMITH AS SPECIAL COUNSEL

**WHEREFORE**, the Applicant respectfully requests that it be authorized (i) to employ the Firm effective as of July 2, 2010 as special litigation counsel, to render legal services as described above, with compensation and reimbursement of expenses to be paid as an administrative expense in such amounts as this Court may hereafter determine and allow and (ii) to provide the Firm with the post-petition Retainer.

Dated: July 2, 2010                                FIRSTFED FINANCIAL BANCORP.


By: __/s/ Brian Argrett__
BRIAN ARGRETT
Chief Executive Officer of Debtor and
Debtor-In-Possession Firstfed Financial
Corp.

## DECLARATION OF RONALD RUS

I, Ronald Rus, declare as follows:

1. I am an attorney at law duly licensed to practice before the above-entitled Court, and am a member of the law firm of Rus, Miliband & Smith, a Professional Corporation, proposed special litigation counsel to Firstfed Financial Corporation.

2. I have first-hand personal knowledge of the matters set forth herein, and if called upon as a witness, would and could competently testify thereto.

3. This declaration is submitted in support of Application Of Firstfed Financial Corp. For Order Authorizing: (1) Employment Of Rus, Miliband & Smith As Debtor's Special Litigation Counsel And (2) Post-Petition Retainer (the "Application")

4. I have assisted the Debtor and its general bankruptcy counsel Landau Gottfried & Berger, LLP in the preparation of the above Application and know its contents and the exhibits referenced therein.

5. The Firm is a highly regarded California law firm with a reputation for aggressively protecting its clients' interests. The Firm has a history of trying difficult and complex cases, some of the most high-profile cases in the region, and has demonstrated a success rate and skill-set that is on a par with larger state-wide and national firms. The Firm represents a wide variety of clients, including Fortune 500 companies, institutional lenders, municipalities, court-appointed trustees and creditors' committees, as well as businesses and individuals of note in Southern California.

6. The Debtor seeks to retain the Firm pursuant to the terms of the Engagement Agreement executed on July 2, 2010 to investigate and evaluate potential claims the Debtor may have against the Debtor's pre-petition accountant and auditor, Grant Thornton, LLP. Upon completion of such evaluation, the Firm will make recommendations to the Debtor regarding any claims, potential prosecution of the same, and related matters arising in connection therewith. The Firm may be retained at a later date to prosecute claims, if any. A true and correct copy of the proposed Engagement Agreement is attached hereto as Exhibit "1."

///

7. Pursuant to the Engagement Agreement and subject to Bankruptcy Court approval of the Application, the Debtor shall pay the Firm a retainer of Fifty Thousand ($50,000) Dollars ("Retainer"). The Retainer is the maximum amount that will be paid to the Firm for the services contemplated under the Engagement Agreement. If any portion of the Retainer remains after the Firm's work is completed, such unused portion shall be returned to the Debtor. To the extent any fees or expenses paid to the Firm are disallowed by this Court, the Firm understands that such disallowed amounts may be ordered disgorged by the Firm and returned to the Applicant.

8. The normal hourly billing rate for the Firm's professionals is as follows: $285.00 to $325.00 per hour for associates and $375.00 to $575.00 per hour for members. Paralegal time is billed at $150.00 per hour. These rates may be adjusted annually from time to time, pursuant to subsequent notice.

9. The Firm has agreed to accept as compensation for services and reimbursement of costs and expenses sums as may be allowed by this Court in accordance with applicable law, including Bankruptcy Code §§ 330 and 331, such sums to be based upon the time spent and services rendered, the Firm's guideline hourly rates, the results achieved, the difficulties encountered, the complexities involved, costs and expenses incurred and other relevant factors. No compensation or reimbursement of expenses will be paid except as approved by the Court.

10. The Firm understands that the Debtor intends to file a motion for a *Knudsen* Order that would provide a mechanism for monthly payments of professionals as permitted by sections 330 and 331 of the Bankruptcy Code and Bankruptcy Rule 2016. If the Court adopts a monthly fee procedure, the Firm will seek to draw-down on its Retainer pursuant to such procedure. The Firm further understands that notwithstanding the entry of a *Knudsen* Order all fees and expenses are subject to Court approval.

11. There are no arrangements between the Firm and any other entity for the sharing of compensation received or to be received in connection with the case, except insofar as such compensation may be shared among the partners of the Firm.

12. I believe that the Firm, and each member of the Firm, is a "disinterested person" as that term is defined by the Bankruptcy Code. The Firm has no interest materially adverse to the

interests of the Debtor's estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in the Debtor or an investment banker for any security of the Debtor, or for any other reason.

13.   To the best of my knowledge, the Firm (a) is not a creditor, equity security holder or insider of the Debtor as that term is defined in applicable provisions of the Bankruptcy Code; (b) is nor was an investment banker for any outstanding security of the Debtor and has not been within three (3) years before the Petition Date, an investment banker for a security of the Debtor or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the Debtor; and (c) is not a director, officer, or employee of the Debtor or of any investment banker for any security of the Debtor within two (2) years of the Petition Date.

14.   To the best of my knowledge, the Firm does not have any connection with the Debtor, its significant creditors and other significant parties in interest, their attorneys, or to a judge of this Court or the Office of the United States Trustee for region 16. As reflected in the Engagement Agreement, the Firm has represented and will continue to represent different clients who may be in the same industries in which the Debtor conducts business or who may be interested parties. The Firm is continuing its conflicts check and, to the extent it discovers material facts or relationships that it deems require disclosure, it will provide the Court with supplemental disclosure. Upon discovery of any fact that may create an actual or potential conflict or that bears upon the Firm's continued disinterestedness, the Firm will give notice to those parties that received the original notice to employ the Firm as counsel and parties requesting special notice. The notice will outline the facts giving rise to the Firm's potential conflict of interest. At such time, parties in interest will be given 15 days to object to the Firm's continued representation of the Debtor.

15.   Other than the Engagement Agreement between Debtor and the Firm, no separate written agreement exists pertaining to the Firm's employment in connection with this case. The primary terms of the Engagement Agreement are highlighted in the Application.

/ / /

/ / /

10

16.  The Firm is familiar with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the OUST Guidelines and will comply with them.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 2nd day of July, 2010, at Irvine, California.

_____
RONALD RUS

# EXHIBIT 1

# ATTORNEY/CLIENT FEE AGREEMENT

AGREEMENT made as of the 2nd day of July, 2010, by and between RUS, MILIBAND & SMITH, A Professional Corporation ("Attorneys") and FIRSTFED FINANCIAL CORP. ("Client").

Client has retained Attorneys to represent Client in connection with the investigation and evaluation of potential claims held by Client against Grant Thornton, and to make recommendations incident to such potential claims. Such employment shall be subject to approval by the United States Bankruptcy Court for the Central District of California ("Bankruptcy Court") in the Chapter 11 case entitled, *In re FirstFed Financial Corp.*, United States Bankruptcy Court Case No. 2:10-bk-12927-ER. Client acknowledges that Attorneys are not being retained to provide tax advice to Client. If Client desires Attorneys to provide any other legal services which are not identified in the Agreement, a separate written agreement between Client and Attorneys will be required.

Client shall pay to Attorneys a deposit of $50,000.00 (the "Retainer"), against which Attorneys will bill Client. The $50,000.00 Retainer is the maximum amount which may be paid to Attorneys by Client for the services contemplated by this Agreement. If any portion of the Retainer remains after Attorneys' recommendation, such unused portion shall be returned to Client. The Retainer will be held in the Attorneys' client trust account. Client authorizes Attorneys to use the Retainer to pay the fees and other charges Client incurs, subject to the requirements of the Bankruptcy Court, the Bankruptcy Code, the Bankruptcy Rules and the Guidelines of the Office of the United States Trustee ("OUST").

Client is retaining Attorneys, and not any particular attorney in the firm. Attorneys will charge a reasonable fee for professional services based primarily on an hourly rate which is in effect at the time the services are rendered. The factors Attorneys will take into account in determining the ultimate fee are set forth in the American Bar Association Rules, a copy of which is enclosed for Client's review. The current hourly rate for services performed by Ronald Rus is $575.00, and the current hourly rate for services performed by Joel S. Miliband is $525.00. From time to time, other Attorneys in the office may be requested to assist in Client's matter. Such Attorney's time will be billed at the rate of $285.00 to $325.00 per hour for associate's time, and $375.00 to $575.00 per hour for member's time. In addition, Attorneys may utilize the services of paralegals and law clerks at $150.00 per hour. Attorneys reserve the right to change these rates at any time after thirty (30) days' written notice to Client. The fees charged by Attorneys are not set by law.

Attorneys' billings shall include all time expended on Client's file, including, but not limited to, time spent on the telephone, letters or other communications, legal research, preparation of pleadings, court appearances, attendance at depositions, conferences and all other time expended on Client's behalf. Although Attorneys will maintain accurate time records, it is extremely difficult to keep completely accurate time records for relatively brief services such as telephone calls, review of correspondence and the like.

**Exhibit 1**

Attorneys will incur various costs and expenses in performing legal services under this Agreement. Client agrees to pay for those costs and expenses in addition to the hourly fees. The costs and expenses commonly include processor service fees, fees fixed by law or assessed by courts and other agencies, court reporter's fees, long distance telephone calls, messenger and other delivery fees, postage, parking and other local travel expenses, photocopying and other reproduction costs, word processing charges, charges for computer time and other similar items.

Client is aware that further work may be necessary after Attorneys' recommendation. Many times clients expect that there will be no further charges after the final court action or the final judgment is obtained or the transaction closing occurs. However, additional time is usually needed to prepare an order, or to resolve disagreements that may have arisen between the parties or attorneys as to what the Judge actually said or the parties agreed, or as to what wording should be used in the final order to complete transactional details. This paragraph is only to inform Client that fees may continue after the final court action or the recommendation, but will be incurred only when necessary to represent Client's best interests.

Client agrees to pay transportation, meals and lodging and all other costs of any necessary out of town travel by Attorneys and Attorneys' personnel. Client will be charged the hourly rates for the time legal personnel spend traveling.

It is Attorneys' policy to bill at least monthly. Attorneys may draw-down on the Retainer pursuant to court approved procedures.

In certain cases, a judge, arbitrator or other judicial officer may order the other party to pay a portion of Client's attorneys' fees. Client is aware that the order does not establish the total fees payable to Attorneys, but upon payment shall be credited against the fees earned under this Agreement. If Client's bill is paid in full, then any payments received from the other party shall be paid to Client or credited against future fees at Client's discretion.

To aid in the preparation of Client's case, it may become necessary to hire expert witnesses, consultants or investigators. Attorneys will not hire such persons unless Client agrees to pay their fees and charges. Attorneys will select any expert witnesses, consultants or investigators to be hired.

Attorneys have explained to Client that it is difficult to predict with any reasonable degree of accuracy the outcome of any phase of this matter or the nature and extent of legal services which will be required on Client's behalf. Therefore, Attorneys have not made any prediction, commitment or guarantee as to the outcome of any phase of this matter. All comments about the outcome of Client's matter are merely expressions of the opinion of Attorneys as attorneys.

Client agrees to be truthful with Attorneys, to cooperate, to keep Attorneys informed of developments, to abide by this Agreement, to pay Attorneys' bills on time and keep Attorneys advised of Client's address, telephone number and whereabouts.

Client may discharge Attorneys at any time. Attorneys may withdraw from representing Client with Client's consent or for good cause. Good cause includes, but is not limited to, Client's breach of this Agreement, Client's refusal to cooperate with Attorneys or to follow

Exhibit 1

Attorneys' advice on a material matter or any fact or circumstances that would render Attorneys' continuing representation unlawful or unethical. All parties hereto agree that obligations of Attorneys under this Agreement are subject to court orders, statutes, laws, rules and regulations governing Client's legal rights and Client authorizes Attorneys to take whatever action is necessary to comply with the requirements of such authorities.

When Attorneys' services conclude, all unpaid charges will immediately become due and payable subject to the requirements of the Bankruptcy Court and the OUST. After Attorneys' services conclude, Attorneys will, upon Client's request, deliver Client's file to Client, along with any funds or property of Client's in Attorneys' possession.

The parties agree that if a dispute arises regarding Attorneys' fees or costs advanced on Client's behalf, or if any legal action or other proceeding is brought for the enforcement of this Agreement, the prevailing party shall be entitled to recover a reasonable sum for Attorneys' fees and other costs incurred in that action or proceeding in addition to any other relief to which the prevailing party may be entitled.

This Agreement contains the entire Agreement of the parties. No other agreement, statement, or promises made on or before the effective date of this Agreement will be binding on the parties.

If any provision of this Agreement is held in whole or in part to be unenforceable for any reason, the remainder of that provision and of the entire agreement will be severable and remain in effect.

This Agreement is made in and shall be construed under and governed by the laws of the State of California and the United States of America.

This Agreement may be modified by only subsequent agreement of the parties, in writing and signed by the parties.

RUS, MILIBAND & SMITH
A Professional Corporation

By:_____
RONALD RUS

Exhibit 1

14

I/we have read and understood the foregoing terms and agree to them, as of the date RUS, MILIBAND & SMITH, A Professional Corporation first provided services. I/we acknowledge that the foregoing Agreement correctly sets forth the fee agreement with the firm of RUS, MILIBAND & SMITH, A Professional Corporation, for the handling of this matter. If more than one party signs below, we each agree to be liable, jointly and severally, for all obligations under this Agreement. I acknowledge receipt of a copy of this Agreement.

                                      FIRSTFED FINANCIAL CORP.

                                      By: _____
                                             BRIAN ARGRETT
                                             Chief Executive Officer

                                    95-4087449
                                    (Tax ID # for Trust Account)

**Exhibit 1**

15

## RULE 1.5 FEES

(A)    A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

(1)    The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2)    The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3)    The fee customarily charged in the locality for similar legal services;

(4)    The amount involved and the result obtained;

(5)    The time limitations imposed by the client or by the circumstances;

(6)    The nature and length of the professional relationship with the client;

(7)    The experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8)    Whether the fee is fixed or contingent.

DATED: July 2, 2010

FIRSTFED FINANCIAL CORP.

By: _____
BRIAN ARGRETT
Chief Executive Officer

Exhibit 1

16

| In re:<br><br>First Fed Financial Corp.,<br><br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER  2:10-bk-12927-ER |
|---|---|

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
Landau Gottfried & Berger LLP
1801 Century Park East, Suite 1460
Los Angeles, CA 90067

A true and correct copy of the foregoing document described
**APPLICATION OF FIRSTFED FINANCIAL CORP. FOR ORDER AUTHORIZING (1) EMPLOYMENT OF RUS, MILIBAND & SMITH AS DEBTOR'S SPECIAL LITIGATION COUNSEL AND (2) POST-PETITION RETAINER; DECLARATION OF RUS MILIBAND IN SUPPORT THEREOF**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On ___July 6, 2010___ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:
- Louis J Cisz    lcisz@nixonpeabody.com
- Ivan L Kallick    ikallick@manatt.com, ihernandez@manatt.com
- John W Kim    jkim@nossaman.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On July 6, 2010 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 6, 2010 | Emily Borman | /s/ Emily Borman |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                                                    F 9013-3.1

| In re: | | CHAPTER 11 |
|---|---|---|
| FirstFed Financial Corp. | Debtor(s). | CASE NUMBER 2:10-bk-12927-ER |

II. **SERVED BY U.S. MAIL**

Honorable Ernest Robles
USBC - Central District of California
255 East Temple Street, Suite 1560
Los Angeles, CA  90012

**Debtor**
FirstFed Financial Corp.
4000 Barranca Parkway, Ste 250
Irvine, CA 92604

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*  F 9013-3.1