NOSSAMAN LLP
Allan H. Ickowitz (Cal. State Bar No. 80994)
John W. Kim (Cal. State Bar No. 216251)
445 S. Figueroa Street, 31st Floor
Los Angeles, California 90071-1602
Telephone: (213) 612-7800
Fax: (213) 612-7801
aickowitz@nossaman.com
jkim@nossaman.com

and

Kathryn R. Norcross, Senior Counsel
B. Amon James, Counsel
Federal Deposit Insurance Corporation
Legal Division
3501 Fairfax Drive, VS-D-7120
Arlington, Virginia 22226
Telephone: (703) 562-2631

Attorneys for the Federal Deposit Insurance Corporation
as Receiver of First Federal Bank of California,
a Federal Savings Bank

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FIRSTFED FINANCIAL CORP., | ) Case No.: 2:10-bk-12927-ER |
| | ) |
| Debtor and | ) **REPLY OF THE FEDERAL DEPOSIT** |
| Debtor-in-Possession. | ) **INSURANCE CORPORATION TO** |
| | ) *"DEBTOR'S OPPOSITION TO FDIC MOTION* |
| | ) *FOR RELIEF FROM STAY"*[1] **[Dkt. No. 67]** |
| | ) |
| | ) [Supplemental Decl. of Laura E. Grimball and |
| | ) Decl. of John W. Kim attached hereto] |
| | ) |
| | ) **HEARING** |
| | ) |
| | ) Date: September 7, 2010 |
| | ) Time: 10:00 a.m. |
| | ) Judge: Ernest M. Robles |
| | ) Crtm: 1560/1568 |

---

[1]/     The motion was docketed as the *"Motion of the Federal Deposition Insurance Corporation, as Receiver, for an Order Confirming that the Automatic Stay Does Not Apply, or in the Alternative, for an Order Granting Relief from the Automatic Stay."* [Dkt. No. 64]

395997_1.DOC

**REPLY OF THE FEDERAL DEPOSIT INSURANCE CORPORATION TO *"DEBTOR'S OPPOSITION TO FDIC MOTION FOR RELIEF FROM STAY"***

The Federal Deposit Insurance Corporation, as Receiver of First Federal Bank of California, a Federal Savings Bank (the "FDIC-R" and the "Bank" respectively) hereby submits its reply in support of the Motion. The FDIC-R's Motion focuses on the narrow issue of whether the automatic stay applies (and if so, should be lifted) to allow the FDIC-R to file 2009 tax returns and refund applications and related amendments. Ultimately, there is no reason the parties cannot be left simply to "agree to disagree" regarding what should or should not be filed with the taxing authorities while they each present what it believes is correct to those authorities. Moreover, given the Tax Sharing Agreement between the parties, if only one party is permitted to make those submissions to the taxing authorities, it is the FDIC-R, not the Debtor. There is no legal or equitable basis, however, to allow only the Debtor to have its say with the IRS while the FDIC-R is muzzled and forced to watch -- in its view -- millions of dollars lost.

This Motion is *not* about (i) determining who owns what tax refunds, or (ii) who should control or possess such tax refunds. Nor does granting the Motion affect the ability of the Debtor (and the FDIC-R) to take such positions vis a vis the taxing authorities as they each determine. The issue of ownership of refunds shall be determined in separate litigation in the context of motions for summary adjudication and/or settlement discussions. In support of the reply, the FDIC-R respectfully states as follows.

I. **THE COURT SHOULD NOT BE DISTRACTED BY THE DEBTOR'S ATTEMPT TO INVOKE THE AUTOMATIC STAY BY MISCHARACTERIZING THE FOCUSED RELIEF THE FDIC-R SEEKS IN FILING SEPARATE BANK TAX RETURNS AND REFUND APPLICATIONS -- WITHOUT AFFECTING THE DETERMINATION OF TAX REFUND OWNERSHIP.**

1. The Debtor's Opposition to the Motion ("Opposition") obfuscates the relief the FDIC-R seeks by blurring the administrative issue of filing tax returns and refund claims, on the one hand, and determining substantive ownership of those tax refunds, on the other hand.[2] In an effort to distract from

---

[2] / This Motion is analogous to a situation where husband and wife, while married, overpays the IRS with respect to a joint tax return. Following a legal separation, husband files for sole bankruptcy protection while wife does not. Subsequently, the IRS contacts husband and wife to advise them of a potential refund and requests information relating to the source of the overpayment and the basis of the refund. The automatic stay arising from

395997_1.DOC    1

**REPLY OF THE FEDERAL DEPOSIT INSURANCE CORPORATION TO "DEBTOR'S OPPOSITION TO FDIC MOTION FOR RELIEF FROM STAY"**

the pertinent issue at hand, the Opposition includes an inaccurate digest relating to the FDIC-R's alleged (and untrue) delays in providing Bank related accounting data which the Debtor claims is in the FDIC-R's sole possession. In reality, all accounting data that is available has already been produced to the Debtor. Further, it is the Debtor, not the FDIC-R that has been unable or unwilling to cooperate in the sharing of tax information since early February, 2010 while continuing to bleed away precious estate assets with astronomical professional fees. The Opposition is based on cherry-picked facts and a misplaced reliance of the law.

    2.    In contrast, the Motion clearly seeks a comfort order confirming that the automatic stay is inapplicable or, if determined to be applicable, is lifted to the extent necessary to permit the FDIC-R to exercise its "Tax Rights" under applicable tax law and the Tax Sharing Agreement dated October 19, 2006. There is nothing "amorphous" or unclear about the request sought in the Motion contrary to the Debtor's protestations. As set forth on *page 1* of the Points and Authorities, the FDIC-R seeks simply to assert its specifically defined Tax Rights under Section 6402(k) of Title 26 of the United States Code and 26 C.F.R. §301.6402-7 which entitles the FDIC-R, as a fiduciary of the Bank, to:

    a) file a claim for a refund and/or a loss return for the 2009 tax year,

    b) file any amendments to prior years' returns as may be permitted under the law, and

    c) take such other actions as may be necessary to protect and preserve the claims of the receivership estate to tax refunds.

    3.    Critically, if the Motion is not approved, the Debtor may be in a position to **unilaterally** file a 2009 consolidated tax return ("Return") and/or the (ii) application for a corporate refund on a consolidated basis ("Refund Application"). The Debtor's Return and Refund Application relating to tens of millions of dollars in potential tax refunds is certain to be replete with errors and omissions. This is clear since the Debtor concedes (and the FDIC-R agrees) that the Debtor does not have all of the necessary data relating to the Bank to file a complete or accurate return. (Opp., 3:8 - 12). In fact, even the FDIC-R has not yet completed an analysis of the necessary Bank data, despite dedication of

---

the husband's bankruptcy does not prevent the wife from merely providing information to the IRS with respect to the amount and source of the overpayments assuming wife is not demanding a turnover or remittance of those refunds.

395997_1.DOC     2

**REPLY OF THE FEDERAL DEPOSIT INSURANCE CORPORATION TO *"DEBTOR'S OPPOSITION TO FDIC MOTION FOR RELIEF FROM STAY"***

substantial manpower to the task, although it hopes to have that accounting work completed no later than September 10, 2010. In any case, the Debtor's errors and omissions with respect to the Return and/or Refund Application, whether or not the fault of the Debtor, will be fatal and will cause the IRS to invalidate and reject such returns and/or applications to the detriment of whichever party ultimately is entitled to those refunds.

## II. THE FDIC-R HAS ATTEMPTED TO COOPERATE WITH THE DEBTOR IN FILING A CONSOLIDATED RETURN AND REFUND APPLICATION SINCE FEBRUARY, 2010 -- THE DEBTOR'S RECENTLY CONSTRUCTED EVENTS SHOULD BE IGNORED, BUT MORE IMPORTANTLY, THEY ARE IRRELEVANT TO THIS MOTION.

4. Despite the parties' good faith efforts to enter into two stipulations which would ensure the free flowing exchange of tax information and the establishment of a joint/escrow account, no such agreements have been reached. Since at least February, 2010, the FDIC-R has requested opportunities to review the Debtor's accounting information maintained only at the holding company level in connection with the draft Return or Refund Application. ¶ 2, Declaration of John W. Kim ("Kim Decl.")

5. For example, in February, the FDIC-R began discussions with Debtor regarding the 2009 federal income tax return of the consolidated group. On February 25, 2010, the FDIC-R requested Debtor's cooperation in arranging a conference call between the persons responsible for preparing returns from both the FDIC-R and the Debtor. The FDIC-R also requested that the Debtor file a timely extension of the March 15, 2010 return deadline to September 15, 2010 as the Debtor would not be able to provide return data on a timely basis. Kim Decl., ¶ 3.

6. On March 3, 2010, Mr Dalberg, Debtor's counsel, participated in a conference call with Mr. Ickowitz and Ms. Stift, FDIC-R's counsel, regarding the tax matters. Debtor expressed that it was prepared to file the consolidated return by March 15, 2010. At that time, the Debtor rejected the FDIC-R's argument that the Debtor could not possibly be prepared to file a consolidated return as the FDIC-R had not had an opportunity to process relevant bank data pertaining to the post-receivership period. Further, the Debtor dismissed the FDIC-R's concerns that a return without data relating to that part of

2009 during which the Bank was in receivership would be rejected as incomplete and fail to meet the timely return requirement necessary to extend NOL's to a five year carryback period. The FDIC-R pointed out its concern that the 2009 return would be rejected as incomplete, as the Debtor's returns had been historically rejected, particularly that for 2007. Kim Decl., ¶ 4.

7. On March 4, 2010, counsel for the FDIC-R, Mr. Ickowitz, requested a copy of the return that the Debtor claimed the Debtor was prepared to file so that the FDIC-R could review the return and object or consent. On that same day, the Debtor finally agreed to a conference call between its tax experts and FDIC-R's tax experts but provided extremely narrow blocks of time for the call that FDIC-R had been requesting for the ten previous days. On March 4, 2010, the Debtor further asserted that the FDIC-R had not explained its objections to the Debtor's proposed 2009 return. In reality, the FDIC-R had explained that the problems associated with the Debtor's proposed 2009 return related to: (1) the Debtor's filing of an inaccurate or incomplete return, (2) the Debtor's history of rejected returns, (3) the Debtor's incomplete data, (4) the fact that there would be no punitive effect or cost to filing an extension, and (5) the necessity of submitting a timely and complete return to maximize refunds. Kim Decl., ¶ 5.

8. After unnecessarily refusing to acknowledge that it would file an extension and denying that such a filing was necessary, the Debtor ultimately stated it filed a request for an extension to September 15, 2010, apparently finally recognizing that the FDIC-R was correct. Kim Decl., ¶ 6.

9. Following the Debtor's filing of the extension request, the FDIC-R continued its requests *ad nauseum* to cooperate in order to compile and prepare the necessary accounting materials relating to these tax filings. Communications were directed via e-mail, conference calls and written correspondence after March 15, 2010 followed by more than 15 requests from the FDIC-R. Kim Decl., ¶ 7.

10. A true and correct copy of the FDIC-R's last letter to Debtor's counsel dated July 7, 2010 requesting cooperation in filing tax returns and sharing of tax information is attached as **Exhibit A** to the True and correct copies of the draft stipulations to exchange tax information and escrow any tax refunds, pending a determination of ownership, are attached as **Exhibit B**. Kim Decl., ¶ 8.

11. **Importantly,** despite the parties' inability thus far to meaningfully cooperate in filing a

consolidated tax return, cooperation is not relevant to this Motion. The Debtor's diatribe regarding the FDIC-R's alleged failure to cooperate was contrived in order to create a basis for opposing the FDIC-R's Motion. This is made clear by the fact that the first formal request from the Debtor for tax-related documents was made after the Motion was filed in order to attempt to build an argument against the Motion. The Debtor's assertion regarding the FDIC-R's failure to provide it with information is a red herring.[3] Whether or not cooperation is feasible, the Motion should be granted because the FDIC-R seeks to exercise its Tax Rights as permitted under the Tax Sharing Agreement and applicable tax law, without controlling or taking possession of any potential tax refunds.

12. At this point, it is too late to agree on a consolidated filing — something the Debtor feigns interest in continuing to pursue. The Debtor cannot be permitted to be the unilateral arbiter of what should be filed with the taxing authorities nor should it be allowed to endanger the FDIC-R's interests. Granting the Motion will result in no harm whatsoever to the substance of the Debtor's rights but is essential to protect those of the FDIC-R and to preserve the potential recovery of millions of dollars by the FDIC-R for the benefit of creditors of the receivership to the extent refunds are determined to belong to the FDIC-R. The Court should grant the Motion and order any tax refunds to be escrowed pursuant to mutually acceptable terms and conditions.

### III. THE DEBTOR FAILS TO ADDRESS THE FDIC-R'S INDEPENDENT CONTRACT RIGHT TO FILE THE 2009 RETURN AND REFUND APPLICATION UNDER THE TAX SHARING AGREEMENT WITHOUT CONTROLLING OR TAKING POSSESSION OF POTENTIAL ESTATE PROPERTY.

13. Not surprisingly, the Debtor is unable or unwilling to address the FDIC-R's right to file separate returns and refund requests under the Tax Sharing Agreement dated October 19, 2006. The Debtor ignores this issue entirely in the Opposition. The FDIC-R's rights under the Tax Sharing Agreement, an executory contract which has been neither assumed nor repudiated, support the relief requested by this Motion.

---

[3] / The Debtor recently filed a 2004 motion against the FDIC-R requesting eleven categories of bank related data on or before September 10, 2010. The FDIC-R has responded that it has or will provide all requested information by the requested deadline. The 2004 motion was filed only **after** this Motion was already on file.

395997_1.DOC         5

14. Section 1.2 of the Tax Sharing Agreement clearly provides that the "Consolidated Return" for the Consolidated Group "means the consolidated federal income tax return *filed by Bank on behalf of the Affiliated Group*." Therefore, the Tax Sharing Agreement explicitly provides that, consistent with the relief sought by the FDIC-R on this Motion that the Bank is authorized to file the 2009 tax returns and related filings for the Consolidated Group. If only one party is entitled to file a return and any related refund claims and amendments, that party is the FDIC-R. The Debtor's failure to address this issue is equivalent to a waiver and the Court should find that that the FDIC-R may exercise its Tax Rights consistent with the Tax Sharing Agreement without the need even to address any other arguments made by the FDIC-R. The Tax Sharing Agreement is consistent with the fact that it appears the *Bank* funded substantially all of the tax payments made by the Consolidated Group by paying those amounts to the Debtor, so that the Debtor could then remit those same tax payments to the IRS on behalf of the Consolidated Group (A copy of the Tax Sharing Agreement was attached as **Exhibit 1** to the Declaration of Laura E. Grimball submitted with the Motion.) Supplemental Declaration of Laura E. Grimball ("Grimball Decl."), ¶ 4.

15. By this Motion, the FDIC-R seeks to exercise its rights under the Tax Sharing Agreement without taking possession or control of any potential tax refunds and without restricting the Debtor's rights to submit whatever materials it deems appropriate to preserve the Debtor's interests, if any.

## IV. THE DEBTOR'S LEGAL ARGUMENTS IN SUPPORT OF THE OPPOSITION ARE WITHOUT MERIT.

16. The Opposition makes two primary legal arguments in support of the position that the automatic stay bars the FDIC-R from exercising its administrative Tax Rights. Both of the Debtor's arguments are without merit.

17. First, the Debtor's assertion that the reference in IRC § 6402(k) to "Secretary" does not grant the FDIC-R its Tax Rights notwithstanding any other law to the contrary is misguided. The statute expressly provides that, "notwithstanding any other provision of law" the Secretary may issue regulations providing for the payment of refunds to a fiduciary of an insolvent corporation. The "Secretary" did precisely that by adopting Treasury Regulations Section 301.6402-7(a)(2) which provides notice to the common parent of a consolidated group of which an insolvent financial institute is

or was a member that . . . **the fiduciary for the institution may, in addition to the common parent, act as an agent for the group in certain matters relating to tax liability of the group in the year in which a loss arose and for the year to which a claim of refund or application for tentative carryback adjustment relates."** The definition of "fiduciary", at Treasury Regulations Section 301.6402-7(b)(3) states that a fiduciary includes the Federal Deposit Insurance Corporation in its capacity as an authorized receiver of an insolvent financial institution. Treasury Regulations Section 301.6402-7(d), provides that the FDIC may request the "Secretary" authorize it to act as agent of the consolidated group. The statute would be meaningless unless the Secretary had the authority notwithstanding the automatic stay in bankruptcy even if it were applicable here, which it is not, or any other law to establish a process whereby the FDIC-R as a fiduciary covered by the Section 6402(k) of the statute may act. This Motion does not ask this court to declare that the FDIC-R is an agent of the consolidated group under IRC Section 6402(k) which by its own terms should supersede any other provision of law. This Motion merely asks for verification that the stay does not apply to any actions the FDIC-R may take pursuant to IRS Section 6402(k) or otherwise to submit information to the IRS and be recognized as an agent of the consolidated group for purposes of the Tax Rights.

18.  Second, while conceding that there is no direct authority on point, the Debtor argues that the automatic stay bars the FDIC-R's exercise of its Tax Rights permitted under applicable tax law. Opposition, 9:21. The Debtor relies on *Googel v. Hirsh (In re Colonial Realty Co.)* 980 F.2d 125 (2d Cir. 1992) to the effect that whenever a court addresses two federal regulatory schemes, FIRREA (Title 12) and Section 362 of the Bankruptcy Code (Title 11), "the result generally has been that the automatic stay remained effective." Opp. 9:9 to 10:3. This is a gross mischaracterization of *Colonial Realty*. In fact, *Colonial Realty* actually supports the FDIC-R's position.

19.  *Colonial Realty* involved the appeal of a bankruptcy court ruling of litigation initiated by the FDIC to receive **assets of a bankruptcy debtor** alleged to have been fraudulently conveyed by a debtor which involved property of the bankruptcy estate and was therefore subject to the automatic stay. *Id.* at 127. That Bankruptcy Court enjoined the FDIC from pursuing litigation against property of the bankruptcy estate without first complying with Section 362. *Id.* The Court of Appeals affirmed the lower court because, among other reasons, the FDIC's litigation was an affirmative act to recover

Main Document Page 9 of 14

property that was presumed to be property of the estate. *Id.* at 137 (the stay is imposed automatically to all property of the debtor including any debtor "entities"). The law is clear (and not disputed by the Debtor) that the FDIC-R's proposed filings will have no effect whatsoever upon the Debtor's rights to ownership or entitlement to any refunds.

20. *Colonial Realty* supports this Motion since the FDIC-R is not seeking relief to take any action to posses or control estate property. Even assuming that it ultimately is determined that all or any portion of the tax refunds are property of the Debtor's estate, which the FDIC-R vigorously disputes, the FDIC-R has agreed to escrow any such refunds. Furthermore, *Colonial Realty* did not involve the Internal Revenue Code or an analysis of any tax rights that a "fiduciary" has under the IRC.

21. The FDIC-R will not rehash its previous legal arguments. However, the FDIC-R is confident that it will prevail as the owner of all or almost all of the tax refunds because the net operating losses giving rise to the right to refunds were all or almost all taxes paid by the Bank. Further, consistent with the terms of that Tax Sharing Agreement, it appears that for many years prior to the Bank's failure, the Holding Company (now Debtor) distributed all or most tax refunds to the Bank, thereby demonstrating the Debtor is aware that it has no ownership interest in the pending tax refunds and all such NOLs are assets of the Bank, and thus the FDIC-R. Grimball Decl., ¶ 5.

22. As set forth in the Motion, FIRREA also provides the FDIC-R basis of ownership of all such tax refunds. *In re Bob Richards Chrysler-Plymouth Corp.*, 473 F.2d 262 (9th Cir. 1973) (refunds belong to a subsidiary bank where refund is attributable to the subsidiary's earning history); *In re BSD Bancorp, Inc.*, Case No. 93-12207-A11 (S.D. Cal. Feb. 28, 1995) (refunds belong to subsidiary bank even when the tax allocation agreement existed and it did not affect the principal agent relationship recognized in *Bob Richards*).

## V. THE FDIC-R WILL BE PREJUDICED IF IT IS NOT PERMITTED TO FILE A SEPARATE TAX RETURN AND REFUND APPLICATION.

23. The Debtor has declined or ignored the FDIC-R's request to review the proposed Return and Refund Application (with or without the FDIC-R's Bank data) and has refused to allow the FDIC-R to participate in a dual signature filing of the Refund Application that Debtor intends to file on or before September 15, 2010. Grimball Decl. ¶ 6. Those filings will almost certainly direct the IRS to send any

**REPLY OF THE FEDERAL DEPOSIT INSURANCE CORPORATION TO "*DEBTOR'S OPPOSITION TO FDIC MOTION FOR RELIEF FROM STAY*"**

1 tax refunds and monies to the Debtor. Hence the FDIC-R's entitlement to all or any part of the refunds are not preserved. Even if the Debtor agreed to escrow any refunds, which the Debtor has not agreed to, the FDIC-R does not know what the Debtor will file and has no means to ensure that it comports with the FDIC-R's requirements. As such, granting this Motion is critical in order to permit the FDIC-R to file its own 2009 tax returns, 2008 amended tax returns, refund claims, and to make a proper election under Revenue Procedure 2009-52 Section 4.01(3) or (4) in order to preserve tax refunds that are the property of the FDIC-R. Grimball Decl., ¶ 6.

24. Further, FDIC-R's exercise of its Tax Rights will not prejudice the Debtor since the FDIC-R has no objection to all tax refunds being held in escrow. Further, the Debtor has already noted that it will litigate against the FDIC-R for any damages that may be caused to the Debtor due to the FDIC-R's filing of a separate return or the Debtor's alleged inability to review bank information and data. Opposition, 3:10 – 12. While there are no such damages, the Debtor's rights to seek any damages it can prove are preserved.

Based on the foregoing, the FDIC-R respectfully requests that the Court enter an Order granting the Motion in its entirety and grant such other and further relief as the Court deems just and proper. A copy of the proposed order granting this Motion is attached as **Exhibit C** to the Kim Decl.

Dated: August 31, 2010

NOSSAMAN LLP
ALLAN H. ICKOWITZ
JOHN W. KIM

By: _____
JOHN W. KIM
Attorneys for the Federal Deposit Insurance Corporation as Receiver for First Federal Bank of California, a Federal Savings Bank

**REPLY OF THE FEDERAL DEPOSIT INSURANCE CORPORATION TO "*DEBTOR'S OPPOSITION TO FDIC MOTION FOR RELIEF FROM STAY*"**

## SUPPLEMENTAL DECLARATION OF LAURA E. GRIMBALL

LAURA E. GRIMBALL hereby declares and states as follows:

1. I am a Tax Accountant employed by the Federal Deposit Insurance Corporation ("FDIC") at its offices in Dallas, Texas. I am a Certified Public Accountant and obtained my license as such from the State of Texas in July, 2004. I also am a graduate of law school and hold a Juris Doctor degree and an LL.M. degree (Master of Laws in Taxation) from Southern Methodist University, Dedman School of Law, in Dallas, Texas.

2. The matters set forth in this declaration are either based upon my personal knowledge or based upon the books and records maintained in the ordinary course of its operations by the FDIC as the Receiver of First Federal Bank of California, a Federal Savings Bank ("FDIC-R"). I am making this declaration in support of the "*Reply of the Federal Deposit Insurance Corporation to Debtor's Opposition to FDIC Motion for Relief from Stay*" ("Reply") and the "*Motion Of The Federal Deposit Corporation, As Receiver, For An Order Confirming That The Automatic Stay Does Not Apply Or, In The Alternative, For An Order Granting Relief From The Automatic Stay*" ("Motion").

3. I specialize in the complex analysis and preparation of federal and state tax returns for bank and thrift financial institutions, including returns filed on behalf of such institutions on a consolidated basis with holding companies and subsidiaries in cases in which the FDIC has been appointed as the receiver by the relevant bank or thrift regulatory agency such as the Office of Thrift Supervision in the case of thrifts or savings banks and the Office of the Comptroller of the Currency in the case of national banking associations.

4. It appears the **Bank** funded substantially all of the tax payments made by the Consolidated Group by paying those amounts to the Debtor, so that the Debtor could then remit those same tax payments to the IRS on behalf of the Consolidated Group (A copy of the Tax Sharing Agreement was attached as **Exhibit 1** to the Declaration of Laura E. Grimball submitted in support of the Motion.)

5. It appears that for many years prior to the Bank's failure, the Holding Company (now Debtor) distributed all or most tax refunds to the Bank.

6. The Debtor has declined or ignored the FDIC-R's request to review the proposed Return

1  and Refund Application (with or without the FDIC-R's Bank data) and has refused to allow the FDIC-R

2  to participate in a dual signature filing of the Refund Application that Debtor intends to file on or before

3  September 15, 2010. Granting this Motion is critical in order to permit the FDIC-R to file its own 2009

4  tax returns, 2008 amended tax returns, refund claims, and to make a proper election under Revenue

5  Procedure 2009-52 Section 4.01(3) or (4) in order to preserve tax refunds that are the property of the

6  FDIC-R.

7

8  I declare under penalty of perjury under the laws of the United States of America that the

9  foregoing is true and correct.

10  Executed on this 31st day of August, 2010 at Dallas, Texas.

_____
Laura E. Grimball

395997_1 (3)                                    11
**SUPPLEMENTAL DECLARATION OF LAURA E. GRIMBALL**

# DECLARATION OF JOHN W. KIM

1. I am a California State Bar member admitted to practice before this Court. I am a partner of Nossaman LLP, counsel for the FDIC-R in the within bankruptcy proceedings. I have personal knowledge of all facts contained herein, and if called as a witness in this action, I could and would competently testify to all matters set forth herein of my knowledge.

2. Despite the parties' good faith efforts to enter into two stipulations regarding the exchange of tax information and the establishment of a joint/escrow account, no such agreements have been reached. Since at least February, 2010, the FDIC-R has requested opportunities to review the Debtor's accounting information in connection with the draft Return or Refund Application.

3. For example, in February, the FDIC-R began discussions with Debtor regarding the 2009 federal income tax return of the consolidated group. On February 25, 2010, the FDIC-R requested Debtor's cooperation in arranging a conference call between the persons responsible for preparing returns from both the FDIC-R and the Debtor. The FDIC-R also requested that the Debtor file a timely extension of the March 15, 2010 return deadline to September 15, 2010 as the Debtor would not be able to provide return data on a timely basis.

4. On March 3, 2010, Mr. Dalberg, Debtor's counsel, participated in a conference call with Mr. Ickowitz and Ms. Stift, FDIC-R's counsel, regarding the tax matters. Debtor expressed that it was prepared to file the consolidated return by March 15, 2010. At that time, the Debtor rejected the FDIC-R's argument that the Debtor could not possibly be prepared to file a consolidated return as the FDIC-R had not had an opportunity to process relevant bank data pertaining to the post-receivership period. Further, the Debtor dismissed the FDIC-R's concerns that a return without data relating to that part of 2009 during which the Bank was in receivership would be rejected as incomplete and fail to meet the timely return requirement necessary to extend NOL's to a five year carryback period. The FDIC-R pointed out its concern that the 2009 return would be rejected as incomplete, as the Debtor's returns had been historically rejected, particularly that for 2007.

5. On March 4, 2010, counsel for the FDIC-R, Mr. Ickowitz, requested a copy of the return that the Debtor claimed the Debtor was prepared to file so that the FDIC-R could review the return and object or consent. On that same day, the Debtor finally agreed to a conference call between its tax

experts and FDIC-R's tax experts but provided extremely narrow blocks of time for the call that FDIC-R had been requesting for the ten previous days. On March 4, 2010, the Debtor further asserted that the FDIC-R had not explained its objections to the Debtor's proposed 2009 return. In reality, the FDIC-R had explained that the problems associated with the Debtor's proposed 2009 return related to: (1) the Debtor's filing of an inaccurate or incomplete return, (2) the Debtor's history of rejected returns, (3) the Debtor's incomplete data, (4) the fact that there would be no punitive effect or cost to filing an extension, and (5) the necessity of submitting a timely and complete return to maximize refunds.

6. The Debtor ultimately stated it filed a request for an extension to September 15, 2010.

7. Following the Debtor's filing of the extension request, the FDIC-R continued its requests to cooperate to compile and prepare the necessary accounting materials relating to these tax filings. Communications were directed via e-mail, conference calls and written correspondence after March 15, 2010 followed by more than 15 requests from the FDIC-R.

8. A true and correct copy of the FDIC-R's last letter to Debtor's counsel dated July 7, 2010 requesting cooperation in filing tax returns and sharing of tax information is attached hereto as **Exhibit A.** True and correct copies of the draft stipulations to exchange tax information and escrow any tax refunds, pending a determination of ownership, are attached hereto as **Exhibit B.**

9. A copy of the proposed order granting this Motion is attached hereto as **Exhibit C.**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 31st day of August, 2010 at Los Angeles, California.

_____
John W. Kim