1  LANDAU GOTTFRIED & BERGER LLP
   JON L. R. DALBERG (State Bar No. 128259)
2  RODGER M. LANDAU (State Bar No. 151456)
   1801 Century Park East, Suite 1460
3  Los Angeles, California 90067
   Telephone: (310) 557-0050
4  Facsimile: (310) 557-0056
   jdalberg@lgbfirm.com
5  rlandau@lgbfirm.com

6  Counsel for FirstFed Financial Corp.

7

              UNITED STATES BANKRUPTCY COURT
8
          FOR THE CENTRAL DISTRICT OF CALIFORNIA
9
                    LOS ANGELES DIVISION
10

11  In re                              Case No.  2:10-bk-12927-ER

12  FIRSTFED FINANCIAL CORP.,          Chapter 11

13          Debtor and                 **PLAN OF LIQUIDATION**
            Debtor-in-Possession
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    DEFINITIONS AND RULES OF CONSTRUCTION ........................................................ 1

    A.    Defined Terms. .......................................................................................... 1

    B.    Other Terms. ............................................................................................. 8

    C.    Computation of Time. ................................................................................ 9

    D.    Exhibits. .................................................................................................... 9

II.   CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY
    INTERESTS ........................................................................................................ 9

    A.    Summary. ................................................................................................... 9

    B.    Unclassified Claims. .................................................................................. 9

        1.    Administrative Expense Claims. ...................................................... 9

            (a)    General. ............................................................................. 9

            (b)    Deadlines For Filing Claims For Administrative Expenses. .......... 10

                (i)    Pre-Effective Date Claims and Expenses. .......................... 10

                (ii)    Indenture Trustee Fees and Expenses. ................................ 11

                (iii)    Tax Claims. ......................................................................... 12

        2.    Priority Tax Claims. ......................................................................... 12

    C.    Classification and Treatment ...................................................................... 12

        1.    Class 1:  Other Priority Claims. ....................................................... 12

        2.    Class 2:  Secured Claims. ................................................................. 13

        3.    Class 3:  General Unsecured Claims. ................................................ 13

        4.    Class 4:  FirstFed Common Stock Interests .....................................13

III.  ACCEPTANCE OR REJECTION OF THE PLAN ......................................................... 14

    A.    Voting Classes. .......................................................................................... 14

    B.    Voting Rights Of Holders Of Disputed Claims. ......................................... 14

# TABLE OF CONTENTS (CONT'D)

**Page**

C.    Acceptance By Impaired Classes. ................................................................ 14

D.    Presumed Acceptance Of The Plan. ............................................................ 14

IV.    PROVISIONS FOR TREATMENT OF DISPUTED, CONTINGENT, OR UNLIQUIDATED CLAIMS AND ADMINISTRATIVE EXPENSES ....................................................................................................... 14

A.    Allowance Of Claims Of Holders Of Record Of Debentures. ............... 14

B.    Resolution Of Disputed Claims. .................................................................. 15

C.    Reserve for Disputed Claims. ...................................................................... 15

V.    IMPLEMENTATION OF THE PLAN ................................................................. 16

A.    Vesting Of Assets. .......................................................................................... 16

B.    Establishment of the Liquidating Trust. ..................................................... 17

   1.    Beneficiaries. ........................................................................................ 17

   2.    Implementation of the Liquidating Trust. ....................................... 17

   3.    Transfer of Debtor's Assets. .............................................................. 18

   4.    Representative of the Estate. ............................................................. 18

   5.    No Liability of Liquidating Trustee. ................................................. 18

C.    Prosecution Of Estate Causes Of Action By The Liquidating Trustee. ................ 19

D.    Issuance And Execution Of Plan Related Documents. ............................. 20

E.    Cancellation/Surrender of the Debentures And Related Agreements. ................... 20

F.    Dissolution of the Debtor and Termination of Current Officers, Directors, Employees and Counsel. ........................................................................................ 21

VI.    DISTRIBUTIONS UNDER THE PLAN. ............................................................ 21

A.    In General. ...................................................................................................... 21

B.    Manner Of Payment Under The Plan. ........................................................ 21

C.    Manner Of Distribution Of Other Property. ............................................. 21

D.    Setoffs. ............................................................................................................. 22

E.    Distribution Of Unclaimed Property. ......................................................... 22

# TABLE OF CONTENTS (CONT'D)

**Page**

F.   De Minimis Distributions. ................................................................. 22

G.   Record Date. ..................................................................................... 22

H.   Saturday, Sunday, Or Legal Holiday. ................................................ 22

    1.   Delivery Of Distributions, Address Of Holder. ......................... 23

VII.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES ....................... 23

A.   Assumption. ...................................................................................... 23

B.   Assumption And Cure Payment Objection. ....................................... 23

C.   Rejection. .......................................................................................... 24

D.   General. ............................................................................................. 25

E.   Insurance Policies ............................................................................. 25

VIII.   EFFECTIVENESS OF THE PLAN .......................................................... 26

A.   Conditions Precedent. ....................................................................... 26

B.   Notice Of Effective Date. .................................................................. 26

IX.   RETENTION OF JURISDICTION ............................................................ 26

X.   LIMITATION OF LIABILITY, RELEASES AND INJUNCTION ................. 27

A.   Exculpation. ...................................................................................... 27

B.   Injunction Enjoining Holders of Claims against Debtor. .................... 28

C.   Nondischarge of the Debtor. .............................................................. 29

XI.   MISCELLANEOUS PROVISIONS .......................................................... 29

A.   Payment Of Statutory Fees. .............................................................. 29

B.   Preservation Of Rights Of Action. .................................................... 30

C.   Headings. .......................................................................................... 30

D.   Binding Effect. .................................................................................. 30

E.   Revocation Or Withdrawal. ............................................................... 30

    1.   Right To Revoke. ...................................................................... 30

    2.   Effect Of Withdrawal Or Revocation. ....................................... 30

**TABLE OF CONTENTS (CONT'D)**

**Page**

F.    Governing Law. ................................................................................. 31

G.    Withholding, Reporting, And Payment Of Taxes. ................................ 31

H.    Other Documents And Actions ............................................................ 31

I.    Modification Of The Plan. ................................................................... 31

J.    Notices. ............................................................................................... 32

K.    Severability of Plan Provisions ........................................................... 33

L.    Successors And Assigns. ..................................................................... 33

M.    Post-Confirmation Notice .................................................................... 34

Debtor and Debtor-in-Possession FirstFed Financial Corp. ("Debtor") proposes the following Plan of Liquidation (along with any amendments, supplements or exhibits hereto, collectively, the "Plan") pursuant to section 1121(a) of the Bankruptcy Code for resolution of all Claims against and interests in the Debtor and its Estate. The Disclosure Statement In Support of the Debtor's Plan of Liquidation (the "Disclosure Statement"), which accompanies the Plan, discusses the Debtor's history, business, contracts, leases, results of operations, resolution of material disputes, significant potential litigation, financial projections for the liquidation and distribution of Debtor's remaining assets, and contains a summary and discussion of the Plan. Holders of Claims are encouraged to read the Disclosure Statement before voting to accept or reject the Plan.

Following solicitation of acceptances for the Plan, the Debtor, as Plan proponent, will seek the Bankruptcy Court's confirmation of the Plan. No solicitation materials other than the Disclosure Statement and any schedules, exhibits or letters attached thereto or referenced therein have been authorized by the Debtor or the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.

# I.    DEFINITIONS AND RULES OF CONSTRUCTION

## A.    Defined Terms.

As used herein, the following terms have the respective meanings specified below (such meanings to be equally applicable to both the singular and plural, and masculine and feminine forms of the terms defined):

1.    "Administrative Expense" means any cost or expense of administration of the Chapter 11 Case under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary post-petition expenses of preserving the Estate, any actual and necessary post-petition expenses of administering and liquidating the Estate, all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under sections 330, 331, or 503 of the Bankruptcy Code, and any fees or charges assessed against the Estate under section 1930 of title 28 of the United States Code.

2.    "Allowed Claim" means, except as otherwise allowed or otherwise provided herein, a Claim, proof of which was timely and properly filed or, if no proof of claim was filed, which has

1   been or hereafter is listed on the Debtor's Schedules as liquidated in amount and not disputed or

2   contingent, and, in either case, as to which no objection to the allowance thereof has been interposed.

3   Unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Claim" shall not

4   include interest on such Claim accruing after the Petition Date.

5          3.     "Allowed Class ____ Claim" means an Allowed Claim in the Class specified.

6          4.     "Available Cash" means the Cash in the Liquidating Trust that is not otherwise

7   designated by the Liquidating Trustee as Cash to be used to satisfy Allowed Administrative Claims,

8   Allowed Priority Tax Claims, Allowed Secured Claims, Allowed Priority Non-Tax Claims, and

9   expenses of the Liquidating Trust or otherwise subject to a reserve established by the Liquidating

10  Trustee.

11         5.     "Assets" means all assets of the Debtor's Estate including "property of the estate" as

12  described in section 541 of the Bankruptcy Code and shall, without limitation, include Cash, Estate

13  Causes of Action, any and all claims and causes of action that may be asserted by the Debtor against

14  any third party or third parties, securities, proceeds of insurance and insurance policies, all rights and

15  interests, all real and personal property, and all files, books and records of the Estate.

16         6.     "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101-1330,

17  as amended.

18         7.     "Bankruptcy Court" means the United States Bankruptcy Court for the Central

19  District of California, Los Angeles Division or, in the event such court ceases to exercise jurisdiction

20  over the Chapter 11 Case, such other court that exercises jurisdiction over the Chapter 11 Case.

21         8.     "Bankruptcy Rules" means, collectively, (i) the Federal Rules of Bankruptcy

22  Procedure, as amended from time to time, as applicable to the Chapter 11 Case, and (ii) the Local

23  Bankruptcy Rules applicable to cases pending before the Bankruptcy Court, as now in effect or

24  hereafter amended.

25         9.     "Bar Date Order" means the *Order (I) Establishing Bar Dates for Filing Proofs of*

26  *Claim or Interest; and (II) Approving the Form and Manner of Notice Thereof* entered by the

27  Bankruptcy Court on April 15, 2010, (Docket No. 34).

28         10.    "Beneficiaries" means the Holders of Claims who are the beneficiaries of the

2

1    Liquidating Trust.

2        11.    "Business Day" means any day which is not a Saturday, a Sunday, or a "legal

3    holiday" as defined in Bankruptcy Rule 9006(a).

4        12.    "Cash" means cash or cash equivalents.

5        13.    "Chapter 11 Case" means the case under chapter 11 of the Bankruptcy Code,

6    commenced by the Debtor on the Petition Date, styled "*In re FirstFed Financial Corp.*" and

7    assigned Case No. 2:10-bk-12971-ER.

8        14.    "Claim" means (a) any right to payment from the Debtor's Estate, whether or not

9    such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured,

10    disputed, undisputed, legal, equitable, secured, or unsecured, or (b) any right to an equitable remedy

11    for breach of performance if such breach gives rise to a right of payment from the Debtor's Estate,

12    whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured,

13    unmatured, disputed, undisputed, secured, or unsecured.

14        15.    "Claims Bar Date" means May 20, 2010, which is the general deadline set pursuant to

15    the Bar Date Order or, in the case of a governmental unit under 11 U.S.C. § 502(b)(9), July 5, 2010.

16        16.    "Class" means one of the Classes of Claims or Classes of Equity Interests designated

17    in the Plan.

18        17.    "Confirmation Date" means the date on which the Clerk of the Bankruptcy Court

19    enters the Confirmation Order on its docket.

20        18.    "Confirmation Hearing" means the hearing before the Bankruptcy Court pursuant to

21    section 1128 of the Bankruptcy Code to consider confirmation of the Plan.

22        19.    "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan

23    in accordance with the provisions of chapter 11 of the Bankruptcy Code.

24        20.    "Debenture" shall mean the Debentures issued pursuant to the Indentures.

25        21.    "Debtor" means FirstFed Financial Corp.

26        22.    "Debtor in Possession" means the Debtor when it is acting in the capacity of

27    representative of the Estate in the Chapter 11 Case.

28        23.    "Disbursing Agent" means the Liquidating Trustee or any entity selected by the

3

1    Liquidating Trustee to act as its agent in conducting the disbursements to Holders of Allowed

2    Claims pursuant to the Liquidating Trust Agreement.

3        24.    "Disclosure Statement" means that certain document entitled *Disclosure Statement*

4    *in Support of the Debtor's Plan of Liquidation* " filed in the Chapter 11 Case, including the exhibits

5    attached thereto, either in its present form or as it may be amended, modified or supplemented from

6    time to time.

7        25.    "Disputed Claim" means any Claim (i) which is listed in the Schedules as

8    unliquidated, disputed, contingent, and/or unknown and for which no proof of Claim has been filed;

9    (ii) as to which a Proof of Claim has been filed and the dollar amount of such Claim is not specified

10   in a fixed amount; or (iii) as to which the Debtor or any other party in interest has interposed a

11   timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy

12   Rules, the Plan and/or any order of the Bankruptcy Court, which objection or request for estimation

13   has not been withdrawn or determined by a Final Order.

14       26.    "Disputed Claims Reserve" means the Cash to be set aside for, and in an amount

15   sufficient to pay the required distribution under the Plan to, all Disputed Claims which have not been

16   finally adjudicated as of the Effective Date and which may become Allowed Claims prior to the

17   Final Distribution Date.

18       27.    "Distribution(s)" means any transfer under the Plan of Cash or other property or

19   instruments to a Holder of an Allowed Claim.

20       28.    "Effective Date" means the first date that the Plan becomes effective as provided

21   under Section VIII of the Plan.

22       29.    "Equity Interests" means any equity interest in the Debtor represented by FirstFed

23   Common Stock Interests.

24       30.    "Estate" shall mean with respect to the Debtor, the estate created by section 541(a) of

25   the Bankruptcy Code upon the Petition Date.

26       31.    "Estate Cause of Action" shall mean any and all manner of causes of action, claims,

27   obligations, suits, debts, judgments, demands, rights of offset or recoupment, damages (actual,

28   compensatory or punitive), counterclaims or affirmative defenses, whatsoever, whether in law or in

4

1  equity including, but not limited to, the claims arising under or pursuant to sections 541 through 551,

2  inclusive, and section 553, of the Bankruptcy Code, and objections to filed proofs of Claim.

3      32.    "File," "Filed," "Files," or "Filing" means any document(s) properly and timely filed

4  with the Bankruptcy Court in the Chapter 11 Case, as reflected on the official docket of the

5  Bankruptcy Court for the Chapter 11 Case, served on Persons, as such filing and service are required

6  pursuant to the Bankruptcy Code, Bankruptcy Rules and/or order of the Bankruptcy Court.

7      33.    "Final Distribution Date" means the first Business Day on which any and all Disputed

8  Claims have been resolved pursuant to a Final Order and all interests of the Estate in property and all

9  Claims, Estate Causes of Action and other rights to payment existing in favor of the Estate have been

10  liquidated, reduced to Cash, and distributed *Pro Rata* to holders of Allowed Claims.

11      34.    "Final Order" means an order or judgment of the Bankruptcy Court or other

12  applicable court as to which the time to appeal, petition for certiorari, or move for reargument or

13  rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for

14  reargument or rehearing shall then be pending; or as to which any right to appeal, reargue, rehear, or

15  petition for certiorari shall have been waived in writing in form and substance satisfactory to the

16  Debtor prior to the Effective Date, or the Liquidating Trustee after the Effective Date, respectively,

17  or, in the event that an appeal, writ of certiorari, reargument or rehearing thereof has been sought,

18  such order or judgment of the Bankruptcy Court or other applicable court shall have been affirmed

19  by the highest court to which such order or judgment was appealed or from which reargument or

20  rehearing was sought, or certiorari shall have been denied, and the time to take any further appeal,

21  petition for certiorari or move for reargument or rehearing shall have expired.

22      35.    "FirstFed Common Stock Interests" means the shares of common stock of the Debtor

23  issued and outstanding prior to the Effective Date, and all rights and interests arising thereunder or in

24  connection therewith.

25      36.    "General Unsecured Claim" means any Claim that is not an Administrative Expense,

26  Priority Tax Claim or a Claim classified in Classes 1 or 2.  General Unsecured Claims include,

27  without limitation, unsecured obligations owing to vendors, deferred compensation claims by former

28  directors and unsecured Claims arising from the rejection of executory contracts and unexpired

1 | leases.

2 |     37.    "Holder" means the owner of a Claim or Equity Interest against the Debtor.

3 |     38.    "Indentures" means, collectively, (i) the Indenture between the Debtor, as issuer and

4 | Wilmington Trust Company, as Trustee, dated as of June 15, 2005, Fixed/Floating Rate Senior Debt

5 | Securities due 2015; (ii) the Indenture between the Debtor, as issuer and Wilmington Trust

6 | Company, as Trustee, dated as of December 29, 2005, Fixed/Floating Rate Senior Debt Securities

7 | due 2016; and (iii) the Indenture between the Debtor, as issuer and Wilmington Trust Company, as

8 | Trustee, dated as of April 26, 2007, Fixed/Floating Rate Senior Debt Securities due 2017 and any

9 | amendments or supplements thereto.

10 |     39.    "Indenture Trustee's Fees and Expenses" means any fees, costs, expenses,

11 | disbursements and advances incurred or made by the Indenture Trustee pursuant to the Indentures

12 | (including, without limitation, (a) any reasonable  fees, costs, expenses and disbursements incurred

13 | by the Indenture Trustee with any of its attorneys, advisors (including, without limitation, financial

14 | advisors), agents and other professionals and (b) any fees, costs or expenses for services performed

15 | by the Indenture Trustee in connection with distributions made to the holders of the Debentures

16 | pursuant to this Plan), in each case, whether prior to, on or after the Petition Date, or prior to, on or

17 | after the Effective Date.

18 |     40.    "Indenture Trustee" means Wilmington Trust Company, acting in its capacity, as

19 | Trustee under each of the Indentures, together with its successors and assigns..

20 |     41.    "Initial Class 3 Distribution" shall have the meaning ascribed to it in Section II.C.3(b)

21 | of the Plan.

22 |     42.    "Interim Distributions" means one or more Pro Rata Distributions of Available Cash

23 | made in accordance with the Plan and/or any Order of the Bankruptcy Court on account of Allowed

24 | Claims before the Final Distribution.

25 |     43.    "Liquidating Trust" means the trust created pursuant to the Plan, Confirmation Order,

26 | and the Liquidating Trust Agreement, and created for the benefit of Holders of all Allowed Claims.

27 | Except as otherwise expressly provided in the Plan, all of the Assets of the Debtor will be transferred

28 | to the Liquidating Trust on the Effective Date of the Plan.  The Liquidating Trust will continue and

conclude the liquidation of such assets and the Debtor, including the resolution of all Estate Causes of Action, and make Distributions to the Holders of Allowed Claims and pay the expenses of the Liquidating Trust, all as provided in the Plan.

44. "Liquidating Trust Agreement" means that certain liquidating trust agreement by and between the Debtor and the Liquidating Trustee to be entered into pursuant to the Plan and the Confirmation Order, substantially in the form included in Exhibit "3", as may be amended from time to time.

45. "Liquidating Trust Assets" means any and all Assets of the Debtor and Estate, including Cash, Estate Causes of Action and other personal and real property, all of which shall be transferred or assigned to the Liquidating Trust on the Effective Date of the Plan, free and clear of any liens or claims that might otherwise have existed in favor of any party.

46. "Liquidating Trustee" means [_____], or any other person approved by the Court as Liquidating Trustee, and any successor trustee(s) appointed pursuant to the Liquidating Trust Agreement, that has the powers and responsibilities set forth in the Plan, the Confirmation Order and the Liquidating Trust Agreement and in such capacity shall act as a liquidator of the Debtor and its assets for the benefit of Holders of Allowed Claims and Allowed Equity Interests. Whenever the Liquidating Trustee is referred to herein, all such references are qualified by the Liquidating Trustee's powers, rights and obligations as set forth in the Liquidating Trust Agreement.

47. "Other Priority Claim" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Expense.

48. "Person" means any individual, corporation general partnership, limited partnership, association, joint stock company, joint venture, estate, trust, government or any political subdivision, governmental unit, official committee appointed by the Office of the United States Trustee, unofficial committee of creditors, or other entity.

49. "Petition Date" means January 6, 2010, the date on which the Debtor filed its voluntary petition commencing the Chapter 11 Case.

50. "Plan" means this chapter 11 plan of liquidation, including all exhibits hereto, either in their present form or as they may be altered, amended, or modified from time to time.

51. "Priority Tax Claim" means a Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

52. "Professional Person" means for purposes of this Plan, any professional person employed by the Debtor pursuant to sections 327 or 1103 of the Bankruptcy Code.

53. "Pro Rata," "Pro Rata Share," and "Pro Rata Basis" means, at any time, the proportion that the face amount of a Claim in a particular Class or Classes bears to the aggregate face amount of all Claims (including Disputed Claims, but excluding disallowed Claims) in such Class or Classes; and "face amount," as used herein, means (a) when used in reference to a Disputed or disallowed Claim, the full stated liquidated amount claimed by the claimholder in any proof of claim timely filed with the Bankruptcy Court or otherwise deemed timely filed by any Final Order of the Bankruptcy Court or other applicably bankruptcy law; and (b) when used in reference to an Allowed Claim, the allowed amount of such Claim.

54. "Schedules" means the schedules of assets and liabilities, list of equity security holders, and statement of financial affairs filed by the Debtor as required by section 521(a)(1) of the Bankruptcy Code, Bankruptcy Rules 1007(a)(1) and(3) and (b)(1), and Official Bankruptcy Form Nos. 6 and 7, as amended from time to time.

55. "Secured Claim" means a Claim against the Debtor to the extent of the value, as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code, of any interest in property of the Estate securing such Claim.

56. "Taxes" means all income, gaming, franchises, excise, sales, use, employment, withholding, property, payroll or other taxes, assessments, or governmental charges, together with any interest, penalties, additions to tax, fines, and similar amounts relating thereto, imposed or collected by any federal, state, local or foreign governmental authority.

**B.    Other Terms.**

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. A term

8

used herein that is not defined herein shall have the meaning ascribed to that term, if any, in the Bankruptcy Code or Bankruptcy Rules and shall be construed in accordance with the rules of construction thereunder.

**C.     Computation of Time.**

In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

**D.     Exhibits.**

All exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

**II.     CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

**A.     Summary.**

The chart below summarizes the classes of Claims and Equity Interests for all purposes, including voting, confirmation, and distribution pursuant to the Plan:

| CLASS | STATUS |
|---|---|
| Class 1: Other Priority Claims | Unimpaired - not entitled to vote |
| Class 2: Secured Claims | Unimpaired - not entitled to vote |
| Class 3: General Unsecured Claims | Impaired – entitled to vote |
| Class 4: FirstFed Common Stock Interests | Impaired – deemed to reject |

**B.     Unclassified Claims.**

**1.     Administrative Expense Claims.**

**(a)     General.**

Subject to the allowance procedures and deadlines provided herein, the Disbursing Agent shall pay to each holder of an Allowed Administrative Expense, on account of the Allowed Administrative Expense, and in full satisfaction thereof, Cash equal to the amount of such Allowed Administrative Expense, unless the holder agrees to other treatment. Except as otherwise provided

1  herein or a prior order of the Bankruptcy Court: (i) payment of an Administrative Expense that is an

2  Allowed Claim as of the Effective Date shall be made on the later of the Effective Date or the date

3  such payment would have become due for payment of such Allowed Administrative Expense in the

4  absence of the Chapter 11 Case, whether pursuant to contract or applicable nonbankruptcy law; and

5  (ii) payment of an Administrative Expense that becomes an Allowed Claim following the Effective

6  Date shall be made on or before (a) the date that is thirty (30) days after an order deeming such

7  Administrative Expense an Allowed Claim becomes a Final Order, or (b) the Final Distribution

8  Date, whichever is earlier.

9              **(b)    Deadlines for Filing Claims for Administrative Expenses.**

10                  **(i)    Pre-Effective Date Claims and Expenses.**

11  All applications for final compensation of Professional Persons for services rendered and for

12  reimbursement of expenses incurred on or before the Effective Date and all other requests for

13  payment of Administrative Expenses incurred before the Effective Date pursuant to Bankruptcy

14  Code sections 327, 328, 330, 331, 503(b), 507(a)(1) or 1103 (except only for post-petition

15  obligations incurred through the Effective Date in the ordinary course of Debtor's post-petition

16  business and obligations under section 1930 of title 28 of the United States Code) shall be filed no

17  later than the first Business Day that is not less than forty-five (45) days after the Effective Date (the

18  "Administrative Expense Claims Bar Date").  Professional Persons and others that do not File such

19  requests on or before the Administrative Expense Claims Bar Date shall be barred from asserting

20  such Claims against the Liquidating Trust, the Liquidating Trustee, or any other Person or entity, or

21  any of their respective property.  Objections to applications of Professional Persons or others for

22  compensation or reimbursement of expenses must be Filed and served on the Liquidating Trustee

23  and its counsel, as well as the Professional Persons and others to whose application the objection is

24  addressed, in accordance with the Bankruptcy Code, the Bankruptcy Rules or pursuant to any other

25  procedure set forth by an order of the Bankruptcy Court.  From and after the Effective Date the

26  Liquidating Trustee will comply with such reporting requirements, and payment of quarterly fees to

27  the Office of the United States Trustee as required by applicable law.

28

## (ii)    Indenture Trustee's Fees and Expenses.

Fees Accrued During the Chapter 11 Case: On or before the Administrative Expense Claims Bar Date, the Indenture Trustee shall serve, on the Liquidating Trustee, its counsel, and the United States Trustee, a statement of its Indenture Trustee's Fees and Expenses accrued from the Petition Date through the Effective Date.  If the Indenture Trustee does not serve such statement on or before the Administrative Expense Claims Bar Date, it shall be barred from asserting  its claim as an Administrative Expense Claim against the Estate, the Liquidating Trust, and the Liquidating Trustee; *provided, however,* nothing contained herein shall prohibit, restrict or otherwise prevent the Indenture Trustee from, at any time, exercising any of its charging lien rights under Sections 5.4 and 6.6 of each of the Indentures against any recoveries which are otherwise due and payable pursuant to the provisions of this Plan to any holders of the Debentures.  Unless a written objection is made to the reasonableness of such fees within fifteen (15) days after receipt of such statement, the Liquidating Trustee shall promptly pay the Indenture Trustee's Fees and Expenses, without the necessity or requirement of the Indenture Trustees to file any applications with the Bankruptcy Court therefor.  Any such objection made to any Indenture Trustee's Fees and Expenses shall be resolved by the Bankruptcy Court, provided the Liquidating Trustee shall be authorized and directed to pay the Indenture Trustee's Fees and Expenses to the extent not objected to in accordance with this Section.

Fees Accrued After the Effective Date: Following the Effective Date, the Indenture Trustee shall serve monthly statements of its Indenture Trustee's Fees and Expenses accrued after the Effective Date on the Liquidating Trustee, its counsel, and the United States Trustee.  Unless a written objection is made to the reasonableness of such fees within fifteen (15) days after receipt of each such statement, the Liquidating Trustee shall promptly pay the submitted Indenture Trustee's Fees and Expenses.  Any such objection made to any Indenture Trustees Fees shall be resolved by the Bankruptcy Court, *provided, however,* the Liquidating Trustee shall be authorized and directed to pay the Indenture Trustee's Fees and Expenses to the extent not objected to in accordance with this Section.

11

### (iii)    Tax Claims.

All requests for payment of Claims by a governmental unit (as defined under section 101(27) of the Bankruptcy Code) for taxes (and for interest and/or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date, and for which no bar date has otherwise been previously established, must be Filed on or before the later of: (a) sixty (60) days following the Effective Date; or (b) ninety (90) days following the filing of the tax return for such taxes for such tax year or period with the applicable governmental unit. Any holder of a Claim for taxes is required to File a request for a payment of the post-petition taxes and other monies due related to such taxes. Any holder of a Claim for taxes which does not File such a Claim by the applicable bar date shall be forever barred from asserting any such Claim against any of the Estate, the Liquidating Agent or their respective property, whether any such Claim is deemed to arise prior to, on, or subsequent to the Effective Date, and shall receive no distribution under the Plan or otherwise on account of such Claim.

### 2.    Priority Tax Claims.

Except as otherwise agreed to by the parties, or ordered by the Court, as soon as practicable after the Effective Date, each holder of an unpaid Allowed Priority Tax Claim shall receive payment in full in an amount equal to the Allowed Priority Tax Claim.

### C.    Classification and Treatment

### 1.    Class 1: Other Priority Claims.

(a)    Classification: Class 1 consists of all Claims entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, except Priority Tax Claims and Administrative Expenses.

(b)    Treatment: The Debtor estimates the Allowed Class 1 Claims to be zero. The Liquidating Trustee shall pay all Allowed Claims in this class in full, in Cash, on the later of: (i) the Effective Date; and (ii) the date on which an order allowing such Claim becomes a Final Order, and in each case or as soon thereafter as is practicable. Class 1 is not impaired, and the holders of Claims in Class 1 are not entitled to vote to accept or reject the Plan.

2.    **Class 2:  Secured Claims.**

(a)    <u>Classification</u>:  Class 2 consists of Secured Claims.

(b)    <u>Treatment</u>:  The Debtor estimates the Allowed Class 2 Claims to be zero.  To the extent any Allowed Class 2 Claims exist, holders of Allowed Class 2 Claims shall receive payment in full in Cash or of Property of the amount of their respective Allowed Secured Claims.  Distributions to holders of Allowed Class 2 Claims shall occur on the later of the Effective Date if such Secured Claim is deemed to be an Allowed Claim or the first Business Day that is at least thirty (30) days from the date the Secured Claim becomes an Allowed Claim.  Class 2 is not impaired, and the holders of Claims in Class 2 are not entitled to vote to accept or reject the Plan.

3.    **Class 3:  General Unsecured Claims.**

(a)    <u>Classification</u>.  Class 3 consists of General Unsecured Claims.

(b)    <u>Treatment</u>.  Each Holder of an Allowed Class 3 Claim shall receive, as soon as practicable in the discretion of the Liquidating Trustee, in full satisfaction thereof, unless such Holder agrees to accept lesser treatment of such Claim, a Pro Rata Share of the Available Cash (the "<u>Initial Class 3 Distribution</u>").  In addition, after the Initial Class 3 Distribution but prior to the Final Distribution Date, the Disbursing Agent may, but is not required to, make one or more Pro Rata Interim Distributions of Available Cash to the Holders of Allowed Class 3 Claims, when, in the discretion of the Liquidating Trustee, the Liquidating Trust has sufficient Available Cash to make such Interim Distributions.  Finally, on the Final Distribution Date, each Holder of an Allowed Class 3 Claim shall receive a Pro Rata share of the Available Cash remaining in the Liquidating Trust.  Class 3 is impaired, and the Holders of Allowed Class 3 Claims are entitled to vote to accept or reject the Plan.

4.    **Class 4:  FirstFed Common Stock Interests**

(a)    <u>Classification</u>:  Class 4 consists of FirstFed Common Stock Interests in the Debtor.

(b)    <u>Treatment</u>:  As of the Effective Date, each holder of record of an Allowed FirstFed Common Stock Interest shall not receive a distribution under the Plan and all FirstFed Common Stock Interests will be deemed to be cancelled and void.  Class 4 is Impaired, but

13

because no distributions shall be made to holders of Interests in Class 4, such holders are deemed

conclusively to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code.

Therefore the holders of Interests in Class 4 are not entitled to vote to accept or reject the Plan.

## III.    ACCEPTANCE OR REJECTION OF THE PLAN

### A.    Voting Classes.

Each holder of an Allowed Claim in Class 3 shall be entitled to vote to accept or reject the

Plan.

### B.    Voting Rights of Holders of Disputed Claims.

A Disputed Claim will not be counted for purposes of voting on the Plan to the extent it is

disputed, provided an objection to such Claim has been filed no later than seven (7) days prior to the

deadline for casting ballots on the Plan, unless an order of the Bankruptcy Court is entered after

notice and a hearing temporarily allowing the Disputed Claim for voting purposes under Bankruptcy

Rule 3018(a).

### C.    Acceptance by Impaired Classes.

An impaired class of Claims shall have accepted the Plan if (i) the holders (other than any

holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar

amount of the Allowed Claims actually voting in such class have voted to accept the Plan and (ii)

more than one-half in number of the holders (other than any holder designated under section 1126(e)

of the Bankruptcy Code) of such Allowed Claims actually voting in such Class have voted to accept

the Plan.

### D.    Presumed Acceptance of the Plan.

Classes 1 and 2 are unimpaired under the Plan and, therefore, are conclusively presumed by

the Bankruptcy Code to accept the Plan.

## IV.    PROVISIONS FOR TREATMENT OF DISPUTED, CONTINGENT, OR UNLIQUIDATED CLAIMS AND ADMINISTRATIVE EXPENSES

### A.    Allowance of Claims of Holders of Record of Debentures.

A beneficial owner of any Debenture of record as of the seventh (7th) Business Day following

entry of the Confirmation Order (the "Record Date") shall, for purposes of distributions under the

Plan, be deemed to have an Allowed Class 3 Claim for the outstanding principal amount of the Debenture owned by such beneficial owner plus accrued and unpaid interest as of the Petition Date, and need not file a proof of claim with respect thereto.

In the event any Person that is neither the record holder as of the Record Date of a Debenture, nor the beneficial owner with respect thereto, shall file a proof of right to record status pursuant to Bankruptcy Rule 3003(d), the Liquidating Trustee shall establish such reserve, if any, as may be ordered by the Bankruptcy Court on account of any objection thereto. Such reserve shall be held in trust for the holder of such Disputed Claim. To the extent such Disputed Claim is disallowed, any reserve pertaining to such Disputed Claim shall be distributed to all holders of Allowed Class 3 Claims on a Pro Rata basis.

With respect to distributions to be made to Holders of Debentures classified in Class 3, the Indenture Trustee shall (i) be the Disbursing Agent, (ii) receive the consideration to be paid to Holders of the Debentures which are classified as Allowed Class 3 Claims as Indenture Trustee; (iii) be solely responsible for making distributions to Holders of Allowed Class 3 Claims arising from such Debentures in accordance with the terms of this Plan and the Indenture; and (iv) be authorized to deduct the Indenture Trustee's Fees and Expenses from the consideration provided to holders of Allowed Class 3 Claims to the extent so provided for in the Indenture.

**B.    Resolution of Disputed Claims.**

As of the Effective Date, and subject to the provisions of this Plan, the Liquidating Trustee shall have sole authority for investigating, administering, monitoring, implementing, litigating and settling all Disputed Claims. From and after the Effective Date, the Liquidating Trustee shall have the sole and exclusive right to make and file, and to prosecute, objections to Claims, including, but not limited to, Administrative Expenses and Priority Tax Claims. All objections shall be served upon the Holder of the Claim to which the objection is made.

**C.    Reserve for Disputed Claims.**

To the extent such a Disputed Claim ultimately is disallowed or allowed in an amount less than the amount of Cash that has been reserved, the resulting surplus Cash shall be allocated among holders of Allowed Claims in the Class in which the Disputed Claim was classified as

1    provided in the Plan.

2    Cash which would be issued and distributed on account of holders of Disputed Claims, in the

3    event that such Disputed Claims become Allowed Claims, shall instead be placed in the Disputed

4    Claims Reserve maintained by the Liquidating Trustee.  Such Cash in the Disputed Claims Reserve

5    will be reserved for the benefit of holders of such Disputed Claims pending determination of their

6    entitlement thereto.  Unless the Bankruptcy Court orders otherwise, the Liquidating Trustee will

7    reserve Pro Rata distributions for such Disputed Claims based upon the full amount of the Disputed

8    Claims or, in the case of a Disputed Claim that is an Administrative Claim, Cash in the full amount

9    of such Disputed Claim.  No reserve shall be required for any Disputed Claim to the extent of any

10    effective insurance coverage therefore.  Such Cash so reserved shall be distributed by the

11    Liquidating Trustee to the holder of a Disputed Claim to the extent that such Disputed Claim

12    becomes an Allowed Claim pursuant to a Final Order.

13    Prior to or on the Final Distribution Date, the Liquidating Trustee shall make all distributions

14    on account of any Disputed Claim that has become an Allowed Claim and remains unpaid as of the

15    Final Distribution Date.  To the extent that any portion of a Disputed Claim is not disputed, the

16    Liquidating Trustee may establish a reserve in the Disputed Claims Reserve only on account of that

17    portion of the Disputed Claim that is in dispute and may make one or more interim Distributions on

18    account of the portion of such Disputed Claim that is not in dispute.

19    **V.    IMPLEMENTATION OF THE PLAN**

20    **A.    Vesting of Assets.**

21    Unless otherwise expressly provided under this Plan, on the Effective Date, the Debtor's

22    Assets, including all of the Estate Causes of Action, will vest in the Liquidating Trust free and clear

23    of all claims, liens, encumbrances, charges and other interests, subject to the provisions of the Plan.

24    On and after the Effective Date, the transfer of the Debtor's Assets from the Estate to the Liquidating

25    Trust will be deemed final and irrevocable and distributions may be made from the Liquidating

26    Trust.

27    In connection with the foregoing:

28    (i)    On the Effective Date, the appointment of the Liquidating Trustee shall become

16

effective and the Liquidating Trustee shall begin to administer the Liquidating Trust pursuant to the

terms of the Liquidating Trust Agreement and the Plan and may use, acquire and dispose of property

of the Liquidating Trust free of any restrictions imposed under the Bankruptcy Code.

        (ii)     The Confirmation Order will provide the Liquidating Trustee with express authority

to convey, transfer and assign any and all of the Liquidating Trust Assets and to take all actions

necessary to effectuate same and to prosecute any and all Estate Causes of Action.

        (iii)    As of the Effective Date, the Liquidating Trust Assets will be free and clear of all

liens, claims and interests of holders of Claims and Equity Interests, except as otherwise provided in

the Plan.

        **B.**     **Establishment of the Liquidating Trust.**

       On the Effective Date the Liquidating Trust Agreement will become effective, and, if not

previously signed, the Debtor and the Liquidating Trustee will execute the Liquidating Trust

Agreement. The Liquidating Trust is organized and established as a trust for the benefit of the

Beneficiaries and is intended to qualify as a liquidating trust within the meaning of Treasury

Regulation Section 301.7701-4(d).

        **1.**     **Beneficiaries.**

       In accordance with Treasury Regulation Section 301.7701-4(d), the Beneficiaries of the

Liquidating Trust will be the Holders of all Allowed Claims against the Debtor. The Holders of

Allowed Claims will receive an allocation of the Liquidating Trust Assets as provided for in the Plan

and the Liquidating Trust Agreement. The Beneficiaries of the Liquidating Trust shall be treated as

the grantors and owners of such Beneficiaries' respective portion of the Liquidating Trust.

        **2.**     **Implementation of the Liquidating Trust.**

       On the Effective Date, the Debtor, on behalf of the Estate, and the Liquidating Trustee will

be authorized and directed to, and will execute the Liquidating Trust Agreement in substantially the

form attached as Exhibit "3" to the Plan, take all such actions as required to transfer from the Debtor

and the Estate the Debtor's Assets. From and after the Effective Date, the Liquidating Trustee will

be authorized to, and will, take all such actions to implement the Liquidating Trust Agreement and

the provisions of the Plan as are contemplated to be implemented by the Liquidating Trustee,

including, without limitation, directing Distributions to Holders of Allowed Claims, objecting to

Claims, prosecuting or otherwise resolving Estate Causes of Action and causing Distributions from

the Liquidating Trusts to be made to the Beneficiaries.

### 3. Transfer of Debtor's Assets.

On the Effective Date, pursuant to the Plan and sections 1123, 1141 and 1146(a) of the

Bankruptcy Code, the Debtor is authorized and directed to transfer, grant, assign, convey, set over,

and deliver to the Liquidating Trustee all of the Debtor's and its Estate's right, title and interest in

and to its Assets, including all Estate Causes of Action, free and clear of all liens, Claims,

encumbrances or interests of any kind in such property, except as otherwise expressly provided in

the Plan. To the extent required to implement the transfer of the Debtor's Assets from the Debtor

and its Estate to the Liquidating Trust, all Persons will cooperate with the Debtor and the Estate to

assist the Debtor and the Estate to implement said transfers.

### 4. Representative of the Estate.

The Liquidating Trustee will be appointed as the representative of the Estate pursuant to

sections 1123(a)(5), (a)(7) and (b)(3)(B) of the Bankruptcy Code and as such will be vested with the

authority and power (subject to the Liquidating Trust Agreement) to inter alia: (i) object to Claims

against and Equity Interests in the Debtor; (ii) administer, investigate, prosecute, settle and abandon

all Estate Causes of Action assigned to the Liquidating Trust; (iii) make Distributions provided for in

the Plan, including, but not limited to, on account of Allowed Claims; and (iv) take such action as

required to administer, wind-down, and close the Chapter 11 Case. As the representative of the

Estate, the Liquidating Trustee will be vested with all of the rights and powers of the Debtor and the

Estate with respect to all Estate Causes of Action assigned and transferred to the Liquidating Trust,

and the Liquidating Trustee will be substituted in place of the Debtor and the Estate, as applicable,

as the party in interest in all such litigation pending as of the Effective Date.

### 5. No Liability of Liquidating Trustee.

To the maximum extent permitted by law, the Liquidating Trustee, its employees, officers,

directors, agents, members, or representatives, or professionals employed or retained by the

Liquidating Trustee (the "Liquidating Trustee's Agents") will not have or incur liability to any

18

1    Person for an act taken or omission made in good faith in connection with or related to the

2    administration of the Liquidating Trust Assets, the implementation of the Plan and the Distributions

3    made thereunder or Distributions made under the Liquidating Trust Agreement. The Liquidating

4    Trustee, the Liquidating Trustee's Agents, and their respective employees, officers, directors, agents,

5    members, or representatives, or professionals employed or retained will in all respects be entitled to

6    reasonably rely on the advice of counsel with respect to their duties and responsibilities under the

7    Plan and the Liquidating Trust Agreement. Entry of the Confirmation Order constitutes a judicial

8    determination that the exculpation provision contained in Section V. B. 5 of the Plan is necessary to,

9    inter alia, facilitate Confirmation and feasibility and to minimize potential claims arising after the

10   Effective Date for indemnity, reimbursement or contribution from the Estate, or the Liquidating

11   Trust, or their respective property. The Confirmation Order's approval of the Plan will also

12   constitutes a *res judicata* determination of the matters included in the exculpation provisions of the

13   Plan. Notwithstanding the foregoing, nothing herein or in Section V. B. 5 of the Plan will alter any

14   provision in the Liquidating Trust Agreement that provides for the potential liability of the

15   Liquidating Trustee to any Person.

16    **6.    Provisions Relating to Federal Income Tax Compliance.**

17            A transfer to the Liquidating Trust shall be treated for all purposes of the Internal Revenue

18   Code of 1986, as amended (the "Internal Revenue Code"), as a transfer to creditors to the extent

19   creditors are Beneficiaries. For example, such treatment shall apply for purposes of Internal

20   Revenue Code sections 61(a)(12), 483, 1001, 1012 and 1274. Any such transfer shall be treated for

21   federal income tax purposes as a deemed transfer to the beneficiary-creditors followed by a deemed

22   transfer by the beneficiary-creditors to the Liquidating Trusts. The Beneficiaries of the Liquidating

23   Trusts shall be treated for federal income tax purposes as the grantors and deemed owners of the

24   Liquidating Trusts.

25

26    **C.    Prosecution of Estate Causes of Action by the Liquidating Trustee.**

27            Pursuant to the Confirmation Order, on the Effective Date, the Debtor irrevocably assigns,

28   transfers and conveys to the Liquidating Trustee, the right to manage and control all property of the

1   Estate, including, but not limited to, all Estate Causes of Action.  Subject to the provisions of Section

2   [V.B.4] of this Plan and Section [II.F] of the Liquidating Trust Agreement, the Liquidating Trustee

3   shall have the power and authority to prosecute, compromise or otherwise resolve any and all such

4   Estate Causes of Action, with all recoveries derived therefrom to be included within the Liquidating

5   Trust Assets.

6        **D.     Issuance and Execution of Plan Related Documents.**

7        In connection with the transactions contemplated to implement the Plan, the Debtor and the

8   Liquidating Trustee will execute certain documents.  As of the Effective Date, the Debtor and/or the

9   Liquidating Trustee will execute such amendments, modifications, supplements, and other

10  documents as provided for in the Plan.  The Debtor and/or the Liquidating Trustee are authorized to

11  execute such amendments, modifications, supplements and other documents as provided for in the

12  Plan without any further corporate action, and upon such execution, such amendments,

13  modifications, supplements and other documents as provided for in the Plan shall be deemed binding

14  upon the Debtor and/or the Liquidating Trustee and such other parties as applicable.

15       **E.     Cancellation/Surrender of the Debentures and Related Agreements.**

16       As of the Effective Date, (a) the Indentures and Debentures shall be terminated, and neither

17  the Debtor nor the other parties thereto shall have any further rights or obligations thereunder, except

18  that each Indenture and each Debenture continue to be effective for the following purposes:  (a)

19  allowing a holder of an Allowed Class 3 Claim, including the Indenture Trustee and holders of

20  Debentures to receive a Distribution provided for under this Plan and the provisions related to

21  distributions in such documents; (b) the right of the Indenture Trustee to exercise its charging lien

22  rights under Sections 5.4 and 6.6 of the Indentures against any recoveries which are otherwise due

23  and payable to any holders of the Debentures as  Allowed Class 3 Claims for the payment of any

24  Indenture Trustee's Fees and Expenses that remain outstanding; and (c) the right of the Indenture

25  Trustee to be indemnified pursuant to Section 6.6 of each Indenture.

26       Following the Effective Date, holders of Allowed Class 3 Claims will receive from the

27  Indenture Trustee or its designee(s) specific instructions regarding the time and manner in which the

28  Debentures are to be surrendered.  Pending such surrender, such Debentures will be deemed

cancelled and shall represent only the right to receive the Distributions to which the holder is entitled

under this Plan. Any such holder who fails to surrender or cause to be surrendered such Debenture

or fails to execute and deliver an affidavit of loss and indemnity reasonably satisfactory to the

Disbursing Agent or the respective indenture trustee, agent or servicer, as the case may be, within six

(6) months after the Effective Date, shall be deemed to have forfeited all rights and claims in respect

of such Debenture and shall not participate in any distribution hereunder, and (i) all cash in respect

of such forfeited distribution, including interest accrued thereon, shall revert to distributions to be

made to other holders of Debentures.

### F.  Dissolution of the Debtor and Termination of Current Officers, Directors, Employees and Counsel.

From and after the Effective Date, the Debtor shall be dissolved and the Liquidating Trustee

shall be authorized to take all action necessary to dissolve the Debtor. On the Effective Date, the

employment, retention, appointment and authority of all Officers, Directors, Employees and

Professionals of the Debtor shall be deemed to terminate.

## VI.  DISTRIBUTIONS UNDER THE PLAN.

### A.  In General.

Except as otherwise provided herein, or as may be ordered by the Bankruptcy Court,

Distributions to be made on account of Allowed Claims, other than Allowed Class 3 Claims, shall be

made on the Effective Date. The dates for Distributions by the Liquidating Trust on account of

Allowed Class 3 Claims shall be selected by the Liquidating Trustee. Such Distributions shall be

made as soon as practicable after the Effective Date.

### B.  Manner of Payment Under the Plan.

Any payment of Cash made by the Liquidating Trustee pursuant to the Plan may be made

either by check drawn on a domestic bank or by wire transfer from a domestic bank, at the option of

the Liquidating Trustee.

### C.  Manner of Distribution of Other Property.

Any distribution under the Plan of property other than Cash shall be made by the Liquidating

Trustee in accordance with the terms of the Plan.

**D.    Setoffs.**

The Liquidating Trustee may set off against any Claim and the payments to be made pursuant to the Plan in respect of such Claim, any claims of any nature whatsoever that the Debtor's Estate or Liquidating Trust may have against the holder of such Claim; provided that neither the failure to effect such set off nor the allowance of any Claim that otherwise would be subject to set off, shall constitute a waiver or release by the Debtor's Estate or Liquidating Trust of any such claim the Debtor's Estate or Liquidating Trust may have against such holder.

**E.    Distribution of Unclaimed Property.**

Except as otherwise provided in the Plan, any distribution of property (Cash or otherwise) under the Plan which is unclaimed after the later of (i) one year following the Effective Date or (ii) ninety (90) days after such distribution has been remitted to the Holder of the Allowed Claim, shall be deemed Available Cash and distributed as provided for under the Plan.

**F.    De Minimis Distributions.**

No cash payment of less than fifty dollars ($50.00) shall be made by the Liquidating Trustee to any holder of a Claim unless a request therefor is made in writing to the Liquidating Agent.

**G.    Record Date.**

At the close of business on the Distribution Record Date, the transfer ledgers for the Debentures and the Equity Interests shall be closed, and there shall be no further changes in the record holders of such Debentures and Equity Interests.  The Liquidating Trustee shall have no obligation to recognize any transfer of any such Debentures and Equity Interests occurring after the Record Date, and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the transfer ledgers as of the close of business on the Record Date.

**H.    Saturday, Sunday, or Legal Holiday.**

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 1.  Delivery of Distributions, Address of Holder.

For purposes of all notices and Distributions under this Plan, the Liquidating Trustee shall be entitled to rely on the name and address of the holder of each Claim as shown on, and Distributions to holders of Allowed Claims shall be made by regular U.S. first class mail to, the following addresses:  (a) the address set forth on in the proofs of Claim Filed by such holders; (b) the address set forth in any written notice of address change delivered by the holder to the Debtor or Liquidating Trustee after the date on which any related proof of Claim was Filed, or (c) the address reflected on the Schedules if no proof of Claim or proof of Equity Interest is Filed and the Debtor or Liquidating Trustee has not received a written notice of a change of address.  The Liquidating Trustee shall be under no duty to attempt to locate holders of Allowed Claims who are entitled to unclaimed Distributions.

## VII.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.  Assumption.

Effective upon the Effective Date, the Debtor hereby assumes those executory contracts and unexpired leases which are listed in Exhibit "1" to the Plan.  Pursuant to this Plan, the Debtor will also assume the executory contracts and unexpired leases that are the subject of any specific order of the Bankruptcy Court.  The Debtor reserves the right to delete any contract or lease from Exhibit "1" to the Plan, thereby rejecting the contract or lease, up until the hearing on confirmation of the Plan by filing with the Bankruptcy Court an amended Exhibit "1" to the Plan and by giving notice to counsel for the Indenture Trustee and counsel for the non-debtor party to the contract or lease.

### B.  Assumption and Cure Payment Objection.

Exhibit "1" to the Plan specifies the amount (the "Cure Payment"), if any, that the Debtor believes must be tendered on the Effective Date, in order to provide cure and compensation in accordance with sections 365(b)(1)(A) & (B) of the Bankruptcy Code.  The deadline for any objections to the Cure Payment amounts set forth in Exhibit "1" shall be the date for filing objections to the Plan, and no other objections to such Cure Payment will be timely.  In the event that any party to a listed contract or lease on Exhibit "1" contends that the Cure Payment amount so listed is incorrect, such party must file with the Bankruptcy Court and serve upon counsel for the

23

1    Debtor a written statement and an accompanying declaration in support thereof specifying the

2    amounts allegedly owing under sections 365(b)(1)(A) & (B) of the Bankruptcy Code no later than

3    the date fixed for filing objections to the confirmation of the Plan.  Failure to timely file and serve

4    such statement shall result in the determination that the Debtor's tender of the Cure Payment, as

5    specified in Exhibit "1", on the Effective Date, shall provide cure and compensation for any and all

6    defaults and unpaid obligations under such assumed executory contract or unexpired lease.

7        In the event that any party to a listed contract or lease specified in Exhibit "1" objects to the

8    proposed assumption by the Debtor, such party must file with the Bankruptcy Court and serve upon

9    counsel for the Debtor a written statement and an accompanying declaration in support thereof no

10   later than the date fixed for filing objections to the confirmation of the Plan.  Failure timely to file

11   and serve such statement shall result in the determination that the assumption is appropriate.

12       The Debtor reserves the right to respond to any objection filed by any party to an executory

13   contract or unexpired lease under this paragraph and/or to reject any executory contract or unexpired

14   lease or assume such contract or unexpired lease by complying with section 365(b) of the

15   Bankruptcy Code.  To the extent the Debtor disagrees with any objection filed by any party to an

16   executory contract or unexpired lease under this paragraph, the Debtor will request that the

17   Bankruptcy Court declare that the Cure Payment is as stated by the Debtor, and that the proposed

18   assumption is appropriate, and any disputes shall be resolved by the Bankruptcy Court.

19       Entry of the Confirmation Order shall constitute approval of the assumptions under the Plan

20   pursuant to section 365 of the Bankruptcy Code.  All Cure Payments which may be required by

21   section 365(b)(1) of the Bankruptcy Code shall be made on the Effective Date or as soon thereafter

22   as is practicable or as may otherwise be agreed by the parties to any particular contracts or leases.

23       **C.    Rejection.**

24       With the exception of those executory contracts and unexpired leases that have been

25   previously assumed, assumed pursuant to [Section VIII.A], above, or rejected by order of the

26   Bankruptcy Court pursuant to Bankruptcy Code section 365, as of the Effective Date, the Debtor

27   shall reject, pursuant to Bankruptcy Code section 365, all other executory contracts and unexpired

28   leases. Exhibit "2" to the Plan is a non-exclusive list of rejected contracts.

**D.    General.**

Inclusion of a matter in Exhibit "1" or "2" does not constitute an admission by the Debtor that an executory contract or unexpired lease exists, is valid or is an executory contract or unexpired lease. As a matter of prudence, Exhibits "1" and "2" include contracts and leases which may have previously been rejected or canceled or assigned or which may have expired. Entry of the Confirmation Order shall constitute approval of the rejections under the Plan pursuant to section 365(a) of the Bankruptcy Code.

All Allowed Claims arising from the rejection of executory contracts or unexpired leases, whether under the Plan or by separate proceeding, shall be treated as Class 3 Claims under the Plan.

All Claims arising from the rejection of executory contracts or unexpired leases, whether under the Plan or by separate proceeding, must be filed with the Bankruptcy Court on or before such date as the Bankruptcy Court has fixed pursuant to the Bar Date Order with respect to Claims arising from the rejection of specified executory contracts and unexpired leases, or, if rejected pursuant to the Plan, on or before the day that is 30 days after the Effective Date or, if such day is not a Business Day, the first Business Day occurring thereafter. Any such Claims which are not filed within such time will be forever barred from assertion against the Debtor's Estate, the Debtor, the Liquidating Agent, and the Estate's property.

**E.    Insurance Policies**

For the avoidance of doubt, the Debtor's rights with respect to all insurance policies under which the Debtor may be a beneficiary (including all insurance policies that may have expired prior to the Petition Date, all insurance policies in existence on the Petition Date, all insurance policies entered into by the Debtor after the Petition Date, and all insurance policies under which the Debtor holds rights to make, amend, prosecute and benefit from claims), are retained and will be transferred or assigned to the Liquidating Trust pursuant to this Plan. Notwithstanding any provision providing for the rejection of executory contracts, any insurance policy that is deemed to be an executory contract shall neither be rejected nor assumed by operation of this Plan and shall be the subject of a specific motion by the Liquidating Trustee who shall retain the right to assume or reject any such executory contracts pursuant to and subject to the provisions of Section 365 of the Bankruptcy Code

1    following the Effective Date.

2    **VIII.    EFFECTIVENESS OF THE PLAN**

3          **A.    Conditions Precedent.**

4          The Effective Date shall not occur until the Confirmation Order has been entered on the

5    docket of the Bankruptcy Court and no stay of the Confirmation Order is in effect, unless this

6    condition has been waived in writing by the Debtor.

7          **B.    Notice of Effective Date.**

8          As soon as practicable after the Effective Date has occurred, the Debtor shall file with the

9    Bankruptcy Court an informational notice specifying the Effective Date, as a matter of record.

10   **IX.    RETENTION OF JURISDICTION**

11         This Plan shall not in any way limit the Court's post-confirmation jurisdiction as provided

12   under the Bankruptcy Code.  The Bankruptcy Court will retain and have exclusive jurisdiction to the

13   fullest extent permissible over any proceeding (i) arising under the Bankruptcy Code or (ii) arising in

14   or related to the Chapter 11 Case or the Plan, including but not limited to the following:

15         A.    To hear and determine pending motions for the assumption, assumption and

16   assignment, or rejection of executory contracts or unexpired leases, if any are pending as of the

17   Effective Date, the determination of any cure payments related thereto, and the allowance or

18   disallowance of Claims resulting therefrom;

19         B.    To hear and determine pending motions for sale of assets outside the ordinary course

20   of business pursuant to section 363 of the Bankruptcy Code, if any are pending as of the Effective

21   Date;

22         C.    To determine any and all adversary proceedings, applications, motions, and contested

23   matters instituted prior to the closing of the Chapter 11 Case;

24         D.    To ensure that Distributions to holders of Allowed Claims are accomplished as

25   provided herein;

26         E.    To hear and determine any objections to Administrative Expenses and to Proofs of

27   Claims filed both before and after the Effective Date, and to allow or disallow any Disputed Claim in

28   whole or in part;

1    F.    To enter and implement such orders as may be appropriate in the event the

2 Confirmation Order is for any reason stayed, revoked, modified, or vacated;

3    G.    To issue orders in aid of execution of the Plan and to issue injunctions or take such

4 other actions or make such other orders as may be necessary or appropriate to restrain interference

5 with this Plan or its execution or implementation by any entity;

6    H.    To consider any modifications of the Plan, to cure any defect or omission, or to

7 reconcile any inconsistency in the Plan or any order of the Bankruptcy Court, including, without

8 limitation, the Confirmation Order;

9    I.    To hear and determine all applications for compensation and reimbursement of

10 expenses of professionals under sections 330, 331, and 503(b) of the Bankruptcy Code;

11    J.    To hear and determine any disputes arising in connection with the interpretation,

12 implementation, execution, or enforcement of the Plan, the Confirmation Order, or any other order

13 of the Bankruptcy Court;

14    K.    To hear or determine any action to recover assets of the Estate, wherever located,

15 including any and all Estate Causes of Action;

16    L.    To hear and determine any actions or matters related to Estate Causes of Action,

17 whether or not such actions or matters are pending on the Effective Date;

18    M.    To hear and determine any matters concerning state, local, and federal taxes in

19 accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

20    N.    To hear any other matter not inconsistent with the Bankruptcy Code;

21    O.    To hear any other matter deemed relevant by the Court; and

22    P.    To enter a Final Decree closing the Chapter 11 Case.

23 **X.    LIMITATION OF LIABILITY, RELEASES AND INJUNCTION**

24    **A.    Exculpation.**

25    Except as otherwise provided by the Plan or the Confirmation Order, on the Effective Date,

26 the Debtor, the Indenture Trustee, and their respective officers, directors, employees, representatives,

27 counsel, financial advisors or other agents and their successors and assigns shall be deemed released

28 by each of them against the other, and by all Holders of Claims or Equity Interests or any other

1    entity, of and from any Claims, obligations, rights, causes of action and liabilities for any act or

2    omission in connection with, or arising out of, the Chapter 11 Case, including, without limiting the

3    generality of the foregoing, all sales of assets of the Debtor's Estate, the Disclosure Statement, the

4    pursuit of approval of the Disclosure Statement, the pursuit of confirmation of the Plan, the

5    negotiation, formulation, and/or consummation of the Plan or the administration of the Plan or the

6    property to be distributed under the Plan or any acts or omissions taken with respect to any contract,

7    instrument, release or other agreement or document created in connection with the Plan, except for

8    acts or omissions which constitute willful misconduct or gross negligence, and all such Persons, in

9    all respects shall be entitled to rely upon the advice of counsel with respect to their duties and

10   responsibilities under the Plan and under the Bankruptcy Code.  Notwithstanding the foregoing, this

11   provision of the Plan is not intended to waive or release any cause of action based on prepetition

12   actions or conduct, including but not limited to any Estate Causes of Action.

13       **B.**    **Injunction Enjoining Holders of Claims Against Debtor.**

14       The Plan is the sole means for resolving, paying or otherwise dealing with Claims and Equity

15   Interests.  To that end, except as expressly provided in the Plan, at all times on and after the

16   Effective Date, all Persons who have been, are, or may be holders of Claims against or Interests in

17   the Debtor arising prior to the Effective Date, will be permanently enjoined from taking any of the

18   following actions, on account of any such Claim or Equity Interest, against the Debtor, its Estate, the

19   Liquidating Trust or its property (other than actions brought to enforce any rights or obligations

20   under the Plan):

21       (i)    commencing, conducting or continuing in any manner, directly or indirectly any suit,

22   action, or other proceeding of any kind against the Debtor, its Estate, the Liquidating Trust, or the

23   Liquidating Trustee, their successors, or their respective property or assets (including, without

24   limitation, all suits, actions, and proceedings that are pending as of the Effective Date which will be

25   deemed to be withdrawn or dismissed with prejudice);

26       (ii)    Enforcing, levying, attaching, executing, collecting, or otherwise recovering by any

27   manner or means whether directly or indirectly any judgment, award, decree, or order against the

28   Debtor, its Estate, the Liquidating Trust, or the Liquidating Trustee, their successors, or their

1    respective property or assets;

2        (iii)    creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any

3    lien, security interest or encumbrance against the Debtor, its Estate, the Liquidating Trust, or the

4    Liquidating Trustee, their successors, or their respective property or assets; and

5        (iv)    proceeding in any manner in any place whatsoever against the Debtor, its Estate, the

6    Liquidating Trust, or the Liquidating Trustee, their successors, or their respective property or assets,

7    that does not conform to or comply with the provisions of the Plan.

8        **C.    Nondischarge of the Debtor.**

9        In accordance with Bankruptcy Code section 1141(d)(3), the Confirmation Order will not

10    discharge Claims.  However, no Holder of a Claim may receive any payment from, or seek recourse

11    against, any assets that are to be distributed under the Plan other than assets required to be

12    distributed to that Holder pursuant to the Plan.  As of the Confirmation Date, all Persons are

13    enjoined from asserting against any property that is to be distributed under the Plan, any Claims,

14    rights, causes of action, liabilities, or Equity Interests based upon any act, omission, transaction, or

15    other activity that occurred before the Confirmation Date except as expressly provided in the Plan or

16    the Confirmation Order.

17    **XI.    MISCELLANEOUS PROVISIONS**

18        **A.    Payment of Statutory Fees.**

19        All quarterly fees due and payable to the Office of the United States Trustee pursuant to

20    section 1930(a)(6) of title 28 of the United States Code shall be duly paid in full on or before the

21    Effective Date, as required by section 1129(a)(12) of the Bankruptcy Code.  The Liquidating Trust

22    shall be responsible for timely payment of such quarterly fees due and payable after the Effective

23    Date and until the Chapter 11 Case is closed, pursuant to section 1930(a)(6) of title 28 of the United

24    States Code, with respect to cash disbursements made by the Disbursing Agent under the Plan.  After

25    the Effective Date and until the Chapter 11 Case is closed, the Liquidating Trustee shall file with the

26    Office of the United States Trustee monthly financial reports specifying all disbursements made

27    pursuant to the Plan and shall make all payments based upon such disbursements as required by

28    applicable law.

**B.    Preservation of Rights of Action.**

Except to the extent any rights, claims, defenses, and counterclaims are expressly and specifically released in connection with this Plan or in any settlement agreement approved during the Chapter 11 Case: (i) any and all Estate Causes of Action accruing to the Debtor's Estate shall vest in the Liquidating Trust on the Effective Date, whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such Estate Causes of Action have been listed or referred to in this Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court, and (ii) the Debtor's Estate does not waive, release, relinquish, forfeit, or abandon (nor shall it be estopped or otherwise precluded or impaired from asserting) any Estate Cause of Action that constitutes property of the Debtor's Estate: (a) whether or not such Estate Cause of Action has been listed or referred to in this Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court, (b) whether or not such Estate Cause of Action is currently known to the Debtor or the Liquidating Trustee, and (c) whether or not a defendant in any litigation relating to such Estate Cause of Action filed a proof of claim in the Chapter 11 Case, filed a notice of appearance or any other pleading or notice in the Chapter 11 Case, voted for or against this Plan, or received or retained any consideration under this Plan.

**C.    Headings.**

Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

**D.    Binding Effect.**

The Plan shall be binding upon and inure to the benefit of the Debtor's Estate, holders of Claims, holders of Equity Interests, and their respective successors or assigns.

**E.    Revocation or Withdrawal.**

**1.    Right to Revoke.**

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.

**2.    Effect of Revocation.**

If the Debtor revokes the Plan prior to the Confirmation Date or if the Confirmation Date or the Effective Date does not occur, then the Plan shall be deemed null and void. In such event,

1  nothing contained herein shall be deemed to constitute a waiver or release of any claims by or

2  against the Debtor or its Estate or any other person or to prejudice in any manner the rights of the

3  Debtor, the Debtor or its Estate or any person in any further proceedings involving the Debtor.

4  **F.    Governing Law.**

5  Unless a rule of law or procedure is supplied by (i) federal law (including the Bankruptcy

6  Code and Bankruptcy Rules), or (ii) an express choice of law provision in any agreement, contract,

7  instrument or document provided for, or executed in connection with, this Plan, the rights and

8  obligations arising under the Plan and any agreements, contracts, documents and instruments

9  executed in connection with this Plan shall be governed by, and construed and enforced in

10  accordance with, the laws of the State of California without giving effect to the principles of conflict

11  of laws thereof.

12  **G.    Withholding, Reporting, and Payment of Taxes.**

13  In connection with the Plan and all instruments issued in connection therewith and

14  Distributions thereon, the Liquidating Trustee shall comply with all withholding and reporting

15  requirements imposed by any federal, state, local, or foreign taxing authority and all Distributions

16  hereunder shall be subject to any such withholding and reporting requirements.  The Liquidating

17  Trustee shall report and pay taxes on the income of the Liquidating Trust Assets, if any, as required

18  by applicable law.  In addition, to the extent required by applicable law, reported Distributions from

19  such reserves shall include all interest and investment income, if any, attributable to the Cash or

20  property being distributed net of taxes which are, or are estimated to be, due and payable thereon.

21  **H.    Other Documents and Actions.**

22  The Debtor on and prior to the Effective Date and the Liquidating Trustee after the Effective

23  Date may execute such other documents and take such other actions as may be necessary or

24  appropriate to effectuate the transactions contemplated under this Plan.

25  **I.    Modification of the Plan.**

26  Prior to the Effective Date, the Plan may be altered, amended, or modified pursuant to

27  section 1127 of the Bankruptcy Code by the Debtor.  After the Effective Date, the Liquidating

28  Trustee shall have the sole authority and power to alter, amend, or modify the Plan pursuant to

1    section 1127 of the Bankruptcy Code.

2    **J.    Notices.**

3    Any notice to the Debtor, Liquidating Trustee, or United States Trustee required or permitted

4    to be provided under the Plan shall be in writing and served by either (a) certified mail, return receipt

5    requested, postage prepaid, (b) hand delivery, or (c) reputable overnight delivery service, freight

6    prepaid, to be addressed as follows:

7    **Debtor:**
     FirstFed Financial Corp.
8    10900 Wilshire Boulevard
     Suite 850
9    Los Angeles, California 90024
10   Attention:  Carl W. McKinzie, Chief Executive Officer

11
     **With a copy to:**
12   Landau Gottfried & Berger LLP
     1801 Century Park East
13   Suite 1460
14   Los Angeles, CA 90067
     Attention: Jon L. R. Dalberg

15

16
     **Liquidating Trustee:**
17   [TO COME]

18
     **Indenture Trustee:**
19   Wilmington Trust Company
     Rodney Square North,
20   1100 North Market Street
21   Wilmington, Delaware 19890-1600
     Attention:  Patrick J. Healy, Vice President
22

23   **With a Copy to:**
     Nixon Peabody LLP
24   100 Summer Street
     Boston, Massachusetts 02110
25   Attention:  Frank S. Hamblett, Esq.
26           Louis J. Cisz, Esq.
             Catherine Ng, Esq.

27

28

**Office of the United States Trustee**:

Office of the United States Trustee
725 S. Figueroa St., Ste. 2600
Los Angeles, CA 90017
Attention: Dare Law

### K.    Severability of Plan Provisions.

If, prior to Confirmation, any term or provision of the Plan does not govern the treatment of Claims or Equity Interests, or is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term(s) or provision(s) to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### L.    Successors and Assigns.

The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and assigns of such entity.

///

///

///

///

///

///

///

///

**M.    Post-Confirmation Notice.**

From and after the Effective Date, any person who desires notice of any pleading or document filed in the Bankruptcy Court, or any hearing in the Bankruptcy Court, or other matter as to which the Bankruptcy Code requires notice to be provided, shall file a request for post-confirmation notice and shall serve the request on the Liquidating Trustee; provided, however, the United States Trustee shall be deemed to have requested post-confirmation notice.

DATED: October 1, 2010

Respectfully submitted,

FIRSTFED FINANCIAL CORP.

By: _Carl W. McKinzie_

Carl W. McKinzie
Chief Executive Officer

Presented By:

LANDAU GOTTFRIED & BERGER, LLP

By: _Jon L.R. Dalberg_

Jon L.R. Dalberg
Attorneys for FirstFed Financial Corp.

34

LIST OF EXHIBITS

Exhibit "1"    List of Executory Contracts Assumed

Exhibit "2"    List of Executory Contracts Rejected

Exhibit "3"    Liquidating Trust Agreement

**EXHIBIT "1" TO PLAN**

**LIST OF ASSUMED CONTRACTS**

Effective upon the Effective Date, the Debtor hereby assumes the following executory contracts and unexpired leases, and will make the Cure Payments so specified.  Inclusion herein does not constitute an admission by the Debtor that an executory contract or unexpired lease exists, is valid or that it is an executory contract or lease.  As a matter of prudence, the following list includes contracts and leases which may have previously been rejected or canceled or assigned or which may have expired:

[NONE]

E-1

1

2

## EXHIBIT "2" TO PLAN

### LIST OF REJECTED CONTRACTS

3       Effective upon the Effective Date, the Debtor hereby rejects the following executory

4   contracts and unexpired leases.  Inclusion herein does not constitute an admission by the Debtor that

5   an executory contract or unexpired lease exists, is valid or that it is an executory contract or lease.

6   Notwithstanding any failure to list an executory contract or unexpired lease on this Exhibit "2", the

7   provisions of section VIII.C of the Plan operate to reject all executory contracts and unexpired leases

8   that have not been previously assumed, assumed pursuant to Section VIII.A of the Plan, or rejected

9   by order of the Bankruptcy Court pursuant to Bankruptcy Code section 365.

10

11  [TO COME]

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## EXHIBIT "3" TO PLAN

2

**LIQUIDATING TRUST AGREEMENT**

3

[TO COME]

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| In re: | CHAPTER 11 |
|---|---|
| FirstFed Financial Corp. | |
| Debtor(s). | CASE NUMBER 2:10-bk-12927-ER |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
Landau Gottfried & Berger LLP
1801 Century Park East, Suite 1460
Los Angeles, CA 90067

A true and correct copy of the foregoing document described
**PLAN OF LIQUIDATION**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On October 1, 2010 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

    United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐   Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL(indicate method for each person or entity served):**
On October 1, 2010 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒   Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐   Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| October 1, 2010 | Katherine Moss | |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

9013-3.1

F

| In re:<br><br>FirstFed Financial Corp.<br><br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER 2:10-bk-12927-ER |
| --- | --- |

## II. <u>SERVED BY U.S. MAIL</u>

Honorable Ernest Robles
USBC - Central District of California
255 East Temple Street, Suite 1560
Los Angeles, CA 90012

<u>U.S. Trustee</u>
Office of the United States Trustee
ATTN: Dare Law
725 S. Figueroa St., Ste. 2600
Los Angeles, CA 90017

<u>Counsel for Wilmington Trust Co.</u>
Nixon Peabody LLP
Catherine Ng, Esq./ Frank Hamblett, Esq.
100 Summer Street
Boston, Massachusetts 02110

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*
**9013-3.1**

F