| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY |
|---|---|
| Herbert P. Kunowski, Esq. (SBN 150141)<br>D. Victoria LaBrie, Esq. (SBN 162999)<br>WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP<br>555 South Flower Street, Suite 2900<br>Los Angeles, California 90071<br><br>Phone: 213-443-5100; Fax: (213) 443-5101<br><br>☐ Individual appearing without counsel<br>☒ Attorney for: National Union Fire Ins. Co. of Pittsburgh, Pa. | **FILED**<br>**DEC 14 2010**<br>CLERK U.S. BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY:_____ Deputy Clerk |

| UNITED STATES BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA | |
|---|---|
| In re: FirstFed Financial Corp., | CHAPTER: 11 |
| | CASE NO.: 2:10-bk-12927-ER |
| | DATE: January 18, 2011<br>TIME: 10:00 a.m.<br>CTRM: 1568<br>FLOOR: 15th |
| Debtor(s). | |

## NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY
## UNDER 11 U.S.C. § 362 (with supporting declarations)
### (MOVANT: National Union Fire Ins. Co. of Pittsburgh, Pa )
### (Action in Non-bankruptcy Forum)

1. NOTICE IS HEREBY GIVEN to the Debtor(s) and Trustee (if any)("Responding parties"), their attorneys (if any), and other interested parties that on the above date and time and in the indicated courtroom, Movant in the above-captioned matter will move this Court for an Order granting relief from the automatic stay as to Debtor(s) and Debtor's(s') bankruptcy estate on the grounds set forth in the attached Motion.

2. Hearing Location:   ☒ **255 East Temple Street, Los Angeles**    ☐ **411 West Fourth Street, Santa Ana**

        ☐ **21041 Burbank Boulevard, Woodland Hills**    ☐ **1415 State Street, Santa Barbara**

        ☐ **3420 Twelfth Street, Riverside**

3. a. ☒ This Motion is being heard on REGULAR NOTICE pursuant to Local Bankruptcy Rule 9013-1. If you wish to oppose this Motion, you must file a written response to this Motion with the Bankruptcy Court and serve a copy of it upon the Movant's attorney (or upon Movant, if the Motion was filed by an unrepresented individual) at the address set forth above no less than 14 days before the above hearing and must appear at the hearing of this Motion.

   b. ☐ This Motion is being heard on SHORTENED TIME. If you wish to oppose this Motion, you must appear at the hearing. Any written response or evidence must be filed and served:

        ☐ at the hearing     ☐ at least _____ court days before the hearing.

   (1) ☐ A Motion for Order Shortening Time was not required (according to the calendaring procedures of the assigned judge).

   (2) ☐ A Motion for Order Shortening Time was filed per Local Bankruptcy Rule 9075-1(b) and was granted by the Court.

   (3) ☐ A Motion for Order Shortening Time has been filed and remains pending. Once the Court has ruled on that Motion, you will be served with another notice or an order that will specify the date, time, and place of the hearing on the attached Motion and the deadline for filing and serving a written opposition to the Motion.

4. You may contact the Bankruptcy Clerk's Office to obtain a copy of an approved court form for use in preparing your response (Optional Court Form F 4001-1.RES), or you may prepare your response using the format required by Local Bankruptcy Rule 9004-1 and the Court Manual.

(Continued on next page)

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

December 2009

**F 4001-1M.NA**

F4001MNA

| In re                          (SHORT TITLE) | CHAPTER: 11 |
|---|---|
| **FirstFed Financial Corp.,** | |
| Debtor(s). | CASE NO.: 2:10-bk-12927-ER |

5.  If you fail to file a written response to the Motion or fail to appear at the hearing, the Court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

Dated:  December *13* , 2010

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
*Print Law Firm Name (if applicable)*

Herbert P. Kunowski/D. Victoria LaBrie
*Print Name of Individual Movant or Attorney for Movant*

*Signature of Individual Movant or Attorney for Movant*

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*                                                                   **F 4001-1M.NA**

| In re (SHORT TITLE) FirstFed Financial Corp., Debtor(s). | CHAPTER: 11 CASE NO.: 2:10-bk-12927-ER |
|---|---|

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY

## (MOVANT: National Union Fire Ins. Co. of Pittsburgh, Pa.    )

1.  **The Non-bankruptcy Action:** Movant moves for relief from the automatic stay as to Debtor(s) and Debtor's(s') bankruptcy estate with respect to the following pending lawsuit or administrative proceeding (the "Non-bankruptcy Action") in a non-bankruptcy forum:

    Case name: Federal Deposit Insurance Corp. v. Directors and Officers of First Federal Bank of Calif.
    Docket number:   To Be Determined
    Court or agency where pending: Federal Deposit Insurance Corp./Agency of U.S. Government

2.  **Case History:**

    a. [x] A voluntary    [ ] An involuntary    petition under Chapter    [ ] 7  [x] 11  [ ] 12  [ ] 13
       was filed on *(specify date)*: 01/06/10

    b. [ ] An Order of Conversion to Chapter    [ ] 7  [ ] 11  [ ] 12  [ ] 13
       was entered on *(specify date)*:

    c. [ ] Plan was confirmed on *(specify date)*:

    d. [ ] Other bankruptcy cases affecting this action have been pending within the past two years. See attached Declarations.

    e. For additional case history, see attached continuation page.

3.  **Grounds for Relief from Stay:** Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay to proceed with the Non-bankruptcy Action to final judgment in the non-bankruptcy forum for the following reasons:

    a. [ ] The bankruptcy case was filed in bad faith specifically to delay, hinder or interfere with prosecution of the Non-bankruptcy Action.

    b. [ ] The claim is insured. Movant seeks recovery only from applicable insurance, if any, and waives any deficiency or other claim against the Debtor(s) or estate property.

    c. [ ] Movant seeks recovery primarily from third parties and agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor(s) or estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

    d. [ ] Mandatory abstention applies under 28 U.S.C. § 1334(c)(2), and Movant agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor(s) or estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

    e. [ ] The claims are non-dischargeable in nature and can be most expeditiously resolved in the non-bankruptcy forum.

    f. [ ] The claims at issue arise under non-bankruptcy law and can be most expeditiously resolved in the non-bankruptcy forum.

    g. [x] Other reasons to allow the Non-bankruptcy Action to proceed are set forth in an attached Declaration.

4.  [ ] Movant also seeks annulment of the stay so that filing of the bankruptcy petition does not affect any and all of the enforcement actions that were taken after the filing of the bankruptcy petition in this case, as specified in the attached Declaration(s).

5.  **Evidence in Support of Motion:** *(Important Note: Declaration(s) in support of the Motion MUST be attached hereto.)*

    a. [x] Movant submits the attached Declaration(s) to provide evidence in support of this Motion pursuant to Local Bankruptcy Rules.

    b. [ ] Movant requests that the Court consider as admissions the statements made by Debtor(s) under penalty of perjury concerning Movant's claims set forth in Debtor's(s') Schedules. Authenticated copies of the relevant portions of the Schedules are attached as Exhibit _____

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*    **F 4001-1M.NA**

| In re                      (SHORT TITLE) | CHAPTER: 11 |
|---|---|
| FirstFed Financial Corp.,          Debtor(s). | CASE NO.:  2:10-bk-12927-ER |

c.  [ X ]  Other evidence *(specify)*: National Union Policy No. 00-245-05-68, attached hereto as Exhibit A.

6.  [ X ]  **An optional Memorandum of Points and Authorities is attached to this Motion.**

**WHEREFORE, Movant prays that this Court issue an Order granting the following:**

1.  Relief from the stay to Movant (and its successors and assigns, if any) *(check boxes re all applicable relief requested)*:

   a.  [    ]  Terminating the stay as to Debtor(s) and Debtor's(s') bankruptcy estate.

   b.  [    ]  Annulling the stay so that the filing of the bankruptcy petition does not affect postpetition acts, as specified in the attached Declaration(s).

   c.  [ X ]  Modifying or conditioning the stay as set forth in the attached continuation page:

2.  Allowing Movant to proceed under applicable non-bankruptcy law to enforce its remedies to proceed to final judgment in the non-bankruptcy forum, provided that the stay remains in effect with respect to enforcement of any judgment against Debtor(s) or estate property.

3.  [ X ]  Additional provisions requested:

   a.  [ X ]  That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

   b.  [ X ]  That the 14-day stay prescribed by Bankruptcy Rule 4001(a)(3) be waived.

   c.  [    ]  That the Extraordinary Relief be granted as set forth in the Attachment *(attach Optional Court Form F 4001-1M.ER)*.

   d.  [    ]  For other relief requested, see attached continuation page.

4.  If relief from stay is not granted, Movant respectfully requests the Court to order adequate protection.

Dated: December 13 , 2010                      Respectfully submitted,


                                               National Union Fire Ins. Co. of Pittsburgh, Pa.
                                               *Movent Name*


                                               WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
                                               *Firm Name of Attorney for Movant (if applicable)*


                                               By: _____
                                                    *Signature*


                                               Name: Herbert P. Kunowski/D. Victoria LaBrie
                                                    *Typed Name of Individual Movant or Attorney for Movant*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

December 2009                                                          **F 4001-1M.NA**

**F 4001-1M.NA**

| In re | (SHORT TITLE) | CHAPTER: 11 |
|---|---|---|
| FirstFed Financial Corp., | | |
| | Debtor(s). | CASE NO.: 2:10-bk-12927-ER |

## DECLARATION RE ACTION IN NON-BANKRUPTCY FORUM
### (MOVANT: <u>National Union Fire Ins. Co. of Pitts.</u> )

I, <u>Herbert P. Kunowski</u> , declare as follows:
*(Print Name of Declarant)*

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding the state court lawsuit, administrative proceeding, or other action in a non-bankruptcy forum ("Non-bankruptcy Action") that is the subject of this Motion because:

    a. [  ] I am the Movant.

    b. [x] I am the Movant's attorney of record in the Non-bankruptcy Action.

    c. [  ] I am employed by the Movant as *(state title and capacity)*:

    d. [  ] Other *(specify)*:

2.  I am one of the custodians of the books, records and files of Movant as to those books, records and files that pertain to the Non-bankruptcy Action. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the Court if required.

3.  The Non-bankruptcy Action at issue is currently pending as:

    Case name:   Federal Deposit Insurance Corp. v. Directors and Officers of First Federal Bank of California, FSB

    Docket number:   To Be Determined

    Court or agency where pending:  Federal Deposit Insurance Corp /Agency of U.S. Government

4.  **Procedural Status:**

    a.   The causes of action pleaded in the non-bankruptcy forum are *(list)*:

    The FDIC seeks civil damages against the Bank's directors and officers based on alleged failures in management and unsafe and unsound practices resulting in alleged losses to the FDIC as the Bank's receiver.

    True and correct copies of the pleadings filed before the non-bankruptcy forum are attached hereto as Exhibit <u>Not</u> .

    b.   The Non-bankruptcy Action was filed on *(specify date)*: September 2, 2010

    c.   Trial or hearing began/is scheduled to begin on *(specify date)*: N/A

    d.   The trial or hearing is estimated to require the following number of court days *(specify)*: N/A

    e.   Other defendants to the Non-bankruptcy Action are *(specify)*: Bank's D&O's identified on Continuation Page for Page 4

5.  **Grounds for relief from stay:**

    a. [x] The claim is insured. The insurance carrier and policy number are *(specify)*: National Union issued its Executive and Organization Liability Insurance Policy No. 00-245-05-68 to FirstFed Financial Corp. on a "claims first made and reported" basis for the Policy Period of October 22, 2008 to October 22, 2009.

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

| In re                          (SHORT TITLE) | CHAPTER:  11 |
|---|---|
| FirstFed Financial Corp., | |
|                                    Debtor(s). | CASE NO.:  2:10-bk-12927-ER |

   b. ☐  The matter can be tried more expeditiously in the non-bankruptcy forum.

     (1) ☐  It is currently set for trial on:

     (2) ☐  It is in advanced stages of discovery and Movant believes that it will be set for trial by *(specify date)*:
The basis for this belief is *(specify)*:

     (3) ☐  The matter involves non-debtor parties who are not subject to suit in the bankruptcy court.  A single trial in the non-bankruptcy forum is the most efficient use of judicial resources.

   c. ☐  The bankruptcy case was filed in bad faith specifically to delay or interfere with the prosecution of the Non-bankruptcy Action.

     (1) ☐  Movant is the only creditor (or the only substantial creditor) scheduled by the Debtor(s).

     (2) ☐  The timing of the petition filing shows that it was intended to delay or interfere with the Non-bankruptcy Action based upon the following facts *(specify)*:

     (3) ☐  Debtor(s) does(do) not have a reasonable likelihood of reorganizing in this Chapter ☐ 11 ☐ 13  bankruptcy case based upon the following facts *(specify)*:

   d. ☒  For other facts justifying relief from stay, see attached continuation page.

**I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on** December  13 , 2010 , at  Los Angeles, California ____  *(city, state).*


Herbert P. Kunowski _____
*Print Declarant's Name*

_____
*Signature of Declarant*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*                                                                                                 **F 4001-1M.NA**

**CONTINUATION PAGE FOR PAGE 4, PARAGRAPH 1.c.**

**Movant Prays that this Court Issue an Order Granting the Motion of National Union Fire Insurance Company of Pittsburgh, Pa. for Relief from the Automatic Stay under 11 U.S.C. § 362 as follows:**

The Court Grants the Motion of National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") for Relief from the Automatic Stay Under 11 U.S.C § 362, and any related or similar injunctive order, and issues this order allowing: (1) payment of Defense Costs under National Union's Executive and Organization Liability Insurance Policy No. 00-245-05-68 (the "National Union Policy") otherwise due and payable under the terms and conditions thereof in response to the claim asserted by the Federal Deposit Insurance Corporation ("FDIC") against the insured directors and officers of First Federal Bank of California, FSB, to wit:  Babette E. Heimbuch, James P. Giraldin, Gisselle Acevedo, Brian E. Argrett, Nicholas C. Biase, Jesse Casso, Jr., Christopher M. Harding, William G. Ouchi, William P. Rutledge, Steven L. Soboroff, Douglas J. Goddard, David Anderson, Shannon Millard, Darin J. Nishimura, Carol Baxter, Addie Stalk, Vikas Arora, and other insureds who may be subsequently identified by the FDIC; and (2) relief from the automatic stay, and any similar injunction, in order to confirm that National Union may pay such Policy benefits and Defense Costs that may be due and payable under the National Union Policy for the defense of its insureds.

7

**CONTINUATION PAGE FOR PAGE 6, PARAGRAPH 5.d.**

**(Continuing Declaration of Herbert P. Kunowski for Other Facts Justifying Relief).**

    5.d.    A true and correct copy of the subject National Union Policy from National Union's files is attached hereto as Exhibit A.  In addition, I have reviewed and assisted in the preparation of the attached memorandum of points and authorities in support of National Union's motion for relief from stay which, to the best of my knowledge and belief, accurately and truthfully reflects the facts justifying the relief requested herein.

8

1004408.1

# TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY OF FACTS AND ARGUMENT ............................ 9

   A. INTRODUCTION AND SUMMARY OF FACTS ............................................. 9

      1. Background ................................................................................................. 9

      2. Petition ..................................................................................................... 10

      3. The National Union Policy ...................................................................... 10

   B. SUMMARY OF ARGUMENT ......................................................................... 11

II. THE STAY SHOULD NOT APPLY TO LIABILITY COVERAGE UNDER THE
    NATIONAL UNION POLICY............................................................................... 12

III. EVEN IF THE STAY APPLIES, "CAUSE" EXISTS TO GRANT RELIEF BECAUSE
    THE DEBTOR HAS NO COMPETING INTEREST IN THE INSURANCE
    PROCEEDS ............................................................................................................ 14

IV. EVEN ASSUMING THE DEBTOR HAS A THEORETICAL INTEREST IN THE
    PROCEEDS OF THE NATIONAL UNION POLICY, "CAUSE" EXISTS FOR
    LIFTING THE STAY .......................................................................................... 17

V. CONCLUSION ......................................................................................................... 19

# **TABLE OF AUTHORITIES**

## Cases

*Duval v. Gleason*, 1990 U.S. Dist. LEXIS 18398 (N.D. Cal. 1990)........................................ 13, 14

*In re Adelphia Comm. Corp.*, 285 B.R. 580, 596-98 (S.D.N.Y. 2002) .................................. 17, 18

*In re Albany Partners, Ltd.*, 749 F.2d 670, 673 (11th Cir. 1984) ................................................ 15

*In re Allied Digital Technologies Corp.*, 306 B.R. 505 (D. Del. 2004)................................... 14, 16

*In re Daisy Systems Securities Litigation*, 132 B.R. 752 (N.D. Cal. 1991) ................................. 13

*In re First Central Financial Corp.*, 238 B.R. 9, 16 (E.D.N.Y. 1999)........................................ 17, 18

*In re Louisiana World Exposition, Inc.*, 832 F.2d 1391, 1399 (5th Cir. 1987).......................... 13

*In re Opelika Manufacturing Corp.*, 66 B.R. 444, 449 (N.D. Ill. 1986)..................................... 16

*In re Pintlar Corp.*, 124 F.3d 1310 (9th Cir. 1997) .................................................................. 13

*In re Spaulding Composites Co., Inc.*, 207 B.R. 899, 907 (B.A.P. 9th Cir. 1997) ...................... 13

*In re Sun Valley Ranches, Inc.*, 823 F.2d 1373, 1376 (9th Cir. 1987)......................................... 15

*In re Technical Equities Corp.*, 163 B.R. 350 (N.D. Cal. 1993) ................................................. 13

*In re Turner*, 161 B.R. 1, 3 (D. Me. 1993)................................................................................ 15

*In re Universal Life Church, Inc.*, 127 B.R. 453, 455 (E.D. Cal. 1991), *aff'd,* 965 F.2d 777

   (9th Cir. 1992)................................................................................................................. 15

## Statutes

11 U.S.C. § 362(a) ................................................................................................................. 12

11 U.S.C. § 362(d) ....................................................................................................... 14, 15, 16

11 U.S.C. § 1107(a) ............................................................................................................... 10

## Legislative History

124 Cong. Rec. H 11,092-3, September 28, 1978; S 17,409, October 6, 1978   (reprinted in

   Collier on Bankruptcy, Appendix, Volume 3)....................................................................... 15

1                  **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.      INTRODUCTION AND SUMMARY OF FACTS AND ARGUMENT**

3            **A.      INTRODUCTION AND SUMMARY OF FACTS**

4                    **1.    Background**

5            Movant, National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union")

6    previously sought and was granted relief from the automatic stay to allow payment of reasonable

7    and necessary attorneys' fees and costs ("Defense Costs") from its Executive and Organization

8    Liability Insurance Policy No. 00-245-05-68 ("National Union Policy") in the defense of the

9    claim of the Office of Thrift Supervision against its insured directors of First Federal Bank of

10   California, FSB ("Bank"), a wholly-owned subsidiary of the Debtor, FirstFed Financial Corp.

11   ("Debtor"). (See National Union's Motion filed August 13, 2010, Docket #72, and Order thereon

12   entered October 27, 2010, Docket #101).    The Bank was closed by the Office of Thrift

13   Supervision ("OTS"), an agency of the U.S. Department of the Treasury, which appointed the

14   Federal Deposit Insurance Corporation ("FDIC") as receiver of the Bank on December 18, 2009.

15   National Union now moves for similar relief in requesting this Court to grant it relief from the

16   automatic stay to allow payment of Defense Costs from the National Union Policy in the defense

17   of the claim of the FDIC against the Bank's directors and officers.

18           By letter dated September 2, 2010, the FDIC gave National Union notice that it was

19   seeking civil damages against the Bank's directors and officers for alleged failures in

20   management and unsafe and unsound practices resulting in alleged losses to the FDIC as the

21   Bank's receiver.  Those insureds requested and National Union consented to the retention of the

22   law firm of Latham & Watkins LLP to defend National Union's insureds against the claim of the

23   FDIC.

24           Because the directors and officers of the Bank are considered insureds under the National

25   Union Policy, which provides coverage for the defense of the FDIC's claim, relief from the

26   automatic stay, and any similar injunctive order, is sought because the National Union Policy

27   may be considered an asset of the Debtor's estate, although the proceeds of such policies may not

28   be considered an asset of the estate.

1   National Union therefore seeks an order allowing payment of Defense Costs from the

2   National Union Policy for the claim of the FDIC against the directors and officers of the Bank,

3   who are insureds under the National Union Policy, and relief from the automatic stay and any

4   other similar injunction, in order to confirm that National Union may pay such Policy benefits

5   and Defense Costs that may be due under the National Union Policy.

6   **2.   Petition**

7   On January 6, 2010, the Debtor filed its voluntary petition for relief under Chapter 11 of

8   the Bankruptcy Code.   National Union understands that the Debtor continues to operate its

9   business as a debtor-in-possession pursuant to Section 1107(a) of the Bankruptcy Code.

10   **3.   The National Union Policy**

11   National Union Fire Insurance Company of Pittsburgh, Pa. issued its Executive and

12   Organization Liability Insurance Policy No. 00-245-05-68 ("National Union Policy") to FirstFed

13   Financial Corp. on a "claims first made and reported" basis for the Policy Period of October 22,

14   2008 to October 22, 2009, with an Aggregate Limit of Liability of $5 million, subject to a

15   Retention of $1 million for Indemnifiable Securities Claims and $250,000 for all other Claims.

16   However, no Retention applies to Crisis Loss or to Non-Indemnifiable Loss.   The Aggregate

17   Limit of Liability is inclusive of Defense Costs, which are defined as "reasonable and necessary

18   fees, costs and expenses consented to by the Insurer" under Clause 2 of the National Union

19   Policy.   "Insured" is defined therein to include the Organization (i.e., the Debtor and its wholly-

20   owned subsidiary, the Bank), as well as an Insured Person, which include past, present or future

21   directors, officers and employees of the Organization.   A copy of the National Union Policy is

22   attached hereto as Exhibit A.

23   The National Union Policy provides coverage to directors of the Bank for Loss, including

24   Defense Costs. The National Union Policy states, in part:  "This policy shall pay the Loss of any

25   Insured Person arising from a Claim made against such Insured Person for any Wrongful Act of

26   such Insured Person, except when and to the extent that an Organization has indemnified such

27   Insured Person."   (See National Union Policy, Clause 1, Insuring Agreements (Coverage A:

28   Executive Liability Insurance), attached as Exhibit A).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NATIONAL UNION'S MOTION FOR RELIEF FROM STAY
1004411.1

1    Clause 8 of the National Union Policy provides, in part: "Under Coverage[] A ... of this

2    policy, except as hereinafter stated, the Insurer shall advance, excess of any applicable retention

3    amount, covered Defense Costs no later than ninety (90) days after the receipt by the Insurer of

4    such defense bills." (See National Union Policy, Clause 8, attached as Exhibit A).

5    Furthermore, the National Union Policy provides that, in case of the bankruptcy or

6    insolvency of the Organization or any Insured Person, the Insurer shall not be relieved of any of

7    its obligations.  In that regard, the National Union Policy states: "Bankruptcy or insolvency of

8    any Organization or any Insured Person shall not relieve the Insurer of any of its obligations

9    hereunder." (See National Union Policy, Clause 19, attached as Exhibit A).

10    In addition, the National Union Policy states that the coverage provided is intended to

11    protect and benefit the Insured Persons, and that as to any covered claim, the Insureds (here

12    including the Debtor) agree to "(a) waive and release any automatic stay or injunction to the

13    extent it may apply in such proceeding to the proceeds of this policy under such Bankruptcy

14    Law; and (b) agree not to oppose or object to any efforts by the Insurer or any Insured to obtain

15    relief from any stay or injunction applicable to the proceeds of this policy as a result of the

16    commencement of such liquidation or reorganization proceeding." (See National Union Policy,

17    Clause 19, attached as Exhibit A).

18    **B.    SUMMARY OF ARGUMENT**

19    Good cause exists for the relief requested herein, as the National Union Policy should not

20    be considered property of the Debtor's bankruptcy estate.  Case law is clear that while a liability

21    policy may be an asset of the estate to the extent it can be deemed an asset of the estate or the

22    estate of liquidating trusts, the proceeds of directors and officers liability coverage under the

23    present circumstances are available to the insured directors and officers and do not belong to the

24    corporate debtor or its creditors.

25    And even if policy proceeds are considered property of a debtor's estate, good cause

26    exists for the Court to lift the automatic stay in order to permit the directors to obtain the benefit

27    of the insurance proceeds and provide for their defense.  The National Union Policy provides

28    specified coverage to directors, officers, and employees of the Bank arising from claims made

11

1   against them, and reported pursuant to Policy terms. Other than the claim of the OTS against the

2   Bank's directors and the claim of the FDIC against the Bank's directors and officers, no other

3   claims under the National Union Policy are currently known to National Union. Thus, neither

4   the Debtor, nor any of its subsidiaries, nor any creditors, has any competing claims to the

5   National Union Policy.

6        Furthermore, the directors and officers of the Bank accepted their respective positions

7   subject to, and based on their understanding that, the proceeds of the National Union Policy

8   would be available to them if claims were made against them in their capacity as directors and

9   officers of the Bank. These individuals could be unduly prejudiced if they had to fund their own

10  defense without the use of the Policy proceeds. Imposing a stay on the National Union Policy

11  proceeds would inflict undue harm on the directors and officers, who could be left to face

12  liability for attorneys' fees incurred on their behalf without the benefit of funds. Because there

13  are no known competing claims to the National Union Policy proceeds by the Debtor, its

14  subsidiaries, or creditors; because the directors and officers could be unduly prejudiced if they

15  could not use the proceeds of the Policy that they expected would be available to them; because

16  the Debtor and creditors will be protected and benefited by the requested relief by the Debtor not

17  being asked to fund the defense of the directors and officers, good cause exists for this Court to

18  grant the requested relief on behalf of all of the directors and officers insured under the National

19  Union Policy.

20       Moreover, even if the Debtor could establish a theoretical claim to the insurance

21  proceeds, the Court should still grant relief from the automatic stay to allow National Union to

22  pay for Defense Costs under its Policy because the directors and officers of the Bank accepted

23  their respective positions in reliance on the availability of those proceeds in the event of a claim

24  made against them in their capacities as such.

25  **II.    THE STAY SHOULD NOT APPLY TO LIABILITY COVERAGE UNDER THE**

26  **NATIONAL UNION POLICY**

27       The automatic stay of Section 362, effective upon the filing of a petition under the

28  Bankruptcy Code, enjoins, inter alia, "any act to obtain possession of property of the estate ... or

1   to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).  Numerous authorities

2   have analyzed the applicability of this stay provision to different types of insurance policies and

3   proceeds.  As discussed below, one strong, clear line of authority has emerged:  The proceeds of

4   directors and officers liability coverage, especially under the present circumstances, are available

5   to the insured directors and officers - and do not belong to the corporate debtor or its creditors.

6          This was the Ninth Circuit's conclusion in *In re Pintlar Corporation,* 124 F.3d 1310 (9th

7   Cir. 1997).  In *Pintlar,* the debtor sought to enjoin a declaratory relief action brought by the

8   D&O carrier against the debtor's directors and officers challenging the scope of liability

9   coverage. *Id.* at 1312.  The circuit court reversed the injunction granted by the district court,

10  observing that only the "liability" portion of the coverage was threatened. *Id.* at 1313.  The court

11  held that "the liability portion of the directors and officers coverage" in the declaratory relief

12  action was not property of the estate subject to the automatic stay. *Id.* at 1313-14; *see, also, In re*

13  *Spaulding Composites Co.,* Inc., 207 B.R. 899, 907 (B.A.P. 9th Cir. 1997) (proceeds of policy

14  are not property of the debtor even if debtor is also an insured under the policy).

15         *Pintlar* is consistent with the well-established distinction drawn in the district court

16  between the D&O policy itself (which is property of the estate), and the directors' and officers'

17  liability proceeds.  For example, in *In re Daisy Systems Securities Litigation,* 132 B.R. 752 (N.D.

18  Cal. 1991), the court denied the motion of a Chapter 11 trustee to require a D&O carrier to

19  deposit the liability proceeds with the estate for safekeeping while creditors pursued claims

20  against the directors and officers. *Id.* at 755.  The court held that "the proceeds of the three

21  [D&O] policies in this case are not simply assets of Daisy's bankruptcy estate to be divided

22  among creditors according to bankruptcy law." *Id.*

23         Based on the same reasoning, the court in *In re Technical Equities Corporation,* 163 B.R.

24  350 (N.D. Cal. 1993), recognized that a debtor company could not purport to cancel directors

25  and officers liability coverage as part of a deal with the carrier, although (as here) "the [D&O]

26  Policy provided reimbursement of indemnification by the corporation of the individual officers

27  and directors ...." *Id.* at 353.  The court observed that the liability proceeds nonetheless "belong

28  directly to the officers and directors." *Id.*; *accord, Duval v. Gleason,* 1990 U.S. Dist. LEXIS

13

1  18398 (N.D. Cal. 1990); *see, also, In re Louisiana World Exposition, Inc.,* 832 F.2d 1391, 1399

2  (5th Cir. 1987) (affirming dismissal of an action to enjoin payment of D&O defense proceeds

3  because "LWE, the debtor, had no ownership interest whatever in the proceeds from the liability

4  coverage").

5        The corporate debtor's right to policy proceeds upon its own indemnification of the

6  directors and officers does not alter this principle.  As the *Duval* court explained, "the Ninth

7  Circuit and the courts of this District have failed to adopt the position that the automatic stay

8  applies as a matter of course to proceedings which may give rise to a potential claim for

9  indemnification under a debtor's insurance policy." *Duval, supra,* at *16.

10        In the case of *In re Allied Digital Technologies Corporation,* 306 B.R. 505 (D. Del.

11  2004), the court addressed the same issue presented here, in the context of a trustee's securities

12  action against certain directors and officers of a Chapter 7 corporate debtor.  The debtor had

13  purchased a National Union directors and officers policy that contained language very similar to

14  the subject language here.  The court explained that "when the liability policy provides the

15  debtor with indemnification coverage but indemnification either has not occurred, is

16  hypothetical, or speculative, the proceeds are not property of the bankruptcy estate." *Id.* at 512.

17        In sum, the law is clear that liability insurance proceeds are not the property of a debtor's

18  bankruptcy estate, or the estate of an assignee, nor are the proceeds property of creditors.

19  Neither case authority, nor any language in the National Union Policy, stands in the way of this

20  Court's approval of National Union funding the Defense Costs of the Bank's directors and

21  officers in defending against the claim made against them by the FDIC.

22  **III.    EVEN IF THE STAY APPLIES, "CAUSE" EXISTS TO GRANT RELIEF**

23  **BECAUSE THE DEBTOR HAS NO COMPETING INTEREST IN THE INSURANCE**

24  **PROCEEDS**

25        Section 362(d) provides for relief from the automatic stay as follows: "(1) for cause,

26  including the lack of adequate protection of an interest in property of such party in interest; [or]

27  (2) with respect to a stay of an act against property ... if - (A) the debtor does not have an equity

28  in such property; and (B) such property is not necessary to an effective reorganization."

14

1    The language of Section 362(d) is mandatory: the court shall grant relief from the

2    automatic stay if either of the grounds set forth in subsection (1) or (2) have been met. *In re Sun*

3    *Valley Ranches, Inc.,* 823 F.2d 1373, 1376 (9th Cir. 1987); *In re Albany Partners, Ltd.,* 749 F.2d

4    670, 673 (11th Cir. 1984) (holding that once the basis for relief under Section 362(d)(2) is

5    shown, the court need not consider whether relief is justified under Section 362(d)(1)). The

6    legislative history of this statute further supports that interpretation of the Code: "Under Section

7    362(d)(1) of the House Amendment, the court may terminate, annul, modify, or condition the

8    automatic stay for cause, including lack of adequate protection of an interest in property of a

9    secured party. Under Section 362(d)(2) the court may alternatively terminate, annul, modify, or

10    condition the automatic stay for cause including inadequate protection of the creditor. The court

11    shall grant relief from the automatic stay if there is no equity and it is not necessary to an

12    effective reorganization of the debtor." 124 Cong. Rec. H 11,092-3, September 28, 1978; S

13    17,409, October 6, 1978 (reprinted in Collier on Bankruptcy, Appendix, Volume 3).

14    The National Union Policy provides specified coverage to directors, officers and

15    employees of the Debtor and its subsidiary, the Bank. There is good cause to lift the automatic

16    stay, and any similar injunctive order, with regard to the defense of the directors and officers of

17    the Bank because the Debtor does not have equity in such property, and such property is not

18    necessary to an effective reorganization.

19    Additionally, there is cause to lift the automatic stay within the meaning of Section

20    362(d)(1) because the stay harms interested parties to this motion, while lifting it will not unduly

21    harm the Debtor or its estate. Under clause (1), "cause" for lifting the stay is not limited to lack

22    of adequate protection in particular collateral. *In re Turner,* 161 B.R. 1, 3 (D. Me. 1993). Rather,

23    the court should determine cause for granting relief on a case-by-case basis, considering the

24    particular circumstances. *In re Universal Life Church, Inc.,* 127 B.R. 453, 455 (E.D. Cal. 1991),

25    *aff'd,* 965 F.2d 777 (9th Cir. 1992). Thus, there is "cause" to lift the stay when the stay harms an

26    interested party, e.g., a creditor, but lifting it will not unduly harm the debtor or its estate: "In

27    determining whether or not cause exists, the bankruptcy court must balance the inherent

28    hardships on all parties and base its decision on the degree of hardship and the overall goals of

1    the Bankruptcy Code." *In re Opelika Manufacturing Corp.*, 66 B.R. 444, 449 (N.D. Ill. 1986);

2    *see, also, Turner, supra,* 161 B.R. at 3.

3           Here, the requested relief from the automatic stay would not impact any competing

4    claims to the insurance proceeds by the Debtor, and the directors and officers of the Bank would

5    be unduly prejudiced if they had to fund their defense without the use of the insurance proceeds.

6    These insureds accepted their respective positions subject to, and based on their understanding

7    that, the insurance proceeds would be available to them if claims were made against them in their

8    capacity as directors and officers of the Bank.  As noted in *In re Allied Digital Technologies,*

9    *supra,* where there is no evidence that direct coverage of the debtor will be necessary, it is

10   appropriate for a court to grant relief from stay to allow an insurer to pay the defense or

11   settlement costs of directors and officers: "It is not uncommon for courts to grant stay relief to

12   allow payment of defense costs or settlement costs to directors and officers, especially when

13   there is no evidence that direct coverage of the debtor will be necessary." 306 B.R. at 513.

14          Furthermore, the requested relief will protect and benefit the Debtor as well as creditors.

15   If the directors and officers of the Bank are allowed to use the Policy proceeds to fund their

16   defense, the Debtor will not face a claim for indemnity from them.

17          Because the Debtor has no competing claims to the proceeds; because any potential

18   claims by the Bank's directors and officers for indemnity will be avoided by an order granting

19   the requested relief; because the Bank's directors and officers would be severely prejudiced if

20   they could not use the proceeds of the Policy that they expected would be available to them; and

21   because the Debtor as well as creditors will be protected and benefited by the requested relief,

22   good cause exists within the meaning of Section 362(d)(1) and (2) for this Court to grant

23   National Union the relief requested herein.

24   ///

25

26   ///

27

28

16

1  **IV.    EVEN ASSUMING THE DEBTOR HAS A THEORETICAL INTEREST IN THE**

2  **PROCEEDS OF THE NATIONAL UNION POLICY, "CAUSE" EXISTS FOR LIFTING**

3  **THE STAY**

4      To further illustrate the propriety of the requested relief, even in those cases (unlike this

5  one) where the entity insured has a theoretical claim to the insurance proceeds, courts will still

6  grant relief from the automatic stay to allow the insured directors and officers to utilize insurance

7  proceeds to pay or reimburse their reasonable litigation defense costs.  For instance, in *In re*

8  *Adelphia Communications Corporation,* 285 B.R. 580, 596 (S.D.N.Y. 2002), the court examined

9  the issue of whether "the Court should interfere with the expectations of insureds under D&O

10  policies to receive their direct entitlements under D&O policies to defense costs and payments on

11  account of liability, when a bankruptcy estate, by reason of indemnity coverage or entity

12  coverage, has a competing claim to it."

13      The court considered several opinions, noting that in each of those cases, "the estate had

14  at least theoretical claims on the policies: for indemnification, entity coverage, or both." *Id.* at

15  597. The *Adelphia* court went on to observe: "But in all but one of those cases, notwithstanding

16  claims by the estate on the policies in parallel with director and officer insureds, the court did not

17  permit the estate's claims to block the director and officer insured's effort to secure policy

18  proceeds for defense costs - and in the one remaining case it did not do so wholly." *Id.*

19      The *Adelphia* court cited *In re First Central Financial Corporation,* 238 B.R. 9

20  (E.D.N.Y. 1999), for the proposition that the very nature of a D&O policy mandates that

21  insurance proceeds be made available to the insured officers and directors irrespective of any

22  concomitant right the corporate debtor may have to the proceeds upon its own indemnification of

23  the officers and directors:

24          D&O policies are obtained for the protection of individual directors
and officers.  Indemnification coverage does not change this

25          fundamental purpose.  There is an important distinction between the
individual liability and the reimbursement portions of a D&O policy.

26          The liability portion of the policy provides coverage directly to
officers and directors, insuring the individuals from personal loss for

27          claims that are not indemnified by the corporation.  Unlike an ordinary
liability insurance policy, in which a corporate purchaser obtains

28          primary protection from lawsuits, a corporation does not enjoy direct

17

1  coverage under a D&O policy. It is insured indirectly for its indemnification obligations. In essence and at its core, a D&O policy remains a safeguard of officer and director interests and not a vehicle for corporate protection.

*Adelphia Comm. Corp., supra,* 285 B.R. at 597, *quoting In re First Central Financial Corp., supra,* 238 B.R. at 16.

The *Adelphia* court acknowledged that the entity coverage at issue there was more significant than in other matters considered in the court's analysis wherein relief from stay was granted, in that the entity had not only a theoretical claim to the insurance proceeds, but might have an actual need for the entity coverage. Nevertheless, the court held that because a directors and officers liability policy was at its core a policy issued for the protection of the insured officers and directors, the individuals had an overriding interest that warranted an order granting relief from the automatic stay:

> In each of *First Central Financial* and *CyberMedica,* while the estate had entity coverage as well as indemnification coverage, there was no reasonable basis for a view that the estate would need its entity coverage, and in *Youngstown Osteopathic* there was indemnification coverage only, which likewise was not needed. In *Enron,* the indemnification and entity coverage was contractually subordinated to the defense costs coverage, making that an even easier case. Thus each of those cases was arguably distinguishable from these cases, or at least ACC's, where entity coverage may ultimately be more significant. Nevertheless, the Court believes that the observation made by the *First Central Financial* court, and endorsed in *Youngstown Osteopathic* and *CyberMedica,* that 'in essence and at its core, a D&O policy remains a safeguard of officer and director interests and not a vehicle for corporate protection,' is true - and that bankruptcy courts should be wary of impairing the contractual rights of directors and officers even in cases where the policies provide entity coverage as well. The Court believes that if directors and officers are to serve, they need to have comfort in knowing that bankruptcy courts will be slow in depriving them of contractual rights under the D&O policies upon which they may have relied in agreeing to serve.

*Adelphia Comm. Corp., supra,* 285 B.R. at 598.

Because courts have allowed directors and officers to access D&O insurance proceeds for defense costs even where a corporate debtor in bankruptcy has a theoretical or even an actual claim to the proceeds, this Court should allow National Union to fund the Defense Costs of all of

18

1    the Bank's directors and officers, as the Debtor has no direct interest in the proceeds of the

2    National Union Policy.

3    **V.    CONCLUSION**

4    For the reasons set forth above, National Union respectfully requests an order from this

5    Court allowing payment of Defense Costs for the directors and officers of the Bank in response

6    to the claim asserted by the FDIC, and relief from the automatic stay of the United States

7    Bankruptcy Code, 11 U.S.C. § 362, and any similar injunction, in order to confirm that National

8    Union may pay such Policy benefits and Defense Costs that may be due under the National

9    Union Policy for the defense of its insureds.

10

11                                                           Respectfully submitted,

12    Dated: December 13, 2010                     WILSON, ELSER, MOSKOWITZ,
                                                    EDELMAN & DICKER LLP

13

14

15    By:_____
                                                    Herbert P. Kunowski, Esq.
16                                                  D. Victoria LaBrie, Esq.
                                                    Attorneys for Movant,
17                                                  NATIONAL UNION FIRE
                                                    INSURANCE COMPANY
18                                                  OF PITTSBURGH, PA.

19

20

21

22

23

24

25

26

27

28

# AIG AIG EXECUTIVE LIABILITY SM

Insurance provided by the following member of American International Group, Inc.

## National Union Fire Insurance Company of Pittsburgh, Pa.®

A capital stock company

### EXECUTIVE AND ORGANIZATION LIABILITY INSURANCE POLICY

**NOTICE: COVERAGES A, B AND C ARE CLAIMS MADE. THE COVERAGE OF THIS POLICY IS GENERALLY LIMITED TO LIABILITY FOR CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS AND CRISIS FIRST OCCURRING DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. PLEASE READ THIS POLICY CAREFULLY AND REVIEW ITS COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

**NOTICE: AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL REDUCE THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS, AND SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.**

**NOTICE: THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND. THE INSURER MUST ADVANCE DEFENSE COSTS, EXCESS OF THE APPLICABLE RETENTION, PURSUANT TO THE TERMS HEREIN PRIOR TO THE FINAL DISPOSITION OF A CLAIM.**

**NOTICE: TERMS APPEARING IN BOLD FACE TYPE HAVE SPECIAL MEANING. SEE CLAUSE 2 OF THE POLICY.**

POLICY NUMBER: *00-245-05-68*      REPLACEMENT OF POLICY NUMBER: *00-242-08-64*

### DECLARATIONS

| ITEMS | | |
|---|---|---|
| 1 | **NAMED ENTITY:**  *FIRSTFED FINANCIAL CORP* (herein "Named Entity") | |
| 1(a) | **MAILING ADDRESS:**  *12555 W. Jefferson Blvd., Los Angeles, CA 90666* | |
| 1(b) | STATE OF INCORPORATION/FORMATION: *California* | |
| 2 | **POLICY PERIOD:** From: *October 22, 2008*   To: *October 22, 2009* 12:01 A.M. standard time at the address stated in Item 1(a) | |
| 3 | **POLICY AGGREGATE LIMIT OF LIABILITY** (herein "Limit of Liability") For all **Loss**, in the aggregate, under this policy including Defense Costs: | **$5,000,000** |
| 4 | **RETENTION:** Not applicable to **Non-Indemnifiable Loss** and certain Defense Costs - (See Clause 6 for details.) | |
| 4(a) | Securities Claims: *$1,000,000* | 4(b) **Employment Practices Claims:** *N/A* |
| 4(c) | All other Claims:   *$250,000* | |

*1083133*

 **EXHIBIT A**

| ITEMS (continued) | | | |
|---|---|---|---|
| 5 5(a) | CONTINUITY DATE (herein "Continuity Date") Coverages A and B, other than **Outside Entity Executive** coverage: *September 8, 1995* | 5(b) | **Outside Entity Executive** coverage, including Coverage C: The date on which the **Insured Person** first served as an **Outside Entity Executive** of such **Outside Entity.** |
| 5(c) | Coverage D: *October 8, 2005* | | |

**6**    PREMIUM: *$103,900*

    *Premium for Certified Acts of Terrorism Coverage under Terrorism Risk Insurance Act 2002: Not applicable, coverage rejected by insured. Any coverage provided for losses caused by an act of terrorism as defined by TRIA (TRIA Losses) may be partially reimbursed by the United States under a formula established by TRIA as follows: 85% of TRIA Losses in excess of the insurer deductible mandated by TRIA, the deductible to be based on a percentage of the insurer's direct earned premiums for the year preceding the act of terrorism.*
    *A copy of the TRIA disclosure sent with the original quote is attached hereto.*

| 7 7(a) | CRISISFUND[SM] limit: Crisis Loss: *$50,000* | 7(b) | Additional **CRISISFUND**[SM] for Delisting Crisis Loss: *$25,000* |
|---|---|---|---|

**8**    **NAME AND ADDRESS OF INSURER** (herein "Insurer"):
*National Union Fire Insurance Company of Pittsburgh, Pa.*
*175 Water Street*
*New York, NY 10038*

    This policy is issued only by the insurance company indicated in this Item 8.

*1083133*

.ICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE
### (APPLICABLE TO CERTIFIED AND NON- CERTIFIED ACTS)

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism, as defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury- in concurrence with the Secretary of State, and the Attorney General of the United States- to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

### COPY OF DISCLOSURE SENT WITH ORIGINAL QUOTE

Insured Name: *FIRSTFED FINANCIAL CORP*


Policy Number: *00-245-05-68*
Policy Period Effective Date From: *October 22, 2008*    To: *October 22, 2009*

22

**IN WITNESS WHEREOF**, the Insurer has caused this policy to be signed on the Declarations page by its President, a Secretary and a duly authorized representative of the Insurer.

_Elizabeth M. Tuck_
SECRETARY

_[signature]_
PRESIDENT

_[signature]_
AUTHORIZED REPRESENTATIVE

COUNTERSIGNATURE & DATE

COUNTERSIGNED AT

AON RISK SVCS, INC. OF SO. CA.
707 WILSHIRE BLVD, STE 6000
LOS ANGELES, CA 90017

1083133

23

75010 (2/00)

# AIG AIG EXECU..VE LIABILITY<sup>SM</sup>

Insurance provided by the following member of American International Group, Inc.

## EXECUTIVE AND ORGANIZATION LIABILITY INSURANCE POLICY

In consideration of the payment of the premium, and in reliance upon the **Application** and the statements therein, which form a part of this policy, the **Insurer** agrees as follows:

### 1. INSURING AGREEMENTS

With respect to Coverage A, B and C, solely with respect to **Claims** first made against an **Insured** during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy, and subject to the other terms, conditions and limitations of this policy, this policy affords the following coverage:

#### COVERAGE A: EXECUTIVE LIABILITY INSURANCE

This policy shall pay the **Loss** of any **Insured Person** arising from a **Claim** made against such **Insured Person** for any **Wrongful Act** of such **Insured Person**, except when and to the extent that an **Organization** has indemnified such **Insured Person**. Coverage A shall not apply to **Loss** arising from a **Claim** made against an **Outside Entity Executive**.

#### COVERAGE B: ORGANIZATION INSURANCE

(i) *Organization Liability*: This policy shall pay the **Loss** of any **Organization** arising from a **Securities Claim** made against such **Organization** for any **Wrongful Act** of such **Organization**.

(ii) *Indemnification of an Insured Person*: This policy shall pay the **Loss** of an **Organization** arising from a **Claim** made against an **Insured Person** (including an **Outside Entity Executive**) for any **Wrongful Act** of such **Insured Person**, but only to the extent that such **Organization** has indemnified such **Insured Person**.

#### COVERAGE C: OUTSIDE ENTITY EXECUTIVE LIABILITY INSURANCE

This policy shall pay the **Loss** of any **Outside Entity Executive** arising from a **Claim** made against such **Outside Entity Executive** for any **Wrongful Act** of such **Outside Entity Executive** but only excess of any indemnification provided by an **Outside Entity** and any insurance coverage afforded to an **Outside Entity** or its **Executives** applicable to such **Claim**, except when and to the extent that an **Organization** has indemnified such **Outside Entity Executive**.

#### COVERAGE D: CRISISFUND<sup>SM</sup> INSURANCE

This policy shall pay the **Crisis Loss** (including **Delisting Crisis Loss**) of an **Organization** solely with respect to a **Crisis** (including a **Delisting Crisis**) occurring during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy, up to the amount of the respective **CrisisFund**<sup>SM</sup>, from first dollar; provided that payment of any **Crisis Loss** under this policy shall not waive any of the **Insurer's** rights under this policy or at law. This Coverage D shall apply regardless of whether a **Claim** is ever made against an **Insured** arising from such **Crisis** and, in the case where a **Claim** is made, regardless of whether the amount is incurred prior to or subsequent to the making of the **Claim**.

### 2. DEFINITIONS

(a) "**Application**" means each and every signed application, any attachments to such applications, other materials submitted therewith or incorporated therein and any other documents submitted in connection with the underwriting of this policy or the underwriting of any other directors and officers (or equivalent) liability policy issued by

the **Insurer**, or any of its affiliates, of which this policy is a renewal, replacement or which it succeeds in time, and any public documents filed by an **Organization** with any federal, state, local or foreign regulatory agency (including but not limited to the Securities and Exchange Commission (SEC)).

(b) **"Claim"** means:

    (1) a written demand for monetary, non-monetary or injunctive relief;

    (2) a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief which is commenced by: (i) service of a complaint or similar pleading; (ii) return of an indictment, information or similar document (in the case of a criminal proceeding); or (iii) receipt or filing of a notice of charges; or

    (3) a civil, criminal, administrative or regulatory investigation of an **Insured Person**:

        (i) once such **Insured Person** is identified in writing by such investigating authority as a person against whom a proceeding described in Definition (b)(2) may be commenced; or

        (ii) in the case of an investigation by the SEC or a similar state or foreign government authority, after the service of a subpoena upon such **Insured Person**.

The term "Claim" shall include any **Securities Claim** and any **Employment Practices Claim**.

(c) **"Crisis"** has the meaning as defined in Appendix B attached to this policy.

(d) **"CrisisFund** $^{SM}$ **"** means:

    (1) in the case of all **Crisis Loss**, other than **Delisting Crisis Loss**, the dollar amount set forth in Item 7(a) of the Declarations; and

    (2) in the case of **Delisting Crisis Loss** the dollar amount set forth in Item 7(a) of the Declarations plus the additional dollar amount set forth in Item 7(b) of the Declarations, combined.

(e) **"Crisis Loss"** has the meaning as defined in Appendix B attached to this policy. **"Delisting Crisis Loss"** means a **Crisis Loss** resulting solely from a **Delisting Crisis** (as defined in Appendix B).

(f) **"Defense Costs"** means reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and/or appeal of a **Claim** against an **Insured**, but excluding any compensation of any **Insured Person** or any **Employee** of an **Organization**.

(g) **"Employee"** means any past, present or future employee, other than an **Executive** of an **Organization**, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any full-time, part-time, seasonal and temporary employee.

(h) **"Employment Practices Claim"** means a **Claim** alleging any **Employment Practices Violation**.

(i) **"Employment Practices Violation"** means any actual or alleged:

25

(1) wrongful dismissal, discharge or termination, either actual or constructive, of employment;

(2) harassment (including but not limited to sexual harassment);

(3) discrimination;

(4) retaliation;

(5) employment-related misrepresentation;

(6) employment-related libel, slander, humiliation, defamation or invasion of privacy;

(7) wrongful failure to employ or promote;

(8) wrongful deprivation of career opportunity, wrongful demotion or negligent **Employee** evaluation;

(9) wrongful discipline

(10) failure to grant tenure; or

(11) with respect to any of the foregoing items (1) through (10) of this definition: negligent hiring, retention, training or supervision, infliction of emotional distress, failure to provide or enforce adequate or consistent corporate policies and procedures, or violation of an individual's civil rights,

but only if such act, error or omission relates to an **Executive** of, an **Employee** of or an applicant for employment with an **Organization** or an **Outside Entity**, whether committed directly, indirectly, intentionally or unintentionally. In addition, with respect to any natural person customer or client, "**Employment Practices Violation**" shall mean only actual or alleged discrimination, sexual harassment or violation of an individual's civil rights relating to such discrimination or sexual harassment, whether committed directly, indirectly, intentionally or unintentionally.

(j) "**Executive**" means any:

(1) past, present and future duly elected or appointed director, officer, trustee or governor of a corporation, management committee member of a joint venture and member of the management board of a limited liability company (or equivalent position);

(2) past, present and future person in a duly elected or appointed position in an entity organized and operated in a **Foreign Jurisdiction** that is equivalent to an executive position listed in Definition (j)(1); or

(3) past, present and future General Counsel and Risk Manager (or equivalent position) of the **Named Entity**.

(k) "**Foreign Jurisdiction**" means any jurisdiction, other than the United States or any of its territories or possessions.

(l) "**Foreign Policy**" means the **Insurer's** or any other company of American International Group, Inc.'s (AIG) standard executive managerial liability policy (including all mandatory endorsements, if any) approved by AIG to be sold within a **Foreign Jurisdiction** that provides coverage substantially similar to the coverage afforded under this policy. If more than one such policy exists, then "**Foreign Policy**" means the standard policy most recently registered in the local language of the **Foreign Jurisdiction**, or if no such policy has been registered, then the policy most recently registered in that **Foreign Jurisdiction**. The term "**Foreign Policy**" shall not include any partnership managerial, pension trust or professional liability coverage.

(m) "**Indemnifiable Loss**" means **Loss** for which an **Organization** has indemnified or is permitted or required to indemnify an **Insured Person** pursuant to law or contract or the charter, bylaws, operating agreement or similar documents of an **Organization**.

(n) "Insured" means any:

    (1) **Insured Person**; or

    (2) **Organization**, but only with respect to a **Securities Claim**.

(o) "Insured Person" means any:

    (1) **Executive** of an **Organization**;

    (2) **Employee** of an **Organization**; or

    (3) **Outside Entity Executive**;

(p) "Loss" means damages, settlements, judgments (including pre/post-judgment interest on a covered judgment), **Defense Costs** and **Crisis Loss**; however, "**Loss**" (other than **Defense Costs**) shall not include: (1) civil or criminal fines or penalties; (2) taxes; (3) punitive or exemplary damages; (4) the multiplied portion of multiplied damages; (5) any amounts for which an **Insured** is not financially liable or which are without legal recourse to an **Insured**; and (6) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

Notwithstanding the foregoing paragraph, **Loss** shall specifically include (subject to this policy's other terms, conditions and limitations, including but not limited to exclusions relating to profit or advantage, deliberate fraud or deliberate criminal acts): (1) civil penalties assessed against any **Insured Person** pursuant to Section 2(g) (2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-2(g)(2)(B); and (2) solely with respect to **Securities Claims**, punitive, exemplary and multiplied damages. Enforceability of this paragraph shall be governed by such applicable law that most favors coverage for such penalties and punitive, exemplary and multiple damages.

In the event of a **Claim** alleging that the price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all the ownership interest in or assets of an entity is inadequate, **Loss** with respect to such **Claim** shall not include any amount of any judgment or settlement representing the amount by which such price or consideration is effectively increased; provided, however, that this paragraph shall not apply to **Defense Costs** or to any **Non-Indemnifiable Loss** in connection therewith.

(q) "Management Control" means: (1) owning interests representing more than 50% of the voting, appointment or designation power for the selection of a majority of: the Board of Directors of a corporation; the management committee members of a joint venture; or the members of the management board of a limited liability company; or (2) having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of an **Organization**, to elect, appoint or designate a majority of: the Board of Directors of a corporation; the management committee of a joint venture; or the management board of a limited liability company.

(r) "No Liability" means a final judgment of no liability obtained: (1) prior to trial, in favor of each and every **Insured** named in the **Claim**, by reason of a motion to dismiss or a motion for summary judgment, after the exhaustion of all appeals; or (2) after trial and after the exhaustion of all appeals, in favor of each and every **Insured** named in the **Claim**. In no event shall the term "**No Liability**" apply to a **Claim** made against an **Insured** for which a settlement has occurred.

(s) "Non-Indemnifiable Loss" means **Loss** for which an **Organization** has neither indemnified nor is permitted or required to indemnify an **Insured Person** pursuant to law or contract or the charter, bylaws, operating agreement or similar documents of an **Organization**.

27

(t) "Organization" means:

    (1) the Named Entity;

    (2) each Subsidiary; and

    (3) in the event a bankruptcy proceeding shall be instituted by or against the foregoing entities, the resulting debtor-in-possession (or equivalent status outside the United States), if any.

(u) "Outside Entity" means any: (1) not-for-profit entity; or (2) other entity listed as an "Outside Entity" in an endorsement attached to this policy.

(v) "Outside Entity Executive" means any: (1) Executive of an Organization who is or was acting at the specific written request or direction of an Organization as an Executive of an Outside Entity; or (2) any other person listed as an Outside Entity Executive in an endorsement attached to this policy.

(w) "Policy Period" means the period of time from the inception date shown in Item 2 of the Declarations to the earlier of the expiration date shown in such Item 2 or the effective date of cancellation of this policy.

(x) "Pollutants" means, but is not limited to, any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and Waste. "Waste" includes, but is not limited to, materials to be recycled, reconditioned or reclaimed.

(y) "Securities Claim" means a Claim, other than an administrative or regulatory proceeding against, or investigation of an Organization, made against any Insured:

    (1) alleging a violation of any federal, state, local or foreign regulation, rule or statute regulating securities (including but not limited to the purchase or sale or offer or solicitation of an offer to purchase or sell securities) which is:

        (a) brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale or offer or solicitation of an offer to purchase or sell any securities of an Organization; or

        (b) brought by a security holder of an Organization with respect to such security holder's interest in securities of such Organization; or

    (2) brought derivatively on the behalf of an Organization by a security holder of such Organization.

Notwithstanding the foregoing, the term "Securities Claim" shall include an administrative or regulatory proceeding against an Organization, but only if and only during the time that such proceeding is also commenced and continuously maintained against an Insured Person.

(z) "Subsidiary" means: (1) any for-profit entity that is not formed as a partnership of which the Named Entity has Management Control ("Controlled Entity") on or before the inception of the Policy Period either directly or indirectly through one or more other Controlled Entities; and (2) any not-for-profit entity under section 501(c)(3) of the Internal Revenue Code of 1986 (as amended) sponsored exclusively by an Organization.

(aa) "Wrongful Act" means:

    (1) any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act or any actual or alleged Employment Practices Violation:

*28*

(i) with respect to any **Executive** of an **Organization**, by such **Executive** in his or her capacity as such or any matter claimed against such **Executive** solely by reason of his or her status as such;

(ii) with respect to any **Employee** of an **Organization**, by such **Employee** in his or her capacity as such, but solely in regard to any: (a) **Securities Claim**; or (b) other **Claim** so long as such other **Claim** is also made and continuously maintained against an **Executive** of an **Organization**; or

(iii) with respect to any **Outside Entity Executive**, by such **Outside Entity Executive** in his or her capacity as such or any matter claimed against such **Outside Entity Executive** solely by reason of his or her status as such; or

(2) with respect to an **Organization**, any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by such **Organization**, but solely in regard to a **Securities Claim**.

## 3. WORLDWIDE EXTENSION

Where legally permissible, this policy shall apply to any **Claim** made against any **Insured** anywhere in the world.

In regard to **Claims** brought and maintained solely in a **Foreign Jurisdiction** against an **Organization** formed and operating in such **Foreign Jurisdiction** or an **Insured Person** thereof for **Wrongful Acts** committed in such **Foreign Jurisdiction**, the **Insurer** shall apply to such **Claim(s)** those terms and conditions (and related provisions) of the **Foreign Policy** registered with the appropriate regulatory body in such **Foreign Jurisdiction** that are more favorable to such **Insured** than the terms and conditions of this policy. However, this paragraph shall apply only to Clauses 1-4, 9-13, 15, 16, 18, 20 and 21 of this policy and the comparable provisions of the **Foreign Policy**. In addition, this paragraph shall not apply to the non-renewal or claims made and reported provisions of any policy.

All premiums, limits, retentions, **Loss** and other amounts under this Policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or other elements of **Loss** are stated or incurred in a currency other than United States of America dollars, payment of covered **Loss** due under this policy (subject to the terms, conditions and limitations of this policy) will be made either in such other currency (at the option of the **Insurer** and if agreeable to the **Named Entity**) or, in United States of America dollars, at the rate of exchange published in The Wall Street Journal on the date the Insurer's obligation to pay such **Loss** is established (or if not published on such date the next publication date of The Wall Street Journal).

## 4. EXCLUSIONS

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured**:

(a) arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which the **Insured** was not legally entitled;

(b) arising out of, based upon or attributable to payments to an **Insured** of any remuneration without the previous approval of the stockholders or members of an **Organization**, which payment without such previous approval shall be held to have been illegal;

(c) arising out of, based upon or attributable to the committing in fact of any deliberate criminal or deliberate fraudulent act by the **Insured**;

29

(d) alleging, arising out of, based upon or attributable to the facts alleged, or to the same or related **Wrongful Acts** alleged or contained in any **Claim** which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

(e) alleging, arising out of, based upon or attributable to, as of the **Continuity Date**, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation of which an **Insured** had notice, or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

(f) with respect to any **Outside Entity Executive**, for any **Wrongful Act** occurring prior to the **Continuity Date** if any **Insured**, as of such **Continuity Date**, knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim** under this policy;

(g) alleging, arising out of, based upon or attributable to any actual or alleged act or omission of an **Insured Person** serving in his or her capacity as an **Executive** or an **Employee** of any entity that is not an **Organization** or an **Outside Entity**, or by reason of his or her status as an **Executive** or an **Employee** of such other entity;

(h) for bodily injury (other than emotional distress or mental anguish), sickness, disease, or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof;

(i) which is brought by or on behalf of an **Organization** or any **Insured Person**, other than an **Employee** of an **Organization**; or which is brought by any security holder or member of an **Organization**, whether directly or derivatively, unless such security holder's or member's **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any **Executive** of an **Organization** or any **Organization**; provided, however, this exclusion shall not apply to:

(1) any **Claim** brought by an **Insured Person** in the form of a cross-claim or third-party claim for contribution or indemnity which is part of, and results directly from, a **Claim** that is covered by this policy;

(2) any **Employment Practices Claim** brought by an **Insured Person**, other than an **Insured Person** who is or was a member of the Board of Directors (or equivalent governing body) of an **Organization**;

(3) in any bankruptcy proceeding by or against an **Organization**, any **Claim** brought by the examiner, trustee, receiver, liquidator or rehabilitator (or any assignee thereof) of such **Organization**, if any;

(4) any **Claim** brought by any past **Executive** of an **Organization** who has not served as a duly elected or appointed director, officer, trustee, governor, management committee member, member of the management board, General Counsel or Risk Manager (or equivalent position) of or consultant for an **Organization** for at least four (4) years prior to such **Claim** being first made against any person; or

(5) any **Claim** brought by an **Executive** of an **Organization** formed and operating in a **Foreign Jurisdiction** against such **Organization** or any **Executive** thereof, provided that such **Claim** is brought and maintained outside the United States, Canada or any other common law country (including any territories thereof);

(j) for any **Wrongful Act** arising out of the **Insured Person** serving as an **Executive** of an **Outside Entity** if such **Claim** is brought by the **Outside Entity** or by any **Executive** thereof; or which is brought by any security holder of the **Outside Entity**, whether

directly or derivatively, unless such security holder's **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of the **Outside Entity**, any **Executive** of the **Outside Entity** or an **Organization** or any **Executive** of an **Organization**;

(k) alleging, arising out of, based upon or attributable to, directly or indirectly: (i) the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants**; or (ii) any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, (including but not limited to a **Claim** alleging damage to an **Organization** or its securities holders); provided, however, that this exclusion shall not apply to **Non-Indemnifiable Loss**, other than **Non-Indemnifiable Loss** constituting **Cleanup Costs**;

"**Cleanup Costs**" means expenses (including but not limited to legal and professional fees) incurred in testing for, monitoring, cleaning up, removing, containing, treating, neutralizing, detoxifying or assessing the effects of **Pollutants**.

(l) for emotional distress of any person, or for injury from libel, slander, defamation or disparagement, or for injury from a violation of a person's right of privacy; provided, however, this exclusion shall not apply to an **Employment Practices Claim**; and

(m) for violation(s) of any of the responsibilities, obligations or duties imposed upon fiduciaries by the Employee Retirement Income Security Act of 1974 or amendments thereto, or any similar provisions of any state, local or foreign statutory or common law.

For the purpose of determining the applicability of the foregoing Exclusions 4(a) through 4(c) and Exclusion 4(f): (1) the facts pertaining to and knowledge possessed by any **Insured** shall not be imputed to any other **Insured Person**; and (2) only facts pertaining to and knowledge possessed by any past, present or future chairman of the board, president, chief executive officer, chief operating officer, chief financial officer or General Counsel (or equivalent position) of an **Organization** shall be imputed to an **Organization**.

This Clause 4, Exclusions, shall not be applicable to **Crisis Loss**.

5. **LIMIT OF LIABILITY (FOR ALL LOSS-INCLUDING DEFENSE COSTS)**

The Limit of Liability stated in Item 3 of the Declarations is the aggregate limit of the **Insurer's** liability for all **Loss**, under Coverages A, B, C and D combined, arising out of all **Claims** first made against each and every **Insured**, and all **Crisis Loss** occurring, during the **Policy Period** and the **Discovery Period** (if applicable). The **Limit of Liability** for the **Discovery Period** and the **CrisisFund** SM shall be part of, and not in addition to, the **Limit of Liability** for the **Policy Period**. Further, a **Claim** which is made subsequent to the **Policy Period** or **Discovery Period** (if applicable) which pursuant to Clause 7(b) or 7(c) is considered made during the **Policy Period** or **Discovery Period** shall also be subject to the one aggregate **Limit of Liability** stated in Item 3 of the Declarations. The limit of the **Insurer's** liability for **Crisis Loss** and **Delisting Crisis Loss** arising from all **Crises** occurring during the **Policy Period**, in the aggregate, shall be the amounts set forth as the **CrisisFund** SM. The **CrisisFund** SM shall be the aggregate limit of the **Insurer's** liability for all **Crises** under this policy regardless of the number of **Crises** occurring during the **Policy Period**.

*Defense Costs are not payable by the Insurer in addition to the Limit of Liability. Defense Costs are part of Loss and as such are subject to the Limit of Liability for Loss.*

*31*

## 6. RETENTION CLAUSE

For each **Claim**, the **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the applicable Retention amounts stated in Items 4(a), 4(b) and 4(c) of the Declarations, such Retention amounts to be borne by an **Organization** and/or the **Insured Person** and remain uninsured, with regard to all **Loss** other than **Non-Indemnifiable Loss**. The Retention amount specified in:

(i)  Item 4(a) applies to **Defense Costs** that arise out of a **Securities Claim**;

(ii)  Item 4(b) applies to **Loss** that arises out of an **Employment Practices Claim**; and

(iii)  Item 4(c) applies to **Loss** that arises out of any **Claim** other than a **Securities Claim** or an **Employment Practices Claim**.

A single Retention amount shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or related **Wrongful Acts**.

In the event a **Claim** triggers more than one of the Retention amounts stated in Items 4(a), 4(b) and 4(c) of the Declarations, then, as to that **Claim**, the highest of such Retention amounts shall be deemed the Retention amount applicable to **Loss** (to which a Retention is applicable pursuant to the terms of this policy) arising from such **Claim**.

Further, with respect to all **Claims**, other than **Employment Practices Claims**, no Retention shall apply to **Loss** arising from such **Claims** and the **Insurer** shall reimburse **Defense Costs** otherwise covered hereunder and paid by the **Insured**, in the event of: (1) a determination of **No Liability** of each and every **Insured** against whom the same **Claim** or related **Claims** have been made; or (2) a dismissal or a stipulation to dismiss each and every **Insured** against whom the same **Claim** or related **Claims** have been made without prejudice and without the payment of any consideration by or on behalf of any **Insured**. However, in the case of (2) above, such reimbursement shall occur 90 days after the date of dismissal or stipulation as long as such **Claim** is not brought (or any other **Claim** which is subject to the same single retention by virtue of Clause 6 is not pending or brought) again within that time, and further subject to an undertaking by an **Organization** in a form acceptable to the **Insurer** that such reimbursement shall be paid back by such **Organization** to the **Insurer** in the event the **Claim** (or any other **Claim** which is subject to the same single retention by virtue of Clause 6) is brought after such 90-day period.

No Retention amount is applicable to **Crisis Loss** or **Non-Indemnifiable Loss**.

## 7. NOTICE/CLAIM REPORTING PROVISIONS

Notice hereunder shall be given in writing to the Insurer named in Item 8 of the Declarations at the address indicated in Item 8 of the Declarations. If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

(a)  An **Organization** or an **Insured** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give written notice to the **Insurer** of a **Claim** made against an **Insured** or a **Crisis** as soon as practicable: (i) after the **Named Entity's** Risk Manager or General Counsel (or equivalent position) first becomes aware of the **Claim**; or (ii) the **Crisis** commences, but in all events no later than either:

(1)  the end of the **Policy Period** or the **Discovery Period** (if applicable); or

(2)  within 30 days after the end of the **Policy Period** or the **Discovery Period** (if applicable), as long as such **Claim** was first made against an **Insured** within the final 30 days of the **Policy Period** or the **Discovery Period** (if applicable).

32

(b) If written notice of a **Claim** has been given to the **Insurer** pursuant to Clause 7(a) above, then a **Claim** which is subsequently made against an **Insured** and reported to the **Insurer** alleging, arising out of, based upon or attributable to the facts alleged in the **Claim** for which such notice has been given, or alleging any **Wrongful Act** which is the same as or related to any **Wrongful Act** alleged in the **Claim** of which such notice has been given, shall be considered related to the first **Claim** and made at the time such notice was given.

(c) If during the **Policy Period** or during the **Discovery Period** (if applicable) an **Organization** or an **Insured** shall become aware of any circumstances which may reasonably be expected to give rise to a **Claim** being made against an **Insured** and shall give written notice to the **Insurer** of the circumstances, the **Wrongful Act** allegations anticipated and the reasons for anticipating such a **Claim**, with full particulars as to dates, persons and entities involved, then a **Claim** which is subsequently made against such **Insured** and reported to the **Insurer** alleging, arising out of, based upon or attributable to such circumstances or alleging any **Wrongful Act** which is the same as or related to any **Wrongful Act** alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was given.

## 8. DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)

Under Coverages A, B and C of this policy, except as hereinafter stated, the **Insurer** shall advance, excess of any applicable retention amount, covered **Defense Costs** no later than ninety (90) days after the receipt by the **Insurer** of such defense bills. Such advance payments by the **Insurer** shall be repaid to the **Insurer** by each and every **Insured** or **Organization**, severally according to their respective interests, in the event and to the extent that any such **Insured** or **Organization** shall not be entitled under this policy to payment of such **Loss**.

*The Insurer does not, however, under this policy, assume any duty to defend. The Insureds shall defend and contest any Claim made against them. The Insureds shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs without the prior written consent of the Insurer. Only those settlements, stipulated judgments and Defense Costs which have been consented to by the Insurer shall be recoverable as Loss under the terms of this policy. The Insurer's consent shall not be unreasonably withheld, provided that the Insurer shall be entitled to effectively associate in the defense, the prosecution and the negotiation of any settlement of any Claim that involves or appears reasonably likely to involve the Insurer.*

The **Insurer** shall have the right to effectively associate with each and every **Organization** and **Insured Person** in the defense and prosecution of any **Claim** that involves, or appears reasonably likely to involve, the **Insurer**, including, but not limited to, negotiating a settlement. Each and every **Organization** and **Insured Person** shall give the **Insurer** full cooperation and such information as it may reasonably require.

Notwithstanding any of the foregoing, if all **Insured** defendants are able to dispose of all **Claims** which are subject to one retention amount (inclusive of **Defense Costs**) for an amount not exceeding any applicable retention amount, then the **Insurer's** consent shall not be required for such disposition.

No **Organization** is covered in any respect under Coverage A or Coverage C. An **Organization** is covered, subject to the policy's terms, conditions and limitations only with respect to: (1) its indemnification of its **Insured Persons** under Coverage B(ii) as respects a **Claim** against such **Insured Persons**; and (2) under Coverage B(i) for a **Securities Claim**. Accordingly, the **Insurer** has no obligation under this policy for covered **Defense Costs**

33

incurred by, judgments against or settlements by an **Organization** arising out of a **Claim** made against an **Organization** other than a covered **Securities Claim**, or any obligation to pay **Loss** arising out of any legal liability that an **Organization** has to a claimant, except as respects a covered **Securities Claim** against such **Organization**.

With respect to: (i) **Defense Costs** jointly incurred by; (ii) any joint settlement entered into by; and/or (iii) any judgment of joint and several liability against any **Organization** and any **Insured** in connection with any **Claim** other than a **Securities Claim**, any such **Organization** and any such **Insured** and the **Insurer** agree to use their best efforts to determine a fair and proper allocation of the amounts as between any such **Organization**, any such **Insured** and the **Insurer**, taking into account the relative legal and financial exposures, and the relative benefits obtained by any such **Insured** and any such **Organization**. In the event that a determination as to the amount of **Defense Costs** to be advanced under the policy cannot be agreed to, then the **Insurer** shall advance **Defense Costs** excess of any applicable retention amount which the **Insurer** states to be fair and proper until a different amount shall be agreed upon or determined pursuant to the provisions of this policy and applicable law.

This Clause 8 shall not be applicable to **Crisis Loss**. Nevertheless the **Insurer** does not, under this policy, assume any duty to defend.

## 9. PRE-AUTHORIZED SECURITIES DEFENSE ATTORNEYS

Affixed as Appendix A hereto and made a part of this policy is a list of Panel Counsel law firms ("**Panel Counsel Firms**"). The list provides the **Insureds** with a choice of law firms from which a selection of legal counsel shall be made to conduct the defense of any **Securities Claim** made against such **Insureds**.

The **Insureds** shall select a **Panel Counsel Firm** to defend the **Securities Claim** made against the **Insureds** in the jurisdiction in which the **Securities Claim** is brought. In the event the **Claim** is brought in a jurisdiction not included on the list, the **Insureds** shall select a **Panel Counsel Firm** in the listed jurisdiction which is the nearest geographic jurisdiction to either where the **Securities Claim** is brought or where the corporate headquarters of the **Named Entity** is located. In such instance the **Insureds** also may, with the express prior written consent of the **Insurer**, which consent shall not be unreasonably withheld, select a non-**Panel Counsel Firm** in the jurisdiction in which the **Securities Claim** is brought to function as "local counsel" on the **Claim** to assist the **Panel Counsel Firm** which will function as "lead counsel" in conducting the defense of the **Securities Claim**.

With the express prior written consent of the **Insurer**, an **Insured** may select a **Panel Counsel Firm** different from that selected by another **Insured** defendant if such selection is required due to an actual conflict of interest or is otherwise reasonably justifiable. The list of **Panel Counsel Firms** may be amended from time to time by the **Insurer**. However, no firm shall be removed from the specific list attached to this policy during the **Policy Period**, without the consent of the **Named Entity**.

## 10. DISCOVERY CLAUSE

Except as indicated below, if the **Named Entity** shall cancel or the **Named Entity** or the **Insurer** shall refuse to renew this policy, the **Named Entity** shall have the right to a period of either one, two or three years following the effective date of such cancellation or nonrenewal (the "Discovery Period") upon payment of the respective "**Additional Premium Amount**" described below in which to give to the **Insurer** written notice pursuant to Clause 7(a) and 7(c) of the policy of: (i) **Claims** first made against an **Insured**; and (ii) circumstances of which an **Organization** or an **Insured** shall be come aware, in either

34

case during said **Discovery Period** and solely with respect to a **Wrongful Act** occurring prior to the end of the **Policy Period** and otherwise covered by this policy.

The **Additional Premium Amount** for: (1) one year shall be no more than 75% of the **Full Annual Premium**; (2) two years shall be no more than 150% of the **Full Annual Premium**; and (3) three years shall be no more than 225% of the **Full Annual Premium**. As used herein, "**Full Annual Premium**" means the premium level in effect immediately prior to the end of the **Policy Period**.

Notwithstanding the first paragraph of Clause 5, if the **Named Entity** shall cancel or the **Insurer** or the **Named Entity** shall refuse to renew this policy, then the **Named Entity** shall also have the right, to request an offer from the **Insurer** of a **Discovery Period** (with respect to **Wrongful Acts** occurring prior to the end of the **Policy Period**) with an aggregate limit of liability applicable to **Claims** made against the **Insured** during such **Discovery Period** which is in addition to, and not part of, the applicable **Limit of Liability** set forth in Item 3 of the Declarations. The **Insurer** shall quote such a **Discovery Period** pursuant to such terms, conditions, exclusions and additional premium as it deems appropriate in its sole and absolute discretion.

In the event of a **Transaction** as defined in Clause 12(a), the **Named Entity** shall have the right to request an offer from the **Insurer** of a **Discovery Period** (with respect to **Wrongful Acts** occurring prior to the effective time of the **Transaction**). The **Insurer** shall offer such **Discovery Period** pursuant to such terms, conditions, exclusions and additional premium as the **Insurer** may reasonably decide. In the event of a **Transaction**, the right to a **Discovery Period** shall not otherwise exist except as indicated in this paragraph.

The **Discovery Period** is not cancelable and the additional premium charged shall be fully earned at inception. This Clause 10 shall not apply to any cancellation resulting from non-payment of premium. The rights contained in this Clause 10 shall terminate unless written notice of election of a **Discovery Period** together with any additional premium due is received by the **Insurer** no later than thirty (30) subsequent to the effective date of the cancellation, nonrenewal or **Transaction**.

## 11. CANCELLATION CLAUSE

This policy may be canceled by the **Named Entity** at any time only by mailing written prior notice to the **Insurer** or by surrender of this policy to the **Insurer** or its authorized agent. This policy may only be canceled by or on behalf of the **Insurer** in the event of non-payment of premium by the **Named Entity**. In the event of non-payment of premium by the **Named Entity**, the **Insurer** may cancel this policy by delivering to the **Named Entity** or by mailing to the **Named Entity**, by registered, certified, or other first class mail, at the **Named Entity's** address as shown in Item 1(a) of the Declarations, written notice stating when, not less than 15 days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The **Policy Period** terminates at the date and hour specified in such notice, or at the date and time of surrender. The **Insurer** shall have the right to the premium amount for the portion of the **Policy Period** during which the policy was in effect.

If this policy shall be canceled by the **Named Entity**, the **Insurer** shall retain the customary short rate proportion of the premium herein. If the period of limitation relating to the giving of notice as set forth in this Clause 11 is also set forth in any law controlling the construction thereof, then such period shall be deemed to be amended so as to be equal to the minimum period of limitation set forth in the controlling law.

35

## 12. ORGANIZATIONAL CHANGES

(a) If during the **Policy Period**:

(1) the **Named Entity** shall consolidate with, merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

(2) any person or entity or group of persons or entities acting in concert shall acquire **Management Control** of the **Named Entity**;

(any of such events being a "**Transaction**"), then this policy shall continue in full force and effect as to **Wrongful Acts** occurring prior to the effective time of the **Transaction**, but there shall be no coverage afforded by any provision of this policy for any actual or alleged **Wrongful Act** occurring after the effective time of the **Transaction**. This policy may not be canceled after the effective time of the **Transaction** and the entire premium for this policy shall be deemed earned as of such time. The **Named Entity** shall also have the right to an offer by the **Insurer** of a **Discovery Period** described in the fourth paragraph of Clause 10 of this policy.

(b) Subsidiary *Additions*: "**Subsidiary**" also means any for-profit entity that is not formed as a partnership of which the **Named Entity** first had **Management Control** during the **Policy Period**, whether directly or indirectly through one or more other **Subsidiaries**, and:

(1) whose assets total less than 25% of the total consolidated assets of each and every **Organization** as of the inception date of this policy; or

(2) whose assets total 25% or more than the total consolidated assets of each and every **Organization** as of the inception date of this policy, but such entity shall be a "**Subsidiary**" only: (i) for a period of sixty (60) days from the date the **Named Entity** first had **Management Control** of such entity; or (ii) until the end of the **Policy Period**, which ever ends or occurs first (hereinafter "**Auto-Subsidiary Period**");

provided that the **Named Entity** or any other **Insured** shall report such **Subsidiary** to the **Insurer**, in writing, prior to the end of the **Policy Period**.

The **Insurer** shall extend coverage for any **Subsidiary** described in 12(b)(2) above, and any **Insured Person** thereof, beyond its respective **Auto-Subsidiary Period** if during such **Auto-Subsidiary Period**, the **Named Entity** shall have provided the **Insurer** with full particulars of the new **Subsidiary** and agreed to any additional premium and amendment of the provisions of this policy required by the **Insurer** relating to such **Subsidiary**. Further, coverage as shall be afforded to any **Subsidiary** and any **Insured Person** thereof is conditioned upon the **Named Entity** paying when due any additional premium required by the **Insurer** relating to such **Subsidiary**.

(c) *Insured Persons* and *Outside Entity Executives:* Coverage will automatically apply to all new **Insured Persons** of and **Outside Entity Executives** of an **Organization** following the inception date of this policy.

(d) *Other Organizational Changes*: In all events, coverage as is afforded under this policy with respect to a **Claim** made against any **Organization** and/or any **Insured Person** thereof shall only apply for **Wrongful Acts** committed or allegedly committed after the effective time such **Organization** became an **Organization** and such **Insured Person** became an **Insured Person**, and prior to the effective time that such **Organization** ceases to be an **Organization** or such **Insured Person** ceases to be an **Insured Person**. An **Organization** ceases to be an **Organization** when the **Named Entity** no longer maintains **Management Control** of an **Organization** either directly or indirectly through one or more of its **Subsidiaries**.

36

## 13. SUBROGATION

In the event of any payment under this policy, the **Insurer** shall be subrogated to the extent of such payment to all of each and every **Organization's** and **Insured's** rights of recovery thereof, and each such **Organization** and **Insured** shall execute all papers required and shall do everything that may be necessary to secure such rights including the execution of any and all documents necessary to enable the **Insurer** effectively to bring suit in the name of each such **Organization** and each such **Insured**. In no event, however, shall the **Insurer** exercise its rights of subrogation against an **Insured** under this policy unless such **Insured** has been convicted of a deliberate criminal act, or been determined to have in fact committed a deliberate fraudulent act, or been determined to have in fact obtained any profit or advantage to which such **Insured** was not legally entitled.

## 14. OTHER INSURANCE AND INDEMNIFICATION

Such insurance as is provided by this policy shall apply only as excess over any other valid and collectible insurance, unless such other insurance is written only as specific excess insurance over the **Limit of Liability** provided by this policy. This policy shall specifically be excess of any other valid and collectible insurance pursuant to which any other insurer has a duty to defend a **Claim** for which this policy may be obligated to pay **Loss**.

In the event of a **Claim** made against an **Outside Entity Executive**, coverage as is afforded by this policy, whether under Coverage B(ii) or Coverage C, shall be specifically excess of: (1) any indemnification provided by an **Outside Entity**; and (2) any insurance coverage afforded to an **Outside Entity** or its **Executives** applicable to such **Claim**. Further, in the event such other **Outside Entity** insurance is provided by the **Insurer** or any other company of American International Group, Inc. (AIG) (or would be provided but for the application of the retention amount, exhaustion of the limit of liability or failure to submit a notice of a claim as required) then the **Insurer's** maximum aggregate **Limit of Liability** for all **Loss** under this policy, as respects any such **Claim**, shall be reduced by the amount of the limit of liability (as set forth on the Declarations) of the other AIG insurance provided to such **Outside Entity**.

## 15. NOTICE AND AUTHORITY

It is agreed that the **Named Entity** shall act on behalf of its **Subsidiaries** and each and every **Insured** with respect to the giving of notice of **Claim**, the giving and receiving of notice of cancellation, the payment of premiums and the receiving of any return premiums that may become due under th is policy, the receipt and acceptance of any endorsements issued to form a part of this policy and the exercising or declining of any right to a **Discovery Period**.

## 16. ASSIGNMENT

This policy and any and all rights hereunder are not assignable without the written consent of the **Insurer**.

## 17. ALTERNATIVE DISPUTE RESOLUTION PROCESS

It is hereby understood and agreed that all disputes or differences which may arise under or in connection with this policy, whether arising before or after termination of this policy, including any determination of the amount of **Loss**, shall be submitted to the alternative dispute resolution ("ADR") process set forth in this clause.

Either the **Insurer** or an **Insured** may elect the type of **ADR** process discussed below; provided, however, that such **Insured** shall have the right to reject the **Insurer's** choice of the type of **ADR** process at any time prior to its commencement, in which case such **Insured's** choice of **ADR** process shall control.

The **Insurer** and each and every **Insured** agrees that there shall be two choices of **ADR** process: (1) non-binding mediation administered by the American Arbitration Association, in which the **Insurer** and any such **Insured** shall try in good faith to settle the dispute by mediation under or in accordance with its then-prevailing Commercial Mediation Rules; or (2) arbitration submitted to the American Arbitration Association in accordance with its then-prevailing Commercial Arbitration Rules, in which the arbitration panel shall consist of three disinterested individuals. In either mediation or arbitration, the mediator or arbitrators shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. The mediator or arbitrators shall also give due consideration to the general principles of the law of the state where the **Named Entity** is incorporated in the construction or interpretation of the provisions of this policy. In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the arbitrators' award shall not include attorneys fees or other costs. In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least 120 days shall have elapsed from the date of the termination of the mediation. In all events, each party shall share equally the expenses of the **ADR** process.

Either choice of **ADR** process may be commenced in New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state indicated in Item 1(a) of the Declarations as the mailing address for the **Named Entity**. The **Named Entity** shall act on behalf of each and every **Insured** in deciding to proceed with an **ADR** process under this clause.

## 18. ACTION AGAINST INSURER

Except as provided in Clause 17 of the policy, no action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, or until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgment against such **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the **Insurer**.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the **Insurer** as a party to any action against any **Insured** or **Organization** to determine the **Insured's** liability, nor shall the **Insurer** be impleaded by any **Insured Person**, their spouse, any **Organization** or any legal representative of the foregoing.

## 19. BANKRUPTCY

Bankruptcy or insolvency of any **Organization** or any **Insured Person** shall not relieve the **Insurer** of any of its obligations hereunder.

It is further understood and agreed that the coverage provided under this policy is intended to protect and benefit the **Insured Persons**. Further, if a liquidation or reorganization proceeding is commenced by the **Named Entity** and/or any other **Organization** (whether voluntarily or involuntarily) under Title 11 of the United States Code (as amended), or any similar state, local or foreign law (collectively "**Bankruptcy Law**") then, in regard to a covered **Claim** under this policy, the **Insureds** hereby:

(a) waive and release any automatic stay or injunction to the extent it may apply in such proceeding to the proceeds of this policy under such **Bankruptcy Law**; and

(b) agree not to oppose or object to any efforts by the **Insurer** or any **Insured** to obtain relief from any stay or injunction applicable to the proceeds of this policy as a result of the commencement of such liquidation or reorganization proceeding.

20. **SPOUSAL AND LEGAL REPRESENTATIVE EXTENSION**

If a **Claim** against an **Insured Person** includes a **Claim** against: (i) the lawful spouse of such **Insured Person**; or (ii) a property interest of such spouse, and such **Claim** arises from any actual or alleged **Wrongful Act** of such **Insured Person**, this policy shall cover **Loss** arising from the **Claim** made against that spouse or the property of that spouse to the extent that such **Loss** does not arise from a **Claim** for any actual or alleged act, error or omission of such spouse. This policy shall cover **Loss** arising from a **Claim** made against the estates, heirs, or legal representatives of any deceased **Insured Person**, and the legal representatives of any **Insured Person**, in the event of incompetency, insolvency or bankruptcy, who was an **Insured Person** at the time the **Wrongful Acts** upon which such **Claim** is based were committed.

21. **RENEWAL APPLICATION PROCEDURE**

If this policy is a renewal of, a replacement of, or succeeds in time any policy (providing similar coverage) issued by the **Insurer**, or any of its affiliates, then in granting coverage under this policy it is agreed that the **Insurer** has relied upon the **Application** as being accurate and complete in underwriting this policy. This Clause 21 together with the **Application** constitute the complete **Application** that is the basis of this policy and form a part hereof, and is material to the risk assumed by the **Insurer**. No written renewal application form need be completed by the **Named Entity** in order to receive a renewal quote from the **Insurer**, although the **Insurer** reserves the right to require specific information upon renewal.

22. **ORDER OF PAYMENTS**

In the event of **Loss** arising from a covered **Claim** for which payment is due under the provisions of this policy, then the **Insurer** shall in all events:

(a) first, pay **Loss** for which coverage is provided under Coverage A and Coverage C of this policy; then

(b) only after payment of **Loss** has been made pursuant to Clause 22(a) above, with respect to whatever remaining amount of the **Limit of Liability** is available after such payment, at the written request of the chief executive officer of the **Named Entity**, either pay or withhold payment of such other **Loss** for which coverage is provided under Coverage B(ii) of this policy; and then

(c) only after payment of **Loss** has been made pursuant to Clause 22(a) and Clause 22(b) above, with respect to whatever remaining amount of the **Limit of Liability** is available after such payment, at the written request of the chief executive officer of the **Named Entity**, either pay or withhold payment of such other **Loss** for which coverage is provided under Coverages B(i) and D of this policy.

In the event the **Insurer** withholds payment pursuant to Clause 22(b) and/or Clause 22(c) above, then the **Insurer** shall at such time and in such manner as shall be set forth in written instructions of the chief executive officer of the **Named Entity** remit such payment to an **Organization** or directly to or on behalf of an **Insured Person**.

The bankruptcy or insolvency of any **Organization** or any **Insured Person** shall not relieve the **Insurer** of any of its obligations to prioritize payment of covered **Loss** under this policy pursuant to this Clause 22.

23. **HEADINGS**

The descriptions in the headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

75011 (2/00)                                  16                         39

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

In consideration of the premium charged, it is understood and agreed as follows: The information in our Panel Counsel lists/appendices is now accessible through our online Panel Counsel Directory at http://www.briefbase.com/default.aspx at the "Panel Counsel" tab. To access the applicable online Panel Counsel Directory, please go to the website, click on the "Panel Counsel" tab and then click on the "Directors & Officers (Securities Claims)" link.

References in this policy to list of Panel Counsel law firms or related appendices are deemed amended to refer to the applicable Panel Counsel Directories at the website referenced above.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

Revised (6/08)

40